**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 24-265 (TNM)** |
| **v.** | : | |
| | : | |
| **ROBERT P. BURKE,** | : | |
| | : | |
| **YONGCHUL "CHARLIE" KIM, and** | : | |
| | : | |
| **MEGHAN MESSENGER,** | : | |
| | : | |
| **Defendants.** | : | |

## UNITED STATES' MOTION TO RECONSIDER
## COURT'S ORDER GRANTING MOTIONS TO SEVER TRIAL

The United States of America, by and through its undersigned attorneys, respectfully submits this motion seeking reconsideration of the Court's September 23, 2024, Order ("Order") granting the defendants' motions to sever trial.   With due respect to the Court, the Order is based on a clear error and justice requires its reconsideration.   The Court relied on the doctrine of "mutually antagonistic" or "irreconcilable" defenses as a basis to sever the trial, but the Court misapplied the doctrine.   The record does not support granting the defendants' requested relief of severance because the proffered defenses are not, in fact, "mutually antagonistic" or "irreconcilable."   The defendants failed to carry their heavy burden to overcome the presumption in favor of joint trials.   They have not demonstrated any "legally cognizable" and "extreme" prejudice resulting from a joint trial, as is required.   Accordingly, the government respectfully requests that this Court reconsider its Order and deny the defendants' motions to sever as justice requires.

## RELEVANT BACKGROUND

The defendants in this case are jointly charged with a conspiracy to commit bribery in which each participated on equal footing.   *See* ECF No. 1 (Count 1).   In sum and substance, the defendants conspired to exchange a thing of value (a job at Company A for Burke, offered by Kim and Messenger) in exchange for an official act (Burke directing a Navy contract to Company A). All three defendants are charged with substantive bribery counts for the same conduct charged in the conspiracy.   *Id.* (Counts 2 and 3).   Burke was separately charged with a criminal conflict of interest and a scheme to conceal material facts.   *Id.* (Counts 4 and 5).   All of the conduct charged against the defendants in the Indictment arises out of the conspiracy, including Burke's acts affecting his personal financial interests and his efforts to conceal the scheme from the Navy. That is, the evidence of those offenses is mutually admissible against all defendants because they are acts in further of the conspiracy charged in Count 1.

All three defendants moved for severance of their joint trial on the basis of, *inter alia*, "mutually antagonistic defenses."   Defendants Kim and Messenger jointly moved to sever their trial from Defendant Burke's, ECF No. 27; Burke, in turn, moved to sever his trial from Kim's and Messenger's, ECF. No. 44.

In their motion to sever, Kim and Messenger asserted that they intended to offer a defense that would be irreconcilable with any defense offered by Burke.   Specifically, Kim and Messenger argued that they "intended to offer evidence at trial that, in an effort to influence contracts between Company A and the Navy, Burke may have deliberately and repeatedly misled [Kim and Messenger] to believe that *he could lawfully engage in employment discussions with [Kim and Messenger] while he was still a Navy senior officer*."   ECF No. 27 at 1 (emphasis added).   Kim and Messenger further argued that they were "likely to present evidence and argument that they

are not guilty of Counts One and Two because: (1) as civilians, it was reasonable for them to rely in good faith on Burke's representation that Company A was not a 'defense contractor' and, accordingly, *he could act as their ambassador in connection with their relationship with the Navy*; and (2) . . . [Kim and Messenger] had had no reason to believe that they were precluded *from discussing with Burke potential employment with Company A.*"   ECF No. 27 at 19.   To be clear, Kim and Messenger could have (but did not) state that their defense is that they thought it was permissible to offer Burke a job *in exchange for* a government contract because Burke said do. But they did not.   Their proffered defense is that Burke assured them it was not a *conflict* for them to discuss a future job for Burke at Company A, and that they believed it was okay to discuss a Navy contract from Burke.   At no point has Kim or Messenger ever proffered that their defense is that Burke assured them it was okay to offer post-government employment *in exchange* for a Navy contract—in other words, Kim and Messenger never proffered that their defense is that Burke assured them that a *quid pro quo*, *i.e.* bribery, was permissible.[1]

In his motion to sever, Burke vaguely asserted that his defense would consist of "presenting evidence on how all actions were legal . . ." while—as Burke phrased it in his motion—Kim's and Messenger's defense is "that actions were illegal but that they were unaware."   ECF No. 44 at 9. Burke characterized these defenses as being "on a collision course" and argued that the defendants would be "actively attempting to impeach each other's credibility," thereby causing the "obvious inference that someone is lying . . . ."   *Id*.   However, even as described by Burke in his initial motion briefing, Kim's and Messenger's defense did not involve admitting to a *quid pro quo*.

---

[1]   At the hearing on the motion to sever, counsel for Kim suggested they intend to offer evidence that Messenger and Kim were candid about the *quid pro quo* to their investors.   Not so. All evidence indicates only that they told the investors of the contract and Admiral Burke's future employment, not the corrupt exchange.

In response, the government argued that these defenses are not "conflicting and irreconcilable" because neither side admitted a *quid pro quo*.   ECF No. 48 at 26.

In their replies (to which the government could not respond), the defendants' arguments and framing of their respective defenses shifted somewhat.   Kim and Messenger stated that they "intend to argue they lacked the culpable mental state necessary for an unlawful *quid pro quo* principally because Burke assured that that they were not defense contractors and that their discussions were not prohibited."   ECF No. 50 at 15.   Kim and Messenger further argued that this defense was antagonistic to Burke's because "Burke would deny having job discussions with Company A until an appropriate time," whereas Kim and Messenger would not deny that "discussions" occurred, but they would argue that they relied on purported assurances from Burke that such "discussions" were lawful.   *Id*. at 15-16.   What Kim and Messenger mean by "discussions" is conspicuously hazy.   Viewed in the context of their opening brief, by "discussions," Kim and Messenger appear to refer to conversations they had with Burke in which they discussed a contract for Company A while also discussing a future job at Company A for Burke.   They still did not claim that "discussions" included proposing a job in exchange for a contract.

Incorrectly, Burke's reply framed Kim's and Messenger's defense as "there was a *quid pro quo*, but [Kim and Messenger] lacked the culpable mental state because Burke assured them that they were not defense contractors."   *Id.*   At no point in any of Kim's and Messenger's briefing did they assert that they intended to admit proposing the exchange of a job for a contract.   Further, at no point in any of Burke's briefing did he claim that he would deny having "discussions" with Kim and Messenger, as Kim and Messenger claimed.

At a status hearing held on September 23, 2024, the Court heard argument on the motions

to sever, focusing on the defendants' claims of "mutually antagonistic defenses."  *United States v. Burke, et al.*, 24-cr-265 (TNM), Transcript of 09/23/2024 status hearing (hereinafter, "Hrg. Tr.") at 4.   Before hearing from counsel, however, the Court described its understanding that Burke's defense is "that there was no *quid pro quo*" while Kim and Messenger's was "there was a *quid pro quo*, but they believed that it was acceptable, given various indicia they received from Mr. Burke and his colleagues . . . ."  *Id.*[2]

This Court orally granted both motions, stating:

Under Rule 14, if joinder of offenses or Defendants in an indictment, an information or a consolidation for trial appears to prejudice a Defendant or the Government, the Court may order separate trials of counts, sever the Defendants' trials or provide any other relief that justice requires.

As an initial matter, the Defendants raise several theories. First, they claim that severance is warranted based on a mismatch in evidence. I am not persuaded on that point. I think the case law is decidedly against them there. They also raise a concern about -- well, Defendants Kim and Messenger raise *Bruton* concerns involving Defendant Burke's post-arrest statements. I think that would also not be a basis for severance.

I do, however, find that the Defendants, in particular Defendant Burke, has met his burden on the motion to sever on irreconcilable conflicts between the theories and evidence here. I think that Defendants Kim and Messenger have both been very clear that they are going to be portraying him as a liar and someone who portrayed what he was doing as above board and portrayed what they were doing as permissible because this was not a defense contract.

I understand the Government's argument that that is not really a defense to the charge of bribery. However, I think it would theoretically go to the corrupt intent with which they were acting. And I can certainly see how they would have an incentive to describe him as a liar. I think as to the potential conflict going the other way, that is certainly less strong. However, Mr. Parlatore's point at the end that he

---

[2]      As argued below, the government respectfully contends that Kim and Messenger could have (but, for obvious reasons, did not) admit that there was a *quid pro quo* here.   Rather, Kim and Messenger appear to have sidestepped the "pro" in the *quid pro quo*.   In other words, they have been noticeably silent about whether they believed it was acceptable to condition the thing of value for Burke's official action.   Kim and Messenger have instead admitted to an improper discussion (i.e., conduct amounting to Burke's conflict of interest, but with which they are not charged) insofar as they talked to Burke about a contract and a job simultaneously.

would be suggesting that Defendants Kim and Messenger may well be guilty of attempted bribery, well, as I understand the case law, that would be a crime here as an inchoate offense, that the Government could be seeking an instruction at trial. And so to the extent that Mr. Parlatore would be pointing the finger at the Defendants Kim and Messenger and saying that they were trying to bribe his client, but unsuccessfully, we indeed have mutually inconsistent and irreconcilable theories, *with both sides on the defense pointing fingers at the other*.

This is not a decision I make lightly. It is, I think, a very close call. But given the arguments and the evidence from all sides here, I think that the more prudent course is to sever the trial now rather than waiting to see whether things work out exactly as the defense expects it to be.

*Id.* at 43-45 (emphasis added).

## LEGAL STANDARD

"[N]either the Federal Rules of Criminal Procedure nor the Local Criminal Rules for this district provide for motions for reconsideration."  *United States v. Bagcho*, 227 F. Supp. 3d 28, 31 (D.D.C. 2017) (citing *United States v. Hong Vo*, 978 F. Supp. 2d 41, 47 (D.D.C. 2013); *United States v. Cabrera*, 699 F. Supp. 2d 35, 40 (D.D.C. 2010)).   Nevertheless, "the Supreme Court has recognized, in dicta, the utility of such motions."  *United States v. Ferguson*, 574 F. Supp. 2d 111, 113 (D.D.C. 2008) (citing *United States v. Dieter*, 429 U.S. 6 (1976); *United States v. Healy*, 376 U.S. 75, 80 (1964)).   "Judges in this district have applied the standard contained in Rule 59(e) of the Federal Rules of Civil Procedure to motions for reconsideration of final orders in criminal cases."  *Hong Vo*, 978 F. Supp. 2d at 47 (citing *Cabrera*, 699 F. Supp. 2d at 40; *United States v. Libby*, 429 F. Supp. 2d 46, 47 (D.D.C. 2006)).   Thus, a district court has the authority to reconsider its decision as justice requires.  *United States v. All Assets Held at Bank Julius*, 502 F. Supp. 3d 91, 95 (D.D.C. 2020).

To prevail on a motion for reconsideration, the movant bears the burden to "demonstrate that (1) there has been an intervening change in controlling law; (2) there is new evidence; or (3) there is a need to correct clear error or prevent manifest injustice."  *Ferguson*, 574 F. Supp. 2d at

113 (citing *Libby*, 429 F. Supp. 2d at 47); *see also Arabaitzis v. Unum Life Ins. Co. of Am.*, 351 F. Supp. 3d 11, 15 (D.D.C. 2018) (citing *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). "Manifest injustice requires at least (1) a clear and certain prejudice to the moving party that (2) is fundamentally unfair in light of governing law." *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018). An order may result in manifest injustice if it would "upset settled expectations—expectations on which a party may reasonably place reliance." *Id.* (quoting *Qwest Servs. Corp. v. FCC*, 509 F.3d 531, 540 (D.C. Cir. 2007)).

## ARGUMENT

There is a need to correct clear error and prevent manifest injustice as a result of the Court's September 23 Order ("the Order") granting the defendants' motions to sever.[3] The Order is based on clear factual and legal error. The defendants failed to demonstrate that their defenses would in fact, be "irreconcilable." The Court's oral Order is also insufficient to justify severance when the facts are viewed against the appropriate legal standard. In severing the defendants' trial, the Court noted prudential concerns, but this is insufficient to meet defendants' burden to establish severance is warranted under appropriate precedent on finger-pointing and claims of antagonistic defenses, including the strong presumption of joint trials of properly joined defendants, particularly in conspiracy cases; put simply, the defendants could not and did not establish an extreme risk of prejudice. For those reasons, and considering the interests of the government and the public in a joint trial, it would be error to sever these trials. Accordingly, the Order is fundamentally unfair in light of relevant governing law, set forth below, and will result in clear and certain prejudice to the government and the public interest.

---

[3]     There is no intervening change in the law or newly-discovered evidence.

I.      **In Granting the Defendants' Severance Motions, the Court Inadvertently Misperceived the Facts.**

The Order reflects a misunderstanding of the "conflict" between the proposed defenses. All three defendants deny a *quid pro quo*.   Kim and Messenger assert that they relied on Burke's assurances that it was acceptable for the three of them to "discuss" future employment for Burke and a contract for Company A at the same time.   Critically, in none of these "discussions" do Kim and Messenger admit that there was an *exchange* of a job for a contract.   That is, they deny having engaged in bribery *at all*, regardless of what Burke told them.[4]   Accordingly, this Court's framing of the two defenses—which was consistent with Burke's erroneous characterization—that "Burke's defense would be 'that there was no *quid pro quo*'" while Kim and Messenger's was 'there was a *quid pro quo*, but they believed that it was acceptable, given various indicia they received from Mr. Burke and his colleagues,'" *see* Hrg. Tr. at 4, misapprehends the nature of Kim's and Messenger's proposed defense.

Burke, thus far, has not actually articulated the particulars of *any* defense—which should have left his irreconcilable defenses motion dead in the water—and only complains that Kim and Messenger were going to "point the finger at him."   *See* Hrg. Tr. at 5.   But Burke, too, is adamant

---

[4]      Title 18, United States Code, Section 201(b)(1)(A), the substantive bribery statute under which Kim and Messenger are charged, "criminalizes a mere 'offer' of something of value with the intent to influence an official act."   *United States v. Ring*, 706 F.3d 460, 467 (D.C. Cir. 2013). Regardless of what Burke said to Kim and Messenger, truthful or not, making the offer of a thing of value with the "specific intent to effect a *quid pro quo*" completes the offense of bribery.  *Id.* ("The offer of the bribe is the violation of the statute.").   Kim and Messenger cannot admit that they offered Burke a job in exchange for a contract because, in doing so, they would admit to the charged offense—bribery.   There is no such thing as a "lawful *quid pro quo*," or proposing a *quid pro quo* without corrupt intent.   *See id.*; *cf. United States v. Gatling*, 96 F.3d 1511, 1522 (D.C. Cir. 1996) ("Given the equation of bribery with a *quid pro quo*, 'corruptly' in the context of the bribery statute would appear to mean that the [public official] defendant accepts money with the specific intent of performing an official act in return.").   Kim's and Messenger's attempt to confuse the Court here, if offered at trial, would similarly seek to confuse the jury—in other words, jury nullification.   The government would seek to preclude such a defense.

that "[t]here was no *quid pro quo*," Hrg. Tr. at 6, and obliquely promises to present evidence "on how all actions were legal," ECF No. 44 at 9.   Importantly, Burke does not actually appear to deny that the "discussions" to which Kim and Messenger refer took place.   *See* Hrg. Tr. at 39 (Counsel for Burke: "In this circumstance, they had conversations. And the evidence shows that while they may have had some preliminary conversations, Admiral Burke pushed back and says, 'I am not ready to have a serious conversation about this right now. I can come back to you at a later point.' That's what the evidence shows.").

These defenses are not irreconcilable.   They are not even factually inconsistent. Arguably, calling them "defenses" is generous.   None of the defendants have specified how they intend to prove any aspect of what they propose as defenses in their severance papers. Presumably, Burke and either Kim or Messenger would have to testify, but none of the defendants has committed to doing so.   This is yet another reason why the defendants' motions are speculative and premature.   *Cf. See United States v. Rose*, 104 F.3d 1408, 1416 (1st Cir. 1997) ("[A]ntagonism in defenses is measured by the evidence actually introduced at trial; argument by counsel is not evidence.").   The Court itself noted that the Court and the parties were "speculating" in this posture as to what the evidence would actually be and whether it would actually result in sufficient prejudice to the defendants.   Hrg. Tr. at 9.

Respectfully, the Court's findings as to the contours of the defendants' actual proffered defenses and why those defenses would be "mutually antagonistic" were factually incomplete and legally insufficient.   The government understands the Court's Order to be rooted in a concern that the defendants would be generally at odds if tried together.   Specifically, the Court was concerned that Kim and Messenger will seek to paint Burke "as a liar" or otherwise "point the finger" at him.[5]

---

[5]      Burke's throwaway "point at the end [of oral argument] that he would be suggesting that

Hrg. Tr. at 44.   But, for the reasons discussed below, this is an insufficient basis for severance and is not the same as "irreconcilable defenses."   *Cf. United States v. Haldeman*, 559 F.2d 31, 71 (D.C. Cir. 1976) ("The mere presence of hostility among defendants or the desire of one to exculpate himself by inculpating another have both been held to be insufficient grounds to require separate trials." (Internal quotation marks omitted)).

## II.   Granting Defendants' Severance Motions Runs Counter to the Relevant Precedent on Antagonistic-Defenses Claims and Would Be a Clear Error of Law

Although the law commits the decision of whether to sever a trial to the sound discretion of the district judge, *see United States v. Mejia*, 448 F.3d 436, 446 (D.C. Cir. 2006), controlling authority has established limits on that discretion.   In particular, a district court considering a defendant's motion to sever must hold the defendant to his or her heavy burden to demonstrate unavoidable prejudice as a result of a joint trial *and* that severance is the appropriate remedy, as opposed to less drastic measures such as jury instructions.   *See United States v. Tucker*, 12 F.4th 804, 825 (D.C. Cir. 2021); *United States v. Gooch*, 665 F.3d 1318, 1326 (D.C. Cir. 2012); *see also United States v. Simmons*, 431 F. Supp. 2d 38, 66 (D.D.C. 2006) ("To prevail on a motion for severance, a relatively drastic measure, defendants face a 'heavy burden': they must show that the threatened prejudice exists and can be remedied by severance alone.").

Rule 14 of the Federal Rules of Criminal Procedure allows a district court to sever the trials

---

Defendants Kim and Messenger may well be guilty of attempted bribery," Hrg. Tr. at 45, should have been rejected out of hand by the Court as forfeited, *Silver v. Internal Revenue Serv.*, 531 F. Supp. 3d 346, 360 n.5 (D.D.C. 2021) ("Generally, arguments raised for the first time at oral argument are forfeited." (Internal quotation marks omitted)), especially given that the Court denied the government any chance to respond.   Hrg. Tr. at 43.   Regardless, this argument too is entirely speculative and nothing more than "finger pointing."   It does not satisfy the definition of "mutually antagonistic defenses" for the purposes of severance and should not have formed any basis to grant the defendants' motions.

of properly joined defendants if a joint trial "appears to prejudice a defendant."   Fed. R. Crim. P. 14(a).   In interpreting Rule 14, however, the United States Supreme Court has cabined its application to specific and narrow circumstances because joint trials "play a vital role in the criminal justice system"; they "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."   *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (internal quotation marks omitted).   Accordingly, the Court has held that, "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 **only** *if there is a serious risk* that a joint trial would *compromise a specific trial right* of one of the defendants, or *prevent the jury from making a reliable judgment* about guilt or innocence."   *Zafiro*, 506 U.S. at 539 (emphasis added); *see also United States v. Hines*, 455 F.2d 1317, 1334 (D.C. Cir. 1971) ("[I]n reviewing the [district court's] exercise of that discretion, the balance has been struck in favor of joint trials." (Internal quotation marks omitted.)); *United States v. Franklin*, No. CR 04-128 (RMC), 2006 WL 8436050, at *4 (D.D.C. Nov. 7, 2006) ("To the extent that discretion to sever remains, it is tempered by the Supreme Court's admonition" in *Zafiro*).

Serious risks identified by the Supreme Court include circumstances where essential exculpatory evidence available to a defendant tried alone is unavailable in a joint trial, where defendants with drastically different degrees of culpability are tried together in a complex case, and where highly prejudicial evidence that is probative of a defendant's guilt is only technically admissible against a codefendant.   *Zafiro*, 506 U.S. at 539.

The Supreme Court, in rejecting the *Zafiro* defendants' arguments, also provided guidance as to what does *not* present a serious risk, specifically in the context of antagonistic defenses.   The defendants argued that "the very nature" of contradictory defenses prejudiced them because "when

two defendants both claim they are innocent and each accuses the other of the crime, a jury will conclude … that both defendants are lying and convict them both on that basis." *Id.* at 540. The Supreme Court dispatched with this concern, citing on the principles that "that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials" and that Rule 14 served to "promote economy and efficiency and to avoid a multiplicity of trials, so long as these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Id.* (internal quotation marks omitted). Importantly, a "fair trial" did not include any entitlement to exclude damaging testimony by a codefendant. *Id.* at 540.

In severing the trial in this case, this Court failed to follow *Zafiro*, and therefore misapplied Rule 14. Specifically, the Court did not hold defendants to their burden to identify a "specific trial right" that would be compromised by a joint trial, nor did the Court identify any such right in the Order. The Court could not have done so, because the record reflects no actual serious risk that a joint trial would compromise any defendant's specific trial rights. Here, as in *Zafiro*, the defendants have presented no "legally cognizable prejudice." *See* 506 U.S. at 541.

Nor did the Order address how a joint trial would present a risk to a jury's reliable judgment. The touchstone of severance on the basis of mutually antagonistic defenses is jury confusion. The test for severance on this basis, as articulated by the United States Circuit Court for the District of Columbia, is whether "there is a danger that the jury will unjustifiably infer that *the conflict alone* demonstrates that both are guilty." *United States v. Wright*, 783 F.2d 1091, 1094 (D.C. Cir. 1986) (emphasis added); *see also United States v. Leonard*, 494 F.2d 955, 966-67 (D.C. Cir. 1974) ("Subsequent cases stress the word 'alone[.]'"). The defenses must be "so contradictory as to raise an appreciable danger that the jury would convict *because of* the inconsistency." *Wright*, 83 F.2d at 1095. That is, the character and the degree of conflict must

be such that "logically," in order to convict one defendant, the jury must necessarily acquit the other.   *See id.*; *see also United States v. Tarantino*, 846 F.2d 1384, 1399 (D.C. Cir. 1988) (discussing *Wright*); *United States v. Bolden*, 514 F.2d 1301, 1310 (D.C. Cir. 1975) (affirming denial of severance where "[i]t does not seem to us that the defenses are so contradictory as to raise an appreciable danger that the jury would convict *solely on the basis of the inconsistency*" (emphasis added)).

It is this "logical" relationship which sets conflicting defenses on a "collision course" and makes them truly "irreconcilable" or mutually exclusive.   For this reason, the doctrine of mutually exclusive defenses is appropriate in a scenario where two defendants are charged with a particular offense and only one can be guilty of having committed the crime, such as the hypothetical posed by government counsel at the September 23 hearing on defendants' severance motions.   *See* Hrg. Tr. at 28.   In that scenario, where two defendants are charged with having shot a victim, only one of them could have pulled the trigger, they both accuse the other of firing the gun, and no independent evidence bends the needle either way, the jury's options are mutually exclusive—to convict one defendant is to acquit the other of that offense.[6]

It follows that the doctrine of irreconcilable or mutually antagonistic defenses is *not* applicable or appropriate where there is independent evidence of each of the defendants' culpability in the charged offenses.   *See United States v. Edelin*, 118 F. Supp. 2d 36, 50 (D.D.C.

---

[6]       The D.C. Circuit referred to a similar scenario in *United States v. Gilliam*, 167 F.3d 628 (D.C. Cir. 1999).   In contrast to the facts before the D.C. Circuit in *Gilliam*, where severance was not warranted, *State v. Kinkade*, 140 Ariz. 91, 680 P.2d 801, 804 (1984) involved defenses that were "completely antagonistic"—"only one of two codefendants could have committed the charged murder, each of the two codefendants admits being present at the crime scene, each charges the other with having committed the crime, and there is no possibility that a third party was present."   167 F.3d at 635.

2000) ("[T]he doctrine of irreconcilable defenses (mutually antagonistic defenses) is inapplicable where there is 'independent evidence of each defendant's guilt.' " (quoting *Leonard*, 494 F.2d at 966)); *see also Gilliam*, 167 F.3d at 635 (holding that defendants "[could not] show that the potential prejudice they faced from a joint trial [rose] to the *Zafiro* standards" where "[e]ach defendant's culpability was separately demonstrated."). Where there is substantial independent evidence supporting each defendants' culpability, as there is here, there is little to no risk that a jury would "convict solely on the basis of the inconsistency" between defenses, *see Bolden*, 514 F.2d at 1310, or absolve the government of its burden to prove each defendant guilty on each charged offense beyond a reasonable doubt, *see Gilliam*, 167 F.3d at 635 (Rule 14 serves to guard against the danger that "the jury will decide that at least one of the defendants is guilty regardless of whether the government has met its burden of proof.").[7]

For similar reasons, self-serving "finger-pointing"—which is what this Court appeared to rely as a basis for severance—is not a basis for severance. "Finger pointing" is akin to the general antagonism which courts have held to be insufficient (a) because it is common, and sustaining it as grounds for severance would result in severance in almost any multidefendant case, and (b) because "finger pointing" does not require a jury to make the kind of binary choice which is truly prejudicial or may confuse the jury. Indeed, courts across the country have soundly and explicitly rejected "finger pointing" as grounds for severance. *See*, *e.g.*, *United States v. Stencil*, 859 F. App'x 654, 660 (4th Cir. 2021) ("[A]ntagonistic defenses must involve more than finger pointing." (Internal quotation marks omitted.)); *United States v. Voigt*, 89 F.3d 1050, 1095 (7th Cir.1996)

---

[7]     For this reason, this Court's firm conviction as to the lack of "mismatch in evidence" against each defendant, *see* Hrg. Tr. at 44, *also* at 4, should also counsel against severance on the basis of irreconcilable defenses.

(noting that that courts have consistently held that finger-pointing and blame-shifting among co-conspirators do not support a finding of mutually exclusive defenses); *United States v. Delpit*, 94 F.3d 1134, 1143 (8th Cir. 1996) ("[C]o-defendants are often hostile to one another, and one will try frequently to 'point the finger,' to shift the blame, or to save himself at the expense of the other. 'Antagonistic' defenses require severance only when there is a danger that the jury will unjustifiably infer that *this conflict alone demonstrates that both are guilty.*" (Internal quotation marks omitted, emphasis in original.)); *United States v. Linn*, 31 F.3d 987, 992 (10th Cir. 1994) (affirming denial of severance where "the mutual antagonism complained of by defendants amounts to no more than finger pointing"); *United States v. Horton*, 847 F.2d 313, 317 (6th Cir. 1988) ("The mere fact that each defendant 'points the finger' at another is insufficient; the defendant must show that the antagonism confused the jury."); *United States v. Copeland*, 336 F. Supp. 2d 223, 224 (E.D.N.Y. 2004) ("[M]ere finger pointing among codefendants is not sufficient to warrant severance."); *United States v. Ferrera*, No. 93 CR 842, 1995 WL 355695, at *3 (N.D. Ill. June 12, 1995) ("Because [defendant] offers no more than the potential of hostility and finger pointing, he fails to make a sufficient showing to support severance."); *cf. United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir. 1987) ("Finger-pointing is an acceptable cost of the joint trial and at times is even beneficial because it helps complete the picture before the trier of fact."). If defendants jointly charged in a conspiracy were entitled to severance based on a strategic choice to point the finger at a codefendant, as the defendants argue here, no conspiracy case would survive a severance motion. *See, e.g.*, *United States v. Smith*, 44 F.3d 1259, 1266-67 (4th Cir. 1995) ("Because joint participants in a scheme often will point the finger at each other to deflect guilt from themselves or will attempt to lessen the importance of their role, a certain amount of conflict among defendants is inherent in most multi-defendant trials."); *Edelin*, 118 F. Supp. 2d at 50 ("If

the court were to take the arguments of Earl Edelin, any conspiracy trial would have to be severed.").

Because the defendants' proposed defenses are not, in fact, antagonistic, there is no prejudice to any defendant within the meaning of severance jurisprudence. Indeed, none of the defendants articulated a coherent theory of prejudice under the correct legal standard nor did the Order identify any prejudice rising to the level of "a serious risk that a joint trial would compromise a specific trial right" of any defendant. *See Zafiro*, 506 U. S. at 539. Given the similarities in the positions and the substantially overlapping evidence here, there is no reason on this record to think inconsistent defenses alone would drive a verdict.

While the government can appreciate the Court's desire to be "prudent" in severing the defendants' trial before any risk of prejudice ripens, Hrg. Tr. at 45, that desire is at odds with the legal standard with which the Court must comply. As a matter of law, the defendants must show actual, serious risk of prejudice resulting from a joint trial. *See United States v. Becker*, 585 F.2d 703, 707 (4th Cir. 1978) ("Speculative allegations as to possible prejudice do not meet the burden of showing an abuse of discretion in denying a motion for severance."); *cf. Franklin*, 2006 WL 8436050, at *6 ("Hypothetical strategic conflicts … are insufficient."). The defendants did not carry their burden, and this Court should not have relieved them of obligation to do so.[8]

---

[8] The Order also failed to address the preferred method to cure any prejudice that may arise during trial—jury instructions. Given the public's interest in joint trials and the law's presumption in their favor, the Supreme Court has emphasized that curative jury instructions should be employed before a district court resorts to severance. *Zafiro*, 506 U.S. at 539; *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). "The rule that juries are presumed to follow their instructions is a pragmatic one." *Id.* Absent unavoidable risk of jury confusion, which is not present here, curative jury instructions are indeed the more "prudent" course and should be employed in the event that risk of prejudice arises. The defendants should have been required to show that instructions would have been inadequate, *United States v. Gray*, 173 F. Supp. 2d 1, 7 (D.D.C. 2001) ("Curative instructions are the preferred method of preventing prejudice to defendants; to assert severance over curative jury instructions, *the defendant must show* that jury

### III.   There is Clear and Certain Prejudice to the Government as a Result of the Order, and it is Fundamentally Unfair in Light of Governing Law.

The government and the public have a strong interest in joint trials.   *United States v. Ford*, 870 F.2d 729, 730 (D.C. Cir. 1989) ("[I]n light of the Government's strong interest in favor of joint trials, this Court has struck a balance in favor of joinder." (Quoting *United States v. Perry*, 731 F.2d 985, 992 (D.C. Cir. 1984))); *United States v. Caldwell*, 543 F.2d 1333, 1359 (D.C. Cir. 1974) ("There is a substantial public interest in maintaining joint trials of codefendants."). "Joinder expedites the administration of justice, reduces the congestion of the trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once."   *Hines*, 455 F.2d at 1334.   The Supreme Court has emphasized that "[j]oint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit.   Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."   *Richardson*, 481 U.S. at 210.

Regardless of whether this Court's calendar can accommodate two trials instead of one, the Court "cannot ignore the general policy favoring joint trials of defendants indicted together." *United States v. Sutton*, 801 F.2d 1346, 1365 (D.C. Cir. 1986).   Those interests are especially strong where, as here, "the respective charges require presentation of much of the same evidence, testimony of the same witnesses, and involve [multiple] defendants who are charged, *inter alia*,

---

instructions would be inadequate to cure any potential prejudice." (Emphasis added.)), and this Court should not have granted severance without having determined that jury instructions would not suffice to cure the risk of actual prejudice should any arise.

with participating in the same illegal acts." *Id.*   As stated at the September 23 hearing and in the government's severance papers, the government expects to present the same evidence at any trial of the defendants because every offense charged in the indictment arises from the same course of conduct involving all three defendants.   Hrg. Tr. at 31; ECF No. 48 (Government's severance response) at 30.   This case will require the testimony of active duty service members and civilians employed by the U.S. Armed Services, multiple of whom are stationed abroad.   It would be unduly burdensome to require these witnesses to travel and prepare for multiple trials when the defendants have established no cognizable prejudice to themselves as a result of a joint trial.

Further, the government has a strong and legitimate interest in presenting its case as charged.   *United States v. Sumler*, 924 F. Supp. 247, 248 (D.D.C. 1996) ("In a multiple defendant conspiracy case such as this the Government must have the ability to present its case to the jury in as clear and cogent a manner as possible.").   Whereas a joint trial is highly unlikely to confuse a jury, especially with appropriate jury instructions, a split conspiracy trial with missing defendants is considerably more likely to confuse a jury.   *See id.* ("Granting Defendants' motion for severance would require the Government to break up the presentation of its planned case and probably cause confusion.").

The prejudice to the government as a result of the Order is clear.   If the Court does not reconsider its Order granting severance, prejudice to the government is certain.   In light of governing law, which unambiguously favors joint trials unless defendants have shown actual, serious prejudice, or there is a high likelihood that a jury will be confused or otherwise reach an unreliable verdict, the Order is fundamentally unfair.   The Order reflects an unsettling result against settled expectations.   If the Order stands, it will not just be an outlier; it will be a class of one.

18

**CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court reconsider

its decision granting severance and deny all three defendants' motions to sever their trials.

Respectfully submitted,

|  |  |
|---|---|
| MATTHEW M. GRAVES | COREY R. AMUNDSON |
| UNITED STATES ATTORNEY | Chief, Public Integrity Section |
| D.C. Bar No. 481052 | U.S. Department of Justice |

By: _____/s/_____                    _____/s/_____

Joshua S. Rothstein                         Trevor Wilmot
Rebecca G. Ross                              Kathryn E. Fifield
Assistant United States Attorneys      Trial Attorneys
601 D Street N.W.                           1301 New York Ave. NW
Washington, DC 20530                     Washington, D.C. 20530
Office: (202) 252-4490                      Office: (202) 514-1412