**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | **CRIMINAL NO. 24–265 (1) (TNM)** |
| **v.** | **:** | |
| | **:** | |
| **ROBERT P. BURKE,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**UNITED STATES' NOTICE OF INTENT
TO USE EVIDENCE UNDER FED. R. EVID. 404(B)**

Please take notice that the United States may seek to introduce at trial the evidence described below, which may be offered as inextricably intertwined with the crimes charged and under theories other than those embodied in Federal Rule of Evidence 404(b). But if the evidence is not otherwise admissible, its admission will be sought under Rule 404(b). The United States reserves the right to present said evidence during its case-in-chief, in cross-examination, and in rebuttal.

## I.     INDICTMENT

The Indictment alleges that Defendant Robert P. Burke, while employed as an Admiral in the U.S. Navy, conspired with and accepted an offer of future employment from co-defendants Charlie Kim and Meghan Messenger, in exchange for directing a government contract to "Company A." (*See* ECF No. 1, ¶¶ 20-21, 23-24, 51). The conspirators communicated about the contract and Burke's future employment throughout 2021, including at a key meeting in Washington, D.C. in July 2021 at which Kim and Messenger offered Burke a job at Company A. (*See, e.g., id*. at ¶¶ 3-35). Burke ordered his subordinates to provide the contract in December 2021, and "Company A" executed it in January 2022. (*Id*. at ¶¶ 38, 44).

The conspirators subsequently concealed their criminal activity from the United States Government. (*Id*. at ¶ 46). For example, in March and May 2022, while obtaining legal opinions

from a Navy Ethics Officer that were required to seek post-government employment, Burke falsely stated that he had no job discussions and was not seeking employment with a specific company. (*Id*. at ¶ 46(b), (c)). He also falsely claimed to the Navy Ethics Officer that the decision to contract with Company A was a subordinate's and not his own. (*Id*. at ¶ 46(c)).

"Person 3" was a personal companion of Burke's in the relevant period. (*Id*. at ¶ 9).

## II.    EVIDENCE

As part of its presentation at trial, the United States intends to introduce an April 15, 2022, recorded conversation between Burke and Person 3. In the conversation, Burke said he learned from an NCIS agent that Person 3's ex-husband sent NCIS a letter accusing Burke and Person 3 of having an illicit relationship. Burke recounted the agent's description of the letter, to include that it contained "an unusual number of specifics in here that would allow [NCIS] to investigate if it were within [its] jurisdiction."[1] Burke said that the NCIS agent told the ex-husband that other organizations would be better suited to investigate the allegations.[2]

Burke told Person 3 that when another organization obtained the letter, "they're gonna go look at it really hard," and "you and I will be toast." Burke further explained, "They will investigate. They will look at all sorts of things. They will look at dots that intersect . . . and they will draw a conclusion." Burke knew this to be the case because, as a senior Navy Admiral, "I've watched every one of these cases for the last seven years as somebody in a position to render decisions on them." Burke said that if an investigation occurred, he would have "to give everything away," including "personal emails[.]"

---

[1] Quotations attributable to Burke are based on a draft transcription of the recording.

[2] The statements from the NCIS agent and the ex-husband are not hearsay in this context because, rather than being offered for their truth, the relevance of the statements is to establish the effect on Burke, the listener.

Against this backdrop, Burke said that he had deleted records, and he encouraged Person 3 to do the same: "I've destroyed everything, you know . . . I would hope you would do the same . . . Everything, I destroyed. And you have to go looking hard because shit gets kept in a lot of places." Burke said that if the Navy came for "my private stuff[,] [t]hey're not gonna find anything, it's all gone. I sanitized heavily. I would ask you to do the same just in case . . . I've just seen it done too many times." Burke stated that another person helped delete his records too - the person "cleaned all of my files" and "got everything." Burke also told Person 3 to conceal her records, stating, "move it somewhere and fucking hide it, like on a thumb drive that nobody can find."

When Person 3 doubted whether she and Burke would be forced to provide records during an investigation, Burke responded that her job was at stake if the records came to light: "I see activity that precludes future government employment . . . I've seen that in the past." Burke also suggested that they coordinate a story to tell future investigators ("I could make a different story, but it's got to be really clean") and he threatened Person 3 if she did not accede to his demands ("Here's my statement: I'm not going by myself.").[3]

## III.    LEGAL STANDARDS AND ARGUMENT

Rule 401 of the Federal Rule of Evidence provides that evidence is relevant if "it has any tendency to make a fact of more or less probable than it would be without the evidence." Rule 402 provides that "relevant evidence is admissible unless," *inter alia*, another Rule of Evidence provides otherwise. Rule 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 404(b)(2), however, provides that such

---

[3] Burke also made self-serving denials about his future, claiming "I have no future employment." In the context of this call, the denial makes sense because: (1) Burke was similarly making false denials to the Navy Ethics Officer about seeking employment, and (2) he had ended his relationship with Person 3 and, therefore, had a motive not to share his true intentions. These denials would, in any case, be inadmissible as hearsay at trial.

evidence is admissible for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

The D.C. Circuit has recognized that although Rule 404(b) is "framed restrictively," the rule in practice "is quite permissive." *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc). It only prohibits the introduction of other acts evidence in "one circumstance," which is to show that the defendant's acts conformed to his character. *Id.*; *see also United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) ("[A]ny purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character") (emphasis in original); *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000) (Rule 404(b) is one of "inclusion rather than exclusion").

Accordingly, Rule 404(b) evidence is admissible at trial if it satisfies two prongs: (1) the evidence is probative of a material issue other than the defendant's character, and (2) the probative value of the evidence is not substantially outweighed by the risk of undue prejudice under Rule 403. *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1990). "Evidence of similar acts must also be sufficient to support a jury finding that the defendant committed the other crime or act." *United States v. Long*, 328 F.3d 655, 660 (D.C. Cir. 2003). When the other acts evidence is offered to prove intent, it "must meet a threshold level of similarity to be admissible." *Id.* at 661; *United States v. Williams*, 507 F. Supp. 181, 192 (D.D.C. 2020). "[E]xact congruence" is not required; rather, the similar acts only need to be "closely related to the offense." *Long*, 328 F.3d at 661. The acts need not have resulted in a criminal charge or a conviction; in fact, they do not even need to have been criminal or unlawful to be admissible under Rule 404(b). *See id.*

Applying this test, the Court should admit Burke's April 15, 2022, statement to Person 3. As an initial matter, the United States easily meets its burden of proving that Burke destroyed records and tried to convince Person 3 to do so – the evidence is Burke's own statement. *See Long*,

328 F.3d at 660. The statement also bears a close resemblance to the relevant conduct charged here. *Id.* at 661. Burke's stated goal in destroying records was to prevent the Navy from obtaining information. This conduct is strikingly similar to evidence that Burke concealed and misled the Navy Ethics Officer in reference to post-government employment and his involvement in contracting with Company A. In other words, in both incidents Burke concealed key information from the Navy – or at least endeavored to do so.

The evidence also satisfies the two-prong test for admissibility under Rule 404(b). *See Miller*, 895 F.2d at 1435. First, the evidence is probative of Burke's knowledge, intent, motive, plan, and absence of mistake. *Id*. The evidence that Burke deleted relevant records in April 2022 – to explicitly disrupt an expected investigation – makes it more likely that he acted with intent to deceive when making false statements to the Navy Ethics Officer in March and May 2022. *See Williams*, 507 F. Supp. at 190 ("The government is allowed to admit 404(b) evidence in the government's case-in-chief in anticipation that a defendant will deny intent or knowledge" (citing *United States v. Inserra*, 34 F.3d 83, 90 (2d Cir. 1994))). The statement also reflects that Burke was willing to coordinate a false story for Person 3 ("I could make a different story, but it's got to be really clean"), which further shows that he was willing to, and in fact intended, to mislead the Navy Ethics Officer.

Assuming Burke's response to evidence that he misled the Navy Ethics Officer is to claim a good faith mistake (*e.g.*, he forgot about the job discussions with Kim and Messenger, he did not consider them job discussions, or he did not realize he was required to disclose them), proof that Burke purposefully destroyed evidence a month earlier is relevant to prove absence of mistake.

Further, attempting to convince Person 3 to destroy or hide her records is probative of Burke's knowledge and motive. It shows that Burke knew she possessed incriminating information and was motivated to prevent that information from coming into investigators' possession. To be

sure, Burke's admissions in the recorded statement were made in the context of the ex-husband's letter accusing them of having an illicit relationship. Yet taking Burke at his word that he "look[ed] hard . . . in a lot of places" and "destroyed everything" shows that Burke thoroughly reviewed – and was therefore aware – of the full scope of his messages with Person 3. Those messages included ones directly relevant to the charged bribe scheme. For example, Burke would have seen his text messages with Person 3, exchanged the day after the key meeting with Kim and Messenger in Washington, D.C. (*see* ECF No. 1 at ¶ 35), in which he stated, "I've essentially agreed to work for them."

The second prong of the Rule 404(b) test is also satisfied because the probative value of the evidence is not substantially outweighed by the risk of undue prejudice. *See Miller*, 895 F.2d at 1435. Rule 403 "tilts, as do the rules as a whole, toward the admission of evidence in close cases, even when other crimes evidence is involved." *Cassell*, 292 F.3d at 795 (internal quotation marks removed). Thus, the Rule 403 balancing test "should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged." *Id*. The balancing test is a matter of discretion for the Court, and the assessment is "not of relevance, but of the evidentiary value of the government's Rule 404(b) evidence." *Crowder*, 141 F.3d at 1210.

Here, Burke's April 2022 statement to Person 3 is highly valuable evidence of Burke's intent to deceive the Navy, in that it closely overlaps in time and manner with the charged conduct. This similarity alone should be enough to admit the evidence. *See Cassell*, 292 F.3d at 795. By comparison, the risk of *undue* prejudice to Burke from admitting the evidence is minimal. In its case-in-chief, before introducing the Rule 404(b) evidence, the Government expects to establish that Burke engaged in a *quid pro quo* with Kim and Messenger and abused his position by ordering a government contract that Company A did not deserve, and then lied about it to conceal the scheme from the Navy. Against this backdrop, evidence that Burke also deleted records and attempted to

convince Person 3 to do so will not unfairly prejudice the jury against Burke. To be sure, admitting

Burke's statement is proof that Burke maintained an improper personal relationship with Person 3.

But the jury will learn about that regardless because it explains why Person 3 was a witness to the

bribe scheme. And, even assuming there was a danger of unfair prejudice to Burke (there is not),

the Court can instruct the jury as to the limited purpose of the evidence. *See Crowder* 141 F.3d at

1210; *Long*, 328 F.3d at 662 ("limiting instructions ordinarily suffice to protect the defendant's

interests.").

## IV.     CONCLUSION

Burke's April 15, 2022, recorded statement is admissible under the Federal Rules of

Evidence, including as evidence that is intrinsically intertwined with the charged conduct.

The statement is alternatively admissible under Rule 404(b), and the United States reserves the

right to introduce this evidence during its' case-in-chief, in cross examination during the

defendant's case, or in rebuttal.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

COREY R. AMUNDSON
Chief, Public Integrity Section
U.S. Department of Justice

By     /s/
Rebecca G. Ross
Assistant United States Attorney
601 D Street N.W.
Washington, DC 20530
Office: (202) 252-4490

     /s/
Trevor Wilmot
Kathryn E. Fifield
Trial Attorneys
1301 New York Ave. NW
Washington, D.C. 20530
Office: (202) 514-1412

## CERTIFICATE OF SERVICE

Undersigned counsel served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Dated:     November 29, 2024.

/S/ TREVOR WILMOT
*Trial Attorney*
*U.S. Department of Justice*