UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

-------------------------------------------------X
UNITED STATES OF AMERICA,

    -against-                                        Case No.: 1:24-cr-00265-TNM

ROBERT BURKE, et. al.
-------------------------------------------------X

## DEFENDANT ROBERT BURKE'S MOTION TO SUPPRESS SEARCH WARRANT EVIDENCE

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C), Defendant Robert P. Burke, by and through undersigned counsel, hereby moves this Court to suppress evidence obtained pursuant to the search warrants executed in February and September 2023. Defendant Burke joins the motion filed by co-defendants Yongchul "Charlie" Kim and Meghan Messenger and incorporates their arguments by reference. Additionally, Defendant Burke presents the following unique argument:

### INTRODUCTION

This entire case rests on the credibility of Witness-1, a known liar and perjurer. The search warrants issued in this investigation relied almost entirely on Witness-1's statements to investigators. Yet, the Government failed to notify the Court of the serious credibility issues with Witness-1. Defendant Burke joins in the arguments presented by co-defendants Kim and Messenger to suppress evidence obtained through search warrants on these grounds.

The co-defendant's motion relies primarily on the credibility determinations made by the Virginia State Court. For the sake of judicial economy, Defendant Burke will not repeat those arguments herein, but rather adopts them by reference. However, buried in that judicial opinion is a reference to another proceeding which presents a far more problematic issue for the Government

1

– that Witness-1 "further sought to **have the Marine Corps imprison father** to effectively trump his rightful claims to the child." Ex. 1, P. 5.

NCIS and the Defense Criminal Investigative Service (DCIS) were both part of the investigation in this case. Both NCIS and DCIS had access to the records showing Witness-1's history of false allegation. Yet, despite the actual knowledge of these two agencies who participated in the preparation of the warrant application, they inexcusably failed to disclose this to the Court.

Beyond Witness-1's general demonstrated credibility issues, the specific acts of dishonesty are particularly relevant. Witness-1 made false accusations of criminal conduct against her husband to try to put him in jail after the relationship broke down. In the case at bar, Witness-1 made these allegations of criminal conduct against Admiral Burke to try to put him in jail after their relationship broke down. This pattern of dishonesty should have been disclosed to the Court when seeking a search warrant but was not.

## STATEMENT OF FACTS

### False Allegations, State Court Determinations, and a Military Investigation

As outlined in the Virginia State Court's decision, there were significant credibility issues with Witness-1, noting that she repeatedly misrepresented facts to the court on basic matters. One of the most serious issues was her unfounded allegations of sexual abuse against her ex-husband. Experts testified that these allegations were based on false information provided by Witness-1. Additionally, the court found that Witness-1 manipulated the child into making false disclosures of sexual abuse, using tactics such as sleep deprivation and promises of rewards. Witness-1 also fabricated allegations that her ex-husband possessed child pornography, but a forensic evaluation found no evidence to support these claims. Furthermore, Witness-1 engaged in a campaign to

alienate the child from her ex-husband, preventing communication and denigrating him in front of the child. She sought military protective orders and civilian restraining orders based on false allegations to prevent her ex-husband from having access to the child. The court concluded that Witness-1's actions were part of a calculated strategy to gain an advantage in the custody and divorce proceedings, ultimately harming the child's relationship with her ex-husband.

Beyond her efforts in civilian court, she also made significant efforts to have military authorities take action against her husband.  Witness-1 actively campaigned for a military protective order and a military installation debarment order against her ex-husband from Camp Ederle in Vicenza, Italy, where she and the child resided. She made false allegations of sexual abuse and domestic violence to various mandated reporters, knowing these professionals would be required to act on her claims. Witness-1's actions led to prolonged investigations and restrictions on her ex-husband's ability to visit or communicate with the child. These efforts were part of her broader strategy to alienate the child from her ex-husband and gain an upper hand in the custody dispute.

Beyond the information in the Virginia State Court decision, there are references in the discovery to Witness-1's participation in an Article 32, Uniform Code of Military Justice (UCMJ) Hearing.  This hearing, which is the military's version of a grand jury, would have also made credibility determinations about Witness-1, which have not been disclosed to the Defense. However, all of this makes it clear that the Department of the Navy and, specifically the Naval Criminal Investigative Service (NCIS) were fully informed of Witness-1's credibility issues.  This is also evident in other NCIS investigative files in discovery where Witness-1 was attempting to persuade an acquaintance to back her story regarding alleged abuse and NCIS discovered this acquaintance barely knew Witness-1 and certainly could not corroborate any abuse allegations.

DOJ-0002619819. NCIS, and therefore DCIS had access to records that Witness-1's rampant unfounded allegations of child abuse against her husband were unfounded. DOJ 0002619492. NCIS records also disclose a 710 page report detailing how unfounded the allegations made by Witness 1 were, this report was created and in NCIS records in 2010. DOJ-0002598324

## Warrant Applications

Despite NCIS and DCIS having actual knowledge of Witness-1's severe credibility issues, the warrant applications are completely silent on this point. Oddly, the warrant applications seem to actually minimize the involvement of NCIS.

Page 6 of the Affadavit In Support of an Application for Search Warrant for Admiral Burke's personal @gmail account has the most illuminating language on this issue when Witness-1 is described for the court:

> Witness 1 contacted Department of Defense Investigators about Burke and NextJump, which initiated this investigation. Witness 1 has no criminal history and has not been paid for cooperating with the Agency. Witness 1 came forward with information about Burke after a sexual relationship/extramarital affair with him ended in or around the end of 2021. During interviews, Witness 1 provided agents with records, including emails and text messages corroborating Witness 1's statements, and further records from government sources corroborated her information about NextJump's contracts with the Navy.           DOJ-0002597894

Page 7 of a separate Affadavit In Support of an Application for Search Warrant for Admiral Burke's personal @gmail account repeats the language of the other Affadvit, adding language about credibility:

> SOI-1 1 contacted Department of Defense Investigators about Burke and NextJump, which initiated this investigation. SOI-1 has no criminal history and has not been paid for cooperating with the Agency. SOI-1 came forward with information about Burke after a sexual relationship with him ended in or around the end of 2021. During interviews, SOI-1 provided agents with records, including emails and text messages corroborating her statements, and further records from government sources corroborated her information

4

> about NextJump's contracts with the Navy. Agents, therefore, find SOI-1's
> information to be reliable                DOJ-0000688461

Neither affidavit describes Witness 1 in any other way, leading the court to believe that a credible witness provided the information in the affidavit, which could not be further from the truth.  Another court had taken the extraordinary step of not only finding Witness 1 to be untruthful but laying out that finding explicitly and harshly while awarding the father of Witness 1's only child full legal and physical custody, "Mother took advantage of this court's good will by fabricating false allegations" and "this court does not find [Witness 1] to be a credible witness". DOJ-0002598264 and DOJ-0002598306

## ARGUMENT

**A. Joinder in Co-Defendants' Motion**

Defendant Burke joins in the arguments set forth in the motion to suppress filed by co-defendants Kim and Messenger, challenging the validity of the search warrants on the basis of insufficient probable cause and other grounds as detailed in their memorandum of law. See *Franks v. Delaware*, 438 U.S. 154 (1978) (establishing the standard for challenging the validity of a search warrant based on false statements).

**B. The Investigative Agencies in This Case Possessed Actual Knowledge of Witness-1's Serious Credibility Issues**

The investigative agencies, including NCIS and DCIS, had access to information regarding Witness-1's prior false allegations against her ex-husband. This information should have been disclosed to the magistrate judge who issued the search warrants, as it directly impacts Witness-1's credibility. *See United States v. Leon*, 468 U.S. 897 (1984) (discussing the exclusionary rule and the importance of reliable information in warrant applications).

The principle of imputed knowledge holds that the knowledge of an agency is attributed to its investigators. In *United States v. Herring*, 555 U.S. 135 (2009), the court recognized that law enforcement agencies are expected to maintain and share information relevant to ongoing investigations. If NCIS and DCIS, as part of the investigative team, had access to Witness-1's prior false allegations, this knowledge should be imputed to the investigators involved in the current case.

The prosecution's reliance on Witness-1's statements, without disclosing her history of false allegations, violates Defendant Burke's right to due process. The credibility of Witness-1 is crucial to the probable cause determination, and the omission of her history of false allegations renders the search warrants invalid. *See Illinois v. Gates*, 462 U.S. 213 (1983) (emphasizing the totality of the circumstances in determining probable cause).

The failure to account for Witness-1's credibility issues, despite the availability of such information within the agency's database, demonstrates a lack of due diligence. This oversight further supports the argument that the search warrants were issued without a full and fair assessment of the facts, warranting suppression of the evidence obtained. *See Brady v. Maryland*, 373 U.S. 83 (1963) (requiring the disclosure of exculpatory evidence).

Additionally, in *United States v. Davis*, 617 F.2d 677 (D.C. Cir. 1979), the D.C. Circuit held that suppression was warranted where the government failed to disclose significant credibility issues of a key witness to the magistrate judge issuing the warrant. This precedent underscores the necessity of full disclosure to ensure the integrity of the warrant process.

## CONCLUSION

For the reasons stated above, Defendant Robert P. Burke respectfully requests that this Court suppress all evidence obtained pursuant to the search warrants executed in February and September 2023. At a minimum, this Court should order a *Franks* hearing and order the Government to disclose all evidence in its possession regarding these matters, including any Article 32 proceedings based on allegations made by Witness-1.

Respectfully submitted,

Timothy C. Parlatore, Esq.
Parlatore Law Group, LLP
*Counsel for Admiral Burke*
260 Madison Avenue, 17th Floor
New York, New York 10016