UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | CRIMINAL NO. 24–265 (1) (TNM) |
| v. | : | |
| | : | |
| **ROBERT P. BURKE,** | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' OPPOSITION TO DEFENDANT BURKE'S
MOTION TO DISMISS INDICTMENT FOR FAILURE TO STATE AN OFFENSE**

Defendant Robert P. Burke ("Burke") has filed a Motion to Dismiss the Indictment for Failure to State an Offense, ECF No. 71. Burke's Motion ignores firmly established legal precedent and misconstrues the charges against him and co-Defendants Yongchul "Charlie" Kim ("Kim") and Meghan Messenger ("Messenger"). As discussed below, the Indictment sufficiently alleges that Burke violated each offense charged. Burke's Motion is meritless and should be denied.[1]

**I.    THE INDICTMENT**

On May 30, 2023, the grand jury returned an Indictment charging Burke with four counts, including one count each of 18 U.S.C. § 371 (Conspiracy), 18.U.S.C. § 201(b)(2) (Bribery), 18 U.S.C. § 208(a) (Acts Affecting a Personal Financial Interest), and 18 U.S.C. § 1001(a)(1) (Concealment of Material Facts). The Indictment further charged co-Defendants Kim and Messenger with one count each of 18 U.S.C. § 371 (Conspiracy) and 18 U.S.C. § 201(b)(1) (Bribery). The Indictment alleges that Burke, while employed as an Admiral in the United States Navy, conspired with and accepted an offer of future employment from Kim and Messenger, in exchange for directing a government contract to "Company A." *See* ECF No. 1, ¶¶ 20-21, 23-24, 35, 51. The co-Defendants communicated about the contract and Burke's future employment

---

[1] In Burke's motion, Burke also joins Kim's and Messenger's Motion to Strike Surplusage and Exclude Irrelevant Evidence of Non-Official Acts, ECF No. 60-1. *See* ECF No. 71 at 7-8. The Government addresses these arguments in a separate opposition. *See* ECF No. 83.

1

throughout 2021, including at a key meeting in Washington, D.C. in July 2021 at which Kim and Messenger offered Burke a job at Company A with a $500,000 base salary and stock options. *See id.* ¶ 35. The co-Defendants reached an agreement—an illegal one—that the job offer was conditioned on Burke using his position and influence to (1) direct a government contract to Company A; and (2) delaying his retirement six months so that he could spend those six months influencing senior Navy Officers to award another contract to Company A. *See id.* at ¶¶ 20-25, 31 (Kim stating that Burke, "wants to work for us but we're asking for a deal first"), 35. To fulfill the first condition of the co-Defendants' corrupt agreement, Burke got to work steering contracts to Company A and "ordered Person 2 to provide a contract to Company A, to make sure the contract was in place by January 10, 2022, and for it to be valued at approximately $350,000." *Id.* at ¶ 38. While doing so, Burke continued to communicate with Kim and Messenger to keep them updated on his progress. *See id.* at ¶¶ 39-41. Burke's order worked—Company A was awarded a contract valued at $355,135 to provide training to Navy officials in Naples, Italy, and Rota, Spain. *Id.* at ¶ 41, 44. But helping Company A obtain this $355,135 contract with the Navy was not the only condition Burke had to fulfill if he wanted to join Company A—he also had to postpone his retirement six months so that he could use his position and influence to help Company A obtain additional contracts. *See id.* at ¶¶ 24, 35c. Burke got to work on this as well, emailing foreign military officers and other high ranking Navy officials to promote Company A, while concealing that Company A had offered him a job. *See id.* at ¶ 45. To demonstrate that he had fulfilled his end of their corrupt agreement, Burke included Kim and Messenger in his efforts. *See id.* at ¶ 45b.

      Burke and his co-Defendants subsequently concealed their criminal activity from the United States Government. *Id*. at ¶ 46. For example, in March and May 2022, while obtaining legal opinions from a Navy Ethics Officer that were required to accept post-government employment, Burke falsely stated that he was not having job discussions and was not seeking employment with

a specific company. *Id*. at ¶ 46b, c. He also falsely claimed to the Navy Ethics Officer that the decision to contract with Company A was a subordinate's and not his own. *Id*. at ¶ 46c. Burke purposefully concealed Kim and Messenger's job offer so that he could his position to ensure that Company A received a Navy contract and fulfill the requirements of the corrupt agreement. *See id.* at ¶¶ 21, 23-26, 35-44, 46, 55.

After Burke fulfilled his end of the corrupt agreement, by ensuring Company A obtained a contract with the Navy and delaying his retirement to give him the opportunity to promote Company A to his associates, it was time for Kim and Messenger to fulfill their end of the corrupt agreement—and they did. Ultimately, Burke joined Company A as a "Senior Partner." *Id.* at 47.

## II.   ARGUMENT

In his Motion, Burke argues that pursuant to Federal Rule of Criminal Procedure 12(b)(3), this Court should dismiss the: 1) bribery count (Count Three), for failing to allege an official act; 2) conspiracy count (Count One), for failing to establish an agreement and the requisite intent; 3) the conflicts of interest count (Count Four), for failing to establish that Burke participated personally and substantially in a matter with an effect on his financial interests; and 4) the concealment count (Count Five), for failing to establish the materiality of Burke's concealment and the requisite intent. None of Burke's arguments withstand scrutiny. As noted above, and discussed below, the Indictment sufficiently alleges that Burke violated each offense charged and Burke's Motion is meritless. This Court should deny Burke's motion to dismiss.

### A.   Legal Standards Governing Defendant's Motion

Federal Rule of Criminal Procedure 7 requires that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged" that lists the statute violated for each count. Fed. R. Crim. P. 7. An indictment is sufficient if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he

must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *See Hamling v. United States*, 418 U.S. 87, 117 (1974).

Under Federal Rule of Criminal Procedure 12, a defendant may challenge prior to trial the validity of an indictment. *See* Fed. R. Crim. P. 12(b)(3). When considering a motion to dismiss pursuant to Rule 12(b)(3), the Court "is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes." *United States v. Sunia*, 643 F.Supp.2d 51, 60 (D.D.C. 2009) (internal quotation marks and citation omitted). When deciding the sufficiency of the charges in an indictment, "the indictment must be viewed as a whole and the allegations must be accepted as true at this stage of the proceedings." *United States v. Bowdoin*, 770 F.Supp.2d 142, 145 (D.D.C. 2011).

For the purpose of the bribery statute, whether conduct is an official act is factual matter for the jury to decide. *See McDonnell v. United States,* 579 U.S. 550, 572-73 (2016).

### B. The Indictment Sufficiently Alleges An Official Act

Citing no legal authority, Burke argues that because he did not have the authority to approve the Navy's contract with Company A, the Indictment is insufficient and the bribery charge, Count Three, must be dismissed. *See* ECF No. 71 at 3-7. Burke does not cite to any legal authority because he cannot do so—legal precedent squarely forecloses this argument.

The elements of the bribery statute, 18 U.S.C. § 201(b)(2), that must be alleged are: (1) the defendant, directly or indirectly demanded, sought, received, accepted, or agreed to accept something of value; (2) at the time, the defendant was a public official; and (3) the defendant acted knowingly and corruptly in return for being influenced in the performance of an official act or being induced to violate a lawful duty. *See United States v. De Moya*, Crim. No. 19-158 (RBW), Doc. 232 at 32 (Final Jury Instructions) (D.D.C. June 5, 2023); 11th Cir. Mod. Crim. Jury Instr. O5.2; *see also* 18 U.S.C. § 201(b). For a public official to be guilty of bribery, he must have

4

"agreed to perform an 'official act' at the time of the alleged *quid pro quo*." *McDonnell*, 579 U.S. at 572-573 (2016). An official act is defined as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." 18 U.S.C. § 201(a)(3). Whether alleged conduct constitutes an "official act" is a factual question for the jury to determine: "It is up to the jury, under the facts of the case, to determine whether the public official agreed to perform an 'official act' at the time of the alleged *quid pro quo*." *McDonnell,* 579 U.S. at 572-73; *see also United States v. Miserendino*, 283 F. Supp. 3d 489, 492-93 (E.D. Va. 2017) (denying motion to dismiss and leaving for jury whether defendant committed "official act"). An Indictment is sufficient, so long as the "official act" alleged is not something the Supreme Court has categorically held cannot constitute an official action, such as setting up a meeting or making a phone call. *Id.*

Here, the Indictment sufficiently alleges each element of the bribery statute, 18 U.S.C. § 201(b)(2), and provides more than enough detail to establish that Burke agreed to perform an official act at the time of the *quid pro quo*. In Count Three, the Indictment plainly alleges that Burke "sought and received from KIM and MESSENGER an offer of employment with and future compensation from Company A, in return for BURKE ordering a United States Government contract for Company A." ECF No. 1 at ¶ 51. Even more specifically, the Indictment further alleges that Burke "solicited and accepted things of value, including employment at Company A, with a yearly base salary of $500,000 and a grant of 100,000 stock options." *Id*. at ¶ 23. The Indictment goes on to allege that in return for those things of value, Burke "agreed to and did use his official position, authority, and influence at the Navy to help Company A obtain a contract from U.S. Naval Europe and Africa," *id.* at ¶ 24, and agreed to "remain in the Navy for approximately

six months and influence other senior Navy officers to award another contract for Company A[,]" *id.* at ¶ 25.

The official act alleged here—the steering of contracts to Company A—fits squarely within the definition of an "official act." As set forth in *McDonnell,* a "public official may also make a decision or take an action on a 'question, matter, cause, suit, proceeding or controversy' by using his official position to exert pressure on another official to perform an "official act.'" *McDonnell*, 579 U.S. at 572 (quotations in original). The Indictment alleges such an action: "On December 17, 2021, BURKE **ordered** Person 2 to provide a contract to Company A, to make sure the contract was in place by January 10, 2022, and for it to be valued at approximately $350,000." ECF No. 1, at ¶ 38. (emphasis added).

Importantly, in direct contravention with Burke's argument, courts have widely recognized that a public official need not have the specific authority to make a final decision or take binding action for the act to be sufficient for a Section 201 violation. *See United States v. Heffler*, 402 F.2d 924 (3rd Cir. 1968); *Parks v. United States*, 355 F.2d 167 (5th Cir. 1965); *United States v. Labovitz*, 251 F.2d 393 (3rd Cir. 1958); *Wilson v. United States*, 230 F.2d 521 (4th Cir.); *Krogmann v. United States*, 225 F.2d 220, 225 (6th Cir. 1955); *Hurley v. United States*, 192 F.2d 297, 300 (4th Cir. 1951); *Canella v. United States*, 157 F.2d 470, 480-481 (9th Cir. 1946).  As such, Burke's arguments that Burke did not have the authority to approve a contract with Company A is neither dispositive, nor has any bearing on whether the Indictment properly alleges an official action. Nonetheless, the Defendant clearly did have the authority to take binding action—Company A contracted with the Navy only because the Defendant ordered it to happen. ECF No. 1 at ¶ 38.

Burke's attempts to litigate the bribery's "official action" requirement pre-trial is an effort to circumvent the jury, and his motion should be denied. Even so, Burke's arguments that the

Indictment is insufficient with respect to Count Three for failing to allege an official action rest on irrelevant principles, fail to address firmly established legal precedent, and ignore the allegations. The allegations in the Indictment—that Burke was offered and accepted a bribe in exchange for steering a contract to Company A—if true, would constitute a bribery offense pursuant to 18 U.S.C. § 201(b)(2). Count Three is sufficiently pled and Burke's motion should be denied.

### C. The Indictment Sufficiently Alleges Burke Entered Into A Corrupt Agreement To Commit Bribery

Burke next argues that that the conspiracy charge, Count One, must be dismissed because the Indictment fails to allege specific facts demonstrating an agreement or an intent to commit bribery. *See* ECF No. 71 at 8.  This argument also fails because the Indictment's allegations are sufficient.

Here, the elements of the conspiracy statute, 18 U.S.C. § 371, that must be alleged are: (1) the defendant entered into an agreement with at least one other person to commit bribery; (2) the defendant knowingly participated in the conspiracy with the intent to commit bribery; and (3) that at least one overt act was committed in furtherance of the conspiracy. *See United States v. Wynn*, 61 F.3d 921, 928-29 (D.C. 1995). Despite Burke's misguided assertions, the Indictment is neither lacking nor vague. It alleges each element of conspiracy statute, 18 U.S.C. § 371. The Indictment asserts that Burke and Kim and Messenger did "agree with each other" to "commit an offense against the United States[,]" including bribery, 18 U.S.C. § 201(b)(2). ECF No. 1, at ¶ 20. In addition to specifically alleging an agreement, the Indictment describes a myriad of ways one can infer such an agreement existed, including Kim's assertion that Burke "wants to work for us but we're asking for a deal first," *Id.* at ¶ 31, and multiple over acts taken in furtherance of the conspiracy, such as Burke's actions following his July 23, 2021, lunch meeting with Kim and Messenger. These actions, alleged overt acts, include Burke's "order" to Person 2 that the Navy

7

enter into a contract with Company A, *id.* at ¶ 38, Burke's communications with Kim and Messenger about Company A's contract with the Navy, *see id.* at ¶¶ 39-41, Burke's repeated promotion of Company A to other senior officials at the Navy, *see id.* at ¶ 45, the timing of Burke's retirement from the Navy, *see id.* at ¶¶ 1, 35, 46, and Burke's subsequent employment at Company A, *id.* at ¶ 47.

The Indictment further alleges Burke had the requisite mental state. Specifically, the Indictment alleges that Burke agreed with Kim and Messenger to "corruptly demand, sick, receive, accept, and agree to receive and accept anything of value personally and for any other person and entity, in return for being influenced in the performance of an official act, in violation of Title 18 United States Code, Section 201(b)(2)." *Id.* at ¶ 20. Burke's corrupt mental state is further highlighted in the Indictment through its description of Burke's efforts to hide his agreement with Kim and Messenger, through Burke's misleading and false statements, and Burke's material omissions. *Id.* at ¶¶ 26, 46, 55.

Burke further argues that because Burke's alleged actions do not meet the definition of an "official act," the conspiracy charge must be dismissed. *See* ECF No. 71 at 8. However, as discussed above, this argument is both premature and meritless. As such, it has no bearing on whether the Conspiracy charge is sufficiently pled.

The allegations in the Indictment—that Burke agreed with Kim and Messenger to commit bribery—if true, would constitute a conspiracy offense pursuant to 18 U.S.C. § 371. Count One is sufficiently pled and Burke's motion should be denied.

### D. The Indictment Sufficiently Alleges Burke Participated In An Act Affecting His Personal Interest

Next, Burke argues that Count Four, the conflicts of interest charge, must be dismissed for failure to establish that Burke's actions constituted a violation. *See* ECF No. 71 at 9-10. More

8

specifically, Burke maintains that the Indictment does not demonstrate that Burke "participated in any particular matter with a direct and predictable effect on his financial interests at the time of the alleged conduct" and that Burke's "involvement in the contracting process was personal and substantial." *Id.* at 9.

The elements of the conflicts of interest charge, 18 U.S.C. § 208(a), that the Government must allege are: 1) the defendant is an officer or employee of the executive branch of the United States Government; 2) the defendant participated personally and substantially as a Government officer or employee; 3) in a judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter; (4) in which the defendant knew they, their spouse, or minor child had a financial interest. *See also United States v. Stadd*, 636 F.3d 630, 636 (D.C. Cir 2011). The allegations in the Indictment are more than sufficient to establish Burke's actions constitute a violation of 18 U.S.C. 208(a). It plainly alleges each element of the statute: "knowingly and willfully participated personally and substantially as a United States Government officer and employee, through decision, approval, disapproval, recommendation, the rendering of advice, and otherwise in a particular matter, that is, the awarding of United States Government contracts to Company A, a company with which BURKE was negotiating and had an arrangement concerning prospective employment and had a financial interest." ECF No. 1 at ¶ 53. The Indictment further describes how Burke "personally and substantially" ensured Company A received a contract with the Navy by "order[ing] Person 2 to provide a contract to Company A, to make sure the contract was in place by January 10, 2022, and for it to be valued at approximately $350,000." *Id.* at ¶ 38. In fact, the Indictment is clear that Company A would not have had a contract without Burke's personal and substantial involvement. As detailed, Kim and Messenger advocated extensively on behalf of Company A for a contract

with the Navy. *See e.g.*, *id.* at ¶¶ 14, 16, 27, 29. Despite Kim's and Messenger's best efforts, Company A did not have a contract from November 2019, *id.* at ¶ 12-13, until January 2022, immediately following Burke's direct order to Person 2, *id.* at ¶ 38, 42-44. The Indictment further alleges Burke's significant personal stake in Company A, including his future employment, yearly base salary of $500,000, and stock options. *See id.* at ¶¶ 35c, 47.

In arguing that the Indictment is insufficient to allege a violation of 18 U.S.C.§ 208(a), Burke argues the Indictment fails to allege that he "participated in a specific matter that had a direct and predictable effect on his financial interests." ECF No. 71 at 9. Contrary to Burke's misleading assertions, this is not an element of 18 U.S.C. § 208(a) that needed to be alleged in the Indictment. Even so, the Indictment clearly alleges that Burke's actions with respect to Company A and the Navy had a "direct and predictable" effect on his financial interests. For example, the Indictment alleges that as early as July 23, 2021, Kim and Messenger offered Burke "a job at Company A – at a salary of at least $500,000 per year plus stock options and other related compensation[.]" ECF No. 1 at ¶ 35c. Less than five months later, knowing that he had a future employment opportunity at Company A and that the additional revenue from a contract with the Navy would benefit Company A and, perhaps, the value of his stock options, Burke "ordered" Person 2 to provide a contract to Company A and dictated the value of that contract, *see id.* at ¶ 38.

The allegations in the Indictment—that Burke participated personally and substantially in awarding government contracts to Company A, a company with which Burke had a financial interest—if true, would constitute a conflicts of interest offense pursuant to 18 U.S.C. § 208(a). Burke's motion to dismiss Count Four is meritless and should be dismissed.

### E.  The Indictment Sufficiently Alleges Burke Concealed A Material Fact

Lastly, Burke argues that Count Five, the concealment count, should be dismissed because the Indictment "fails to provide sufficient detail to support" the elements of the offense. ECF No. 71 at 10. More specifically, Burke asserts that the Indictment fails to allege how Burke's concealment was material and done with the intent to mislead or deceive. *Id.*

The elements of a concealment scheme, charged pursuant to 18 U.S.C. § 1001(a)(1), that the Government must allege are: 1) the defendant knowingly falsified or concealed a fact; 2) the defendant acted willfully in falsifying or concealing the fact; 3) the defendant accomplished the falsification or concealment of the fact by trick, scheme, or device; 4) the fact was material; and 5) that the subject matter involved was within the jurisdiction of the executive branch of the United States Government; *See United States v. Barrow,* 109 F.4th 521, 529-30 (D.C. 2024); *see also United States v. David Hossein Safavian,* No. 1:05-CR-00370*,* ECF No. 244 at 67 (D.D.C. Dec. 16, 2008); *see also United States v. White Eagle*, 721 F.3d 1108, 1116 (9th Cir. 2013); *United States v. Dale*, 782 F. Supp. 614, 626 (D.D.C. 1991). The Indictment sufficiently alleges each one of these elements. The Indictment plainly alleges that Burke "knowingly and willfully falsified, concealed, and covered up by a trick, scheme, and device a material fact in a matter within the jurisdiction of the executive branch of the United States Government; that is, BURKE intended to and did conceal from the Navy the fact that he received an offer of employment at Company A prior to taking acts to promote Company A's business within the Navy." ECF No. 1 at ¶ 55.

Moreover, the Indictment alleges details about both the materiality of Burke's concealment and Burke's willfulness in doing so. For example, the Indictment describes how Kim and Messenger offered Burke a job at Company A, with a salary and stock options, on July 23, 2021. *Id.* at ¶ 35. At that time, Company A did not have a contract with the Navy. *Id.* at ¶ 17. The

11

Indictment alleges that Burke, as a four-star admiral with the Navy, was prohibited from participating in any official action associated with the financial interests of a potential employer. *Id.* at ¶ 4d. Even more specifically, it alleges that if Burke was "personally and substantially involved in procurement greater than $150,000," he had to "promptly report[] all contacts from bidders regarding employment, even if promptly rejected." *Id.* at ¶ 4e. When Burke ordered Person 2 to contract with Company A for $350,000, *id.* at ¶ 38, he already had a job offer from Kim and Messenger, *id.* at ¶ 35, which required him to report his involvement with Company A, *id.* at ¶ 4. Knowing this, Burke purposefully concealed the job offer that he received from Kim and Messenger, i*d.* at ¶¶ 24-26, 46, 55, which was a material fact, *id.* at ¶ 55, because had Burke reported his job offer, he would have had to stop promoting Company A's business and would have been unable to order Person 2 to contract with Company A, *id.* at ¶ 4. Because Burke did not report his Company A job offer, he did not have to recuse himself from the contract negotiations with Company A and was able to fulfill his end of the corrupt agreement and steer government contracts to Company A, *see id.* at ¶¶ 21, 23-26, 35-44, 46, 55.

The allegations in the Indictment—that Burke concealed Company A's job offer so that he could take acts to promote Company A within the Navy—if true, would constitute a concealment of material facts pursuant to 18 U.S.C. § 1001(a)(1). Burke's arguments that Count Five should be dismissed lack merit and should be denied.

## CONCLUSION

For the foregoing reasons, Burkes' Motion to Dismiss the Indictment for Failure to State an Offense should be denied.

        Respectfully submitted,

        MATTHEW M. GRAVES  
        UNITED STATES ATTORNEY  
        D.C. Bar No. 481052

By:    */s/ Rebecca G. Ross*

        Rebecca G. Ross  
        Assistant United States Attorneys  
        601 D Street N.W.  
        Washington, DC 20530

        Trevor Wilmot  
        Kathryn E. Fifield  
        Trial Attorneys  
        1301 New York Ave. NW  
        Washington, D.C. 20530

## CERTIFICATE OF SERVICE

Rebecca G. Ross, attorney for the United States, hereby certifies that a true and correct copy of this opposition has been electronically served on attorney for Burke.

*/s/ Rebecca G. Ross*
Rebecca G. Ross
