UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

----------------------------------------------X
UNITED STATES OF AMERICA

   -against-                                     Case No.: 1:24-cr-00265-TNM

ROBERT P. BURKE, et. al.
----------------------------------------------X

**DEFENDANT'S RESPONSE TO THE UNITED STATES' MOTION TO ADMIT OUT-OF-COURT STATEMENTS BY CO-CONSPIRATORS**

## I. Introduction

Defendant Robert P. Burke, by and through undersigned counsel, respectfully submits this response to the Government's motion to admit out-of-court statements by co-conspirators Charlie Kim and Meghan Messenger under Federal Rule of Evidence 801(d)(2)(E). The Government seeks to admit these statements on the basis that they were made during and in furtherance of a conspiracy involving Admiral Burke. However, the evidence does not support the conclusion that Admiral Burke was a knowing and willing participant in any such conspiracy. Therefore, the statements are inadmissible against him.

## II. Legal Analysis

Federal Rule of Evidence 801(d)(2)(E) allows for the admission of statements made by a co-conspirator during and in furtherance of a conspiracy. To admit such statements, the Government must establish by a preponderance of the evidence that: (1) a conspiracy existed; (2) the defendant and the declarant were members of the conspiracy; and (3) the statement was made during and in furtherance of the conspiracy.

The D.C. Circuit has consistently held that the existence of a conspiracy must be established by independent evidence, apart from the statements themselves. In *United*

*States v. Gatling*, 96 F.3d 1511 (D.C. Cir. 1996), the court emphasized the necessity of independent evidence to corroborate the existence of a conspiracy. Similarly, *United States v. Apodaca*, 275 F. Supp. 3d 123 (D. D.C. 2017), clarified that the statement itself cannot solely establish the existence of a conspiracy or participation in it. The court must find by a preponderance of the evidence that a conspiracy existed and that both the defendant and the declarant were members of that conspiracy.

**III. The Government has Failed to Establish the Existence of a Conspiracy**

The Government has failed to provide sufficient independent evidence to establish the existence of a conspiracy involving Admiral Burke. The mere association with alleged co-conspirators or knowledge of their activities is insufficient to prove participation in a conspiracy. The Government must demonstrate that Admiral Burke agreed to participate in the conspiracy with the intent to further its unlawful objectives, as outlined in *United States v. Brockenborrugh*, 575 F.3d 726 (D.C. Cir. 2009).

Admiral Burke consistently maintained professional boundaries and rejected any improper discussions. He deferred official employment discussions with Company A until he received authorization from the Navy, as evidenced by his email on May 13, 2022, stating, "I have all my ducks in a row now with Navy to have discussions with you on employment." This demonstrates Admiral Burke's adherence to legal and ethical standards, contradicting any notion of his involvement in a conspiracy.

Furthermore, the regulatory framework governing Navy contracts is stringent, and Admiral Burke did not have the authority to bypass it. Simply put, decisions made on contracts with the government were not Admiral Burke's decisions to make. The Federal Acquisition Regulation (FAR) and related supplements require multiple levels of review and approval, none of which were under Admiral Burke's control. The contracting officer,

not Admiral Burke, awarded the contract, which further supports the argument that Admiral Burke was not a participant in any conspiracy.

Significant inconsistencies in the Government's narrative also undermine the assertion of a conspiracy. Internal communications between Kim and Messenger often reflect their own strategic considerations and expectations, rather than any agreement or participation by Admiral Burke. For example, Messenger's remark on November 18, 2021, about Admiral Burke likely joining their team next summer reflects her expectations, not Admiral Burke's agreement or involvement in a conspiracy. If a conspiracy existed to hire Admiral Burke in order to obtain Navy contracts, that conspiracy was between Messenger and Kim alone, and did not include Admiral Burke.

Additionally, the indictment fails to establish any specific decision or action by Admiral Burke that would qualify as an "official act" under the stringent criteria set forth in *McDonnell v. United States*, 579 U.S. 550 (2016). The absence of such allegations further undermines the Government's claim of a conspiracy involving Admiral Burke.

In conclusion, the factual context demonstrates that Admiral Burke was not a knowing and willing participant in any conspiracy. The Government has not met its burden to establish the existence of a conspiracy involving Admiral Burke, and therefore, the statements made by Kim and Messenger are inadmissible against him under Federal Rule of Evidence 801(d)(2)(E).

**IV. Analysis of Statements**

**1. April 20, 2021, Email from Kim to Company A Personnel**

The statement in this email reflects Kim and Messenger's internal strategizing, where Kim wrote that Messenger "felt slimy" because Admiral Burke "wants to work for us but we're asking for a deal first." This statement does not demonstrate Admiral Burke's

3

agreement or active participation in the conspiracy. It is inadmissible as it does not further a conspiracy involving Admiral Burke but rather shows the internal dynamics and considerations of Kim and Messenger. The Government has not provided independent evidence to corroborate Admiral Burke's involvement in any conspiracy.

2. **May 10, 2021, Email to Company A Personnel**

In this email, Messenger explained the decision to propose a $20 million contract instead of $50 million to avoid appearing to take advantage of Admiral Burke. This decision is a unilateral action by Kim and Messenger, reflecting their strategic considerations. It does not implicate Admiral Burke as a co-conspirator, as there is no evidence that Admiral Burke was involved in or aware of this decision. Therefore, the statement is inadmissible against Admiral Burke. The Government has not shown that Admiral Burke was a knowing participant in any conspiracy, simply charging a conspiracy is not itself evidence of a conspiracy.

3. **July 23, 2021, Email from Kim to Senior Company A Personnel**

Kim's email describes a meeting with Admiral Burke, stating, "Burke. Crazy day. Five hours. He would have stayed all night if we stayed. In short [a contract] starting with his command almost ASAP." While the email details a meeting with Admiral Burke, it lacks evidence of his agreement to the conspiracy. The statement is inadmissible as it does not further a conspiracy involving Admiral Burke but merely reports on a meeting without indicating Admiral Burke's participation in any unlawful agreement. The Government has not provided independent evidence to support the existence of a conspiracy involving Admiral Burke.

4. **September 14, 2021, Email to Company A Personnel**

Messenger's email explained the decision to propose a smaller contract, stating, "We don't want Bob [Burke] to get off the hook…" This statement reflects Kim and Messenger's strategy to maintain leverage over Admiral Burke, not his participation in the conspiracy. It is inadmissible because it does not demonstrate Admiral Burke's involvement or agreement to the conspiracy but rather shows the intentions and tactics of Kim and Messenger. The Government has not shown that Admiral Burke was a knowing participant in any conspiracy.

5. **November 16, 2021, Email from Kim to Company A Personnel**

In this email, Kim described a meeting with Admiral Burke, stating they were about to go "full force back into business with the Navy." The email outlines plans by Kim and Messenger, not Admiral Burke's involvement. It is inadmissible as it does not further a conspiracy involving Admiral Burke but rather indicates the aspirations and plans of Kim and Messenger without implicating Admiral Burke. The Government has not provided independent evidence to support the existence of a conspiracy involving Admiral Burke.

6. **November 17, 2021, Email from Kim to a Company A Partner**

Kim outlined a plan for a Navy contract, stating, "Contract signed before Xmas and then we're off to the races…" This plan is a strategy by Kim and Messenger, and it does not provide evidence of Admiral Burke's participation. The statement is inadmissible because it does not demonstrate Admiral Burke's involvement or agreement to the conspiracy, but rather reflects the intentions of Kim and Messenger. The Government has not shown that Admiral Burke was a knowing participant in any conspiracy.

7. **November 18, 2021, Email from Messenger to Kim**

Messenger remarked, "Weird to think Burke gonna be on our team likely next summer eh[.]" This statement reflects Messenger's expectations, not Admiral Burke's agreement or participation. It is inadmissible because it does not further a conspiracy involving Admiral Burke but rather shows Messenger's anticipation of future events without evidence of Admiral Burke's involvement. The Government has not provided independent evidence to support the existence of a conspiracy involving Admiral Burke.

8. **January 1, 2022, Email from Kim to Messenger**

Kim lamented the Navy deal, stating, "navy deal feels awful, so little money and all the work we need to do to make upside." The email discusses the deal's challenges but does not implicate Admiral Burke as a co-conspirator. It is inadmissible because it does not further a conspiracy involving Admiral Burke but rather reflects Kim's dissatisfaction with the deal. The Government has not shown that Admiral Burke was a knowing participant in any conspiracy.

9. **October 5, 2022, Text Message from Messenger to Kim**

Messenger expressed frustration, stating, "no contract no job. Go screw. The contract doesn't even cover 1 year salary. Feeling played." The message reflects Messenger's frustration and does not demonstrate Admiral Burke's participation in the conspiracy. It is inadmissible because it does not further a conspiracy involving Admiral Burke but rather shows Messenger's disappointment with the outcome. The Government has not provided independent evidence to support the existence of a conspiracy involving Admiral Burke.

**10.      April 9, 2021, Emails from Kim to Individual Investors**

Kim informed investors of a meeting with Admiral Burke, stating he pitched himself as an "ambassador/custodian" for Company A. Informing investors of Admiral Burke's potential role was a strategy by Kim and Messenger. It does not provide evidence of Admiral Burke's participation and is inadmissible because it does not further a conspiracy involving Admiral Burke, but rather serves to update investors on Company A's activities. The Government has not shown that Admiral Burke was a knowing participant in any conspiracy.

**11. July 23, 2021, Meeting Summary to Investors**

Kim summarized a "three-phase plan" with Admiral Burke, indicating his potential future employment with Company A. The summary outlines a plan involving Admiral Burke but lacks evidence of his agreement to the conspiracy. It is inadmissible because it does not further a conspiracy involving Admiral Burke but rather reflects Kim's and Messenger's plans and expectations without implicating Admiral Burke. The Government has not provided independent evidence to support the existence of a conspiracy involving Admiral Burke.

**V. Request for an Evidentiary Hearing**

Given the significant disputes regarding the existence of a conspiracy involving Admiral Burke, the defense respectfully requests an evidentiary hearing. The purpose of this hearing would be to allow the court to evaluate the evidence presented by the Government and determine whether it has met its burden under Federal Rule of Evidence 801(d)(2)(E).

An evidentiary hearing is warranted in this case due to the lack of independent evidence supporting the Government's assertion of a conspiracy involving Admiral Burke.

As established in *United States v. Gatling*, 96 F.3d 1511 (D.C. Cir. 1996), the court must find by a preponderance of the evidence that a conspiracy existed and that the defendant was a member of that conspiracy. The defense contends that the Government has not provided sufficient evidence to meet this standard.

> As Judge Friedman previously explained:
>
>> The Court may make this determination either before trial after an evidentiary hearing or may let the trial proceed at the government's risk that it will not be able to carry its burden, thereby requiring the grant of a mistrial or the striking of already admitted evidence, if it fails to do so.

*United States v. Safavian*, 435 F. Supp. 2d 36, 46 (D.D.C. 2006), *citing United States v. Slade*, 200 U.S. App. D.C. 240, 627 F.2d 293, 306-07 (D.C. Cir. 1980); *United States v. James*, 590 F.2d 575, 580-81 (5th Cir.), cert. denied, 442 U.S. 917, 61 L. Ed. 2d 283, 99 S. Ct. 2836 (1979).

Given the volume of statements that the Government intends to introduce, an evidentiary hearing would alleviate the risk of a mistrial and promote judicial economy. The hearing would provide an opportunity to examine the credibility of the Government's evidence and to present additional context that supports Admiral Burke's position. It would also allow the court to make a more informed decision regarding the admissibility of the statements in question.

## VI. Conclusion

The Government has failed to demonstrate that Admiral Burke was a knowing and willing participant in the alleged conspiracy. The statements made by Kim and Messenger reflect their internal strategies and expectations, not Admiral Burke's active participation or agreement. The defense respectfully requests that the Court deny the Government's

motion to admit these statements and grant an evidentiary hearing to further assess the existence of a conspiracy involving Admiral Burke.

                    Respectfully submitted,

Timothy C. Parlatore, Esq.
Parlatore Law Group, LLP
*Counsel for Admiral Burke*
260 Madison Avenue, 17th Floor
New York, New York 10016