UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT P. BURKE,<br>YONGCHUL "CHARLIE" KIM, and<br>MEGHAN MESSENGER,<br><br>      Defendants. | Case No. 1:24-cr-00265-TNM |

**REPLY IN SUPPORT OF YONGCHUL "CHARLIE" KIM AND MEGHAN MESSENGER'S JOINT MOTION TO SUPPRESS SEARCH WARRANT EVIDENCE**

The government's opposition ("Opposition" or "Opp.") (ECF No. 95) to Movants' joint motion to suppress search warrant evidence (the "Motion" or "Mot.") (ECF No. 61-1) is unpersuasive for two reasons. *First*, the government argues that the omission from the warrant affidavits of Witness 1's prior adverse credibility findings and other exculpatory evidence is irrelevant because other evidence in the affidavits was sufficient to establish probable cause. But this argument downplays the significance of Witness 1's role in the affidavits (and the case more generally), the lack of corroboration for her statements on key points, and the existence of contrary evidence as to other points. A magistrate judge reviewing these affidavits would have found it material that the government's principal witness had been found not credible by a judge, and was on record with recorded statements and text messages that contradicted her accusations.

*Second*, the government is wrong that the Motion should be denied because DCIS Special Agent ("SA") Cordell "Trey" DeLaPena did not have the relevant exculpatory facts in his possession when he swore out the February 2023 affidavit. In fact, SA DeLaPena *did* have many of these exculpatory facts in his possession and, in any event, he had an obligation to independently investigate Witness 1's credibility because he had a particularized reason to question it—namely,

1

that Defendant Burke and Witness 1 had previously been romantically involved, that Witness 1 only came forward after that relationship ended, that Witness 1 had been in contentious divorce and custody proceedings with her ex-husband, and that WhatsApp messages between Witness 1 and Defendant Burke contradicted her claims in important respects. In these circumstances, SA DeLaPena's failure to investigate was reckless.

In addition, the government's failure to take special care around the affidavit of SA DeLaPena is inexcusable, given that ███████████████████████████ ███████████████████████████████████████████. *See* Mot. at 19-20. Indeed, in July 2022, before the warrants were executed in this case, ███████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████[1] (Ex. A at 2.)

Given these facts, the Court should grant the Motion and suppress all evidence obtained pursuant to the February and September 2023 search warrants. At a minimum, the Court should hold a *Franks* hearing to determine what the government knew when it sought the February 2023 warrant, what it should have known in light of obvious red flags, and what it deliberately omitted.

---

[1] ███████████████████████████████████████████ ███████████████████████████████████████████ ███████

2

I.  **THE MAGISTRATE JUDGE WOULD NOT HAVE FOUND THAT PROBABLE CAUSE EXISTED IF THE FEBRUARY 2023 AFFIDAVIT HAD SET FORTH THE EXCULPATORY FACTS AND EVIDENCE CONCERNING WITNESS 1.**

As described in the Motion, the February 2023 search warrant affidavit omitted that Witness 1: (1) was the subject of prior adverse credibility findings and was found to have lied extensively to try to inculpate a different former romantic partner, (2) had stated on the record that Movants lacked the government experience necessary to recognize that their conduct was wrongful, (3) had deceived Movants about her name and relationship with Defendant Burke, and (4) exchanged private WhatsApp messages with Defendant Burke that contradicted her whistleblower claim that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Mot. at 12-20.) Had this information been presented to the magistrate judge, the magistrate judge would have found that probable cause did not exist and would not have signed the search warrants.

The government is wrong that other facts set forth in the affidavit are sufficient to establish probable cause such that the magistrate judge would have signed the warrant even if the government had disclosed the omitted facts. (Opp. at 14-19, 28-29.) The only information in the February 2023 search warrant affidavit that even suggests the existence of a criminal conspiracy between Movants and Defendant Burke is the statements that Witness 1 is alleged to have made to law enforcement. (Mot. at 4.) Indeed, Witness 1's statements are the only evidence that explicitly links the contract with the Navy to the job offer for Burke, *i.e.*, the *quid pro quo* alleged in the indictment. The other evidence cited in the government's Opposition establishes nothing more than that Movants discussed with Defendant Burke and others a potential contract with the

3

Navy (which is not illegal) and that Defendant Burke lied to the Navy about the timing of his employment discussions with Next Jump. (Opp. at 6-10.)[2]

The government's independent evidence that allegedly establishes probable cause for the February 2023 search warrant consists of the following:

- The defendants' communications, including: (i) a September 2020 email in which Mr. Kim acknowledges that he was instructed not to contact Defendant Burke directly, but asks for an update on the status of the Next Jump contract, (ii) emails in which Defendant Burke appears to promote Next Jump to others, (iii) communications regarding Mr. Kim's suggestion of a contracting vehicle, (iv) emails in which Defendant Burke indicates that he was working on the contract, (v) communications about hotels and contract pricing, and (vi) emails exchanged between Movants and Defendant Burke's personal email account; (Opp. at 6-7)

- Communications between Defendant Burke and other Navy staff regarding future employment and any discussions with respect thereto; (*Id*. at 7-8)

- 18 U.S.C. § 2703(d) return data showing multiple communications between Movants' and Defendant Burke's personal email account without copying Defendant Burke's Navy account; (*Id*. at 8)

- Emails from other government personnel regarding (i) Defendant Burke's communications with Movants, (ii) contract pricing, and (iii) Movants' travel to Naples; (*Id*. at 8-9)

- Person 2's interview statements regarding the contract process and travel records; and (*Id*. at 9)

- [Witness 1]'s statements and text communications she turned over voluntarily. (*Id*. at 10.)

But none of this evidence tends to demonstrate the existence of a criminal conspiracy between the defendants. It just shows Movants discussing with Defendant Burke and others a

---

[2] In arguing about these other facts and communications, the government states that the alleged conspiracy period stretches back to September 2020, the same period specified in the indictment. (*See* ECF No. 1 ¶ 20; Opp. at 3.) This period pre-dates the conspiracy period set forth in the government's motion to admit co-conspirator statements. (*See* ECF No. 69 at 11 ("The earliest and best evidence is that Burke joined the conspiracy on or about April 20, 2021, during a remote meeting he had with Kim and Messenger.").)

potential contract with the Navy (which is not illegal), the fact that Defendant Burke took a job with Next Jump, and that Defendant Burke allegedly did not disclose all discussions with Next Jump during his retirement process. Even Witness 1's text messages fall short of showing probable cause because, as described in the Motion, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (ECF No. 62-6 at 55.) At best, this evidence supports a finding of probable cause to believe that there was a relationship between the Movants and Defendant Burke, which is not a crime, and that Defendant Burke lied to Navy officials about when his employment conversations began.

The government's assertion that it is not required to prove the existence of an "explicit" *quid pro quo* agreement misses the point. (*See* Opp. at 18.) Whether explicit or implicit, the government must still provide information or evidence that establishes probable cause that the crimes of bribery and/or conspiracy to commit bribery occurred. To prove bribery, the government must demonstrate a corrupt connection between the thing of value being offered and the intent to influence an official act. *McDonnell v. United States*, 579 U.S. 550, 574 (2016). Without Witness 1's statements, the February 2023 affidavit does not have any such evidence. Thus, Witness 1's statements are clearly critical to the affidavit's showing of probable cause, and without them, the affidavit cannot satisfy this burden.

Recognizing this deficiency, the government pivots and argues that, even if the affidavit lacked probable cause that *Movants* committed a crime, Movants cannot reasonably dispute that, at the very least, there was probable cause to believe that Defendant Burke "committed a violation of 18 U.S.C. § 208." (Opp. at 18-19.) It follows, according to the government, that Movants cannot contest that there was a fair probability that evidence of *that* crime would be found in their

5

Microsoft email accounts that were the subject of the February 2023 warrant. (*Id.*) But Movants do dispute that the affidavit established probable cause that *any* crime occurred without the statements of Witness 1.

Section 208 prohibits an executive branch employee from participating personally and substantially in a particular government matter in which, to his knowledge, a person or organization with whom he "is negotiating or has any arrangement concerning prospective employment" has a financial interest. 18 U.S.C. § 208(a). Here, Witness 1's statements are critical to determining whether Defendant Burke was negotiating or had any arrangement concerning prospective employment with Next Jump. Indeed, they are the only evidence linking any potential Navy contract with an alleged offer of employment at Next Jump. Without Witness 1's statements to law enforcement, the magistrate judge would not have found that there was probable cause that Defendant Burke had violated Section 208. Moreover, by omitting any mention of the adverse credibility findings regarding Witness 1, the government deprived the magistrate judge of the opportunity to make an informed determination about whether probable cause existed. The effect of this omission was compounded by the government's failure to disclose that the affiant on the February 2023 affidavit, SA DeLaPena, had ████████████████████████████ ████████████████████████████████████████████████ *See* Mot. at 19-20; Ex. A at 2 ████████████████████████████ ████████████████████████████████████████████████ These omissions about the affiant and the most consequential evidence supporting the search warrants undermine any assertion that the magistrate judge would nevertheless have found probable cause that a violation of Section 208 had occurred. The magistrate judge would have done no such thing because the omissions caused the affidavit to be flawed in its entirety.

The government is also incorrect that the magistrate judge would have signed the February 2023 search warrant even if the affidavit had disclosed the omitted information concerning Witness 1. Given the importance of Witness 1's statements, had the magistrate judge seen the information and evidence that severely undermines Witness 1's credibility, the magistrate judge would not have signed the affidavit. In short, a conclusion that Witness 1 was not credible is fatal to the government's ability to establish probable cause. *See United States v. Glover*, 755 F.3d 811, 816 (7th Cir. 2014) ("[I]nformation about the informant's credibility or potential bias is crucial."); *United States v. Neal*, 577 F. App'x 434, 440 (6th Cir. 2014) ("[W]hen a warrant is issued based on information provided by an informant, our review under the totality of the circumstances must consider the informant's 'veracity, reliability, and basis of knowledge' to determine 'whether an affidavit is sufficient to support a finding of probable cause.'" (citation and quotations omitted)).

Indeed, courts regularly observe that "[a] valid search warrant requires *reliable* evidence that some crime has been committed." *United States v. Waide*, 60 F.4th 327, 337 (6th Cir. 2023) (emphasis added). When that evidence "comes from an informant, the informant's 'veracity' and 'reliability' are critical to the totality of the circumstances test." *United States v. Lull*, 824 F.3d 109, 118 (4th Cir. 2016) (citation omitted). Because Witness 1's statements to law enforcement were crucial to a finding of probable cause, and the omitted information severely undermines her credibility, the government failed to provide the "reliable evidence" required to obtain the February 2023 search warrant.

## II. SA DELAPENA RECKLESSLY OMITTED FACTS FROM THE AFFIDAVIT, AND THEREFORE THE COURT SHOULD HOLD A *FRANKS* HEARING.

The Court should, at a minimum, order a *Franks* hearing to determine what SA DeLaPena knew when he executed the affidavit in support of the February 2023 warrant, what he should have

known in light of obvious red flags, and what he deliberately omitted from the affidavit. (Mot. at 20-22.) The government's arguments to the contrary come up short.

Specifically, the government is incorrect that, even if Witness 1's adverse credibility finding was material, its omission was not reckless because SA DeLaPena was unaware of it, and there was no "affirmative obligation for [SA DeLaPena] to independently investigate the credibility of" Witness 1 because there was no "particularized reason to question" her credibility. (Opp. at 21-22.) In making this argument, the government contends that, at the time he swore out the February 2023 search warrant, SA DeLaPena "was aware only that [Witness 1] had previously been divorced and fought her husband for custody." (Opp. at 12.) But this claim understates what DeLaPena actually knew. SA DeLaPena knew that Witness 1 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Mot. at 20.) These facts alone should have compelled SA DeLaPena to examine court records or simply speak with Witness 1 about the nature of those proceedings. In other words, SA DeLaPena should have discovered Witness 1's adverse credibility finding because ample information that was known to SA DeLaPena at the time should have triggered an investigation into Witness 1's background and credibility before seeking a search warrant. *See United States v. Johnson*, 78 F.3d 1258, 1262 (8th Cir. 1996) (noting that an affiant acts with reckless disregard for the truth when he "in fact entertained serious doubts as to the truth of the affidavits or had obvious reasons to doubt the accuracy of the information contained therein") (citation omitted); *United States v. Davis*, 617 F.2d 677, 694 (D.C. Cir. 1979) (defining reckless disregard for the truth as set forth in *Franks* as requiring a showing that the affiant entertained serious doubts as to the truth of the information given).

8

In addition, SA DeLaPena had multiple "particularized reason[s], " (Opp. at 22), to believe that Witness 1 might be lying, the most glaring of which were (1) her previous relationship with Defendant Burke, (2) the circumstances of their falling out, (3) the fact that Witness 1 came forward with damaging information about Defendant Burke only after their relationship soured, and (4) her WhatsApp messages with Defendant Burke (which SA DeLaPena had before swearing out the February 2023 warrant) that contradicted her whistleblower claim. Witness 1's ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (Mot. at 7-8.) Any one of these facts—all apparent to SA DeLaPena at the time he executed the February 2023 affidavit—was sufficient to trigger a duty to further inquire into Witness 1's credibility. *See United States v. Tanguay*, 787 F.3d 44,53 (1st Cir. 2015) ("All that is required to trigger an officer's duty of further inquiry is her knowledge of an obvious and unexplored reason to doubt the truthfulness of the allegations."); *see* Opp. at 21-22 (citing *Tanguay*). In the face of all these red flags, however, SA DeLaPena failed to conduct so much as a simple Google search.

SA DeLaPena's standard background check does not save the February 2023 search warrant. That background check did not appear to take into account any of the red-flag information SA DeLaPena knew. If it had, the background check would have found, at the very least, the adverse credibility finding ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (Mot. at 14.) Moreover, information regarding the background check of Witness 1 was not included in the February 2023 affidavit, had no bearing on the magistrate judge's finding of probable cause, and cannot rehabilitate her credibility or the warrant now. *Ellison v. Balinksi*, 625 F.3d 953, 958 (6th Cir. 2010) ("Review of the sufficiency of

evidence supporting the probable cause determination is limited to the information contained in the four corners of the affidavit."). And finally, Witness 1's security clearance states that, in 2011, Witness 1 ███████████████████████████████████████████████████

███████████████████████████████████ (Ex. B at 1-2). This exhibit was discovered in the course of responding to the government's opposition brief and is appended hereto in direct response to certain of the government's arguments. The background check missed even this obvious piece of information.

Moreover, as the Court is aware from Movants' previous filings (ECF No. 82 at 2-3; ECF No. 92 at 7), Witness 1 also was determined █████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████ (ECF No. 82-3 at 5-8, 28-30.) Whether SA DeLaPena, a member of DOD's law enforcement community, learned about—or could have learned about—the OIG investigation through diligence into Witness 1 is another reason why a *Franks* hearing is necessary.

The government is wrong again in arguing that Movants are attempting to conflate the government's obligations when seeking a search warrant with those the government bears under *Brady* or during discovery. (*See* Opp. at 21-22.) Movants are not arguing that every piece of information that is even arguably *Brady* must be included in an affidavit. Movants instead argue that the particularized exculpatory evidence that was omitted here defeats a showing of probable cause given Witness 1's centrality to the case generally and the warrant affidavit specifically.[3]

---

[3] In its opposition, the government points to certain statements made by Person 2 to law enforcement to support its argument that SA DeLaPena's affidavit established probable cause. Person 2 ███████████████████████████████████████████████████

The cases cited by the government for its position that omitting such exculpatory evidence is proper are easily distinguishable. In both *Mays v. City of Dayton* and *United States v. Colkley*, courts denied motions to suppress because the affidavits supporting the search warrants in both cases included substantial evidence that crimes had been committed that was independent of the specific witness assertions that were the subject of contrary evidence. *See Mays*, 134 F.3d 809 (6th Cir. 1998); *Colkley*, 899 F.2d 297 (4th Cir. 1990). In neither case did the affidavits rely largely on a single witness/informant whose credibility was severely undermined by facts and information that were omitted from the affidavits.

███████████████████████████████████████████████████████████████████████████████████ This is another subject to be covered in a *Franks* hearing.

In addition, Movants are deeply troubled by the government's failure to present this and similar information to the grand jury. Specifically, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ The government did nothing to correct the record.

11

The government is also incorrect that Movants seek to impose a higher standard for probable cause than the traditional, "fair probability" standard. (*See* Opp. at 17-18.) To the contrary, Movants correctly argue that the omissions from the affidavits are so fundamental that, had the omissions been included, the government could not have shown a "fair probability" that its searches would have uncovered evidence of a crime. (Mot. at 19.)

## III. EVIDENCE GATHERED PURSUANT TO THE SEPTEMBER 2023 SEARCH WARRANT SHOULD BE SUPPRESSED AS FRUIT OF THE POISONOUS TREE

As demonstrated in the Motion, the government's unconstitutional search of Movants' email accounts in February 2023 netted the essential evidence supporting the government's application to obtain the September 2023 search warrant, and therefore the evidence obtained pursuant to the September 2023 warrant must be suppressed as the "fruit of the poisonous tree." (Mot. at 22-23.)

The government is wrong that the September 2023 warrant is valid regardless of the validity of the February 2023 warrant because the affidavit supporting the September 2023 warrant includes other facts that independently support probable cause. (Opp. at 29.) But the government does not set forth what those independent facts are other than those that were included in the February 2023 affidavit, which Movants have shown to be insufficient, on their own, to establish probable cause. *See supra* at 2-6. The government's argument should accordingly be rejected.

**CONCLUSION**

For the foregoing reasons, Movants respectfully request that the Court grant their joint motion to suppress all evidence obtained pursuant to the government's February and September 2023 search warrants. In the alternative, Movants respectfully request that the Court hold a *Franks* hearing to determine whether suppression is warranted.

Respectfully submitted,

| | |
|---|---|
| DATED: January 29, 2025 | */s/ William A. Burck* |
| | William A. Burck |
| | |
| Rocco F. D'Agostino (Bar No. NY0592) | William A. Burck (DC Bar No.: 979677) |
| 445 Hamilton Ave., Suite 605 | Avi Perry (DC Bar No. 90023480) |
| White Plains, NY 10601 | Rachel G. Frank (DC Bar No.: 1659649) |
| Tel: (914) 682-1993 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | 1300 I Street NW, Suite 900 |
| | Washington, D.C. 20005 |
| *Counsel for Defendant Meghan Messenger* | Tel: (202) 538-8000 |
| | Fax: (202) 538-8100 |
| | williamburck@quinnemanuel.com |
| | aviperry@quinnemanuel.com |
| | rachelfrank@quinnemanuel.com |
| | |
| | Christopher Clore (*pro hac vice*) |
| | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | 295 5th Ave |
| | New York, NY 10016 |
| | Tel: (212) 849-7000 |
| | Fax: (212) 849-8100 |
| | christopherclore@quinnemanuel.com |
| | |
| | *Counsel for Defendant Yongchul "Charlie" Kim* |

**CERTIFICATE OF SERVICE**

      I hereby certify that on this date, a copy of the foregoing Reply was electronically filed with the Clerk of the U.S. District Court for the District of Columbia via CM/ECF and served to all counsel of record via electronic mail.

                                         /s/ *William A. Burck*
                                         William A. Burck (DC Bar No.: 979677)

Dated: January 29, 2025