UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:24-cr-00265 (TNM) |
| | : | |
| YONGCHUL "CHARLIE" KIM and MEGHAN MESSENGER, | : : | |
| | : | |
| Defendants. | : | |

GOVERNMENT'S MOTION *IN LIMINE*
TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT

The United States of America respectfully moves *in limine* for an order excluding certain evidence and argument. In support of its motion, the United States relies on the following points and authorities, and such other points and authorities as may be cited at a hearing on this motion.

I.  **LEGAL STANDARDS**

Motions *in limine* assist the Court in serving its gate-keeping function to keep incompetent evidence or improper argument from the jury by permitting it to exclude it in advance of trial. *United States v. Zeese*, 437 F. Supp. 3d 86, 92 (D.D.C. 2020) (quoting *United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980) ("Pretrial motions in limine effectuate [Rule 103(d)'s] directive" that inadmissible evidence not be suggested to the jury by any means, and a "'pre-trial ruling, if possible, may generally be the better practice, for it permits counsel to make the necessary strategic determinations'").

"To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means." Fed. R. Evid. 103(d); *see also United States v. Young*, 470 U.S. 1, 10 (1985) ("[T]he trial judge has the responsibility to maintain decorum in keeping with the nature of the proceeding; the judge is not a mere moderator, but is the governor of the

trial for the purpose of assuring its proper conduct.") (internal quotations omitted).  In service of this responsibility, the Court has broad discretion to determine whether evidence or argument can properly be presented at trial.  *See United States v. Morgan*, 581 F.2d 933, 936 (D.C. Cir. 1978) ("The district court has wide discretion to admit or exclude evidence where the question is one of relevancy or materiality"); *United States v. Tarantino*, 846 F.2d 1384, 1410 (D.C. Cir. 1988).  This includes excluding evidence or argument whose only purpose is to encourage the jury to nullify. *See United States v. Gorham*, 523 F.2d 1088, 1097-98 (D.C. Cir. 1975) (affirming trial court's exclusion of evidence relevant only to jury nullification) (citing *Sparf v. United States*, 156 U.S. 51, 106 (1895); *United States v. Boone*, 458 F.3d 321, 329 (3d Cir. 2006) ("[A] juror . . . who commits jury nullification violates the sworn jury oath and prevents the jury from fulfilling its constitutional role.")).  Here, the Court has a sufficient basis to rule in advance of trial to exclude improper evidence and argument so that it is not suggested to the jury in any way.

## II.     EVIDENCE AND ARGUMENT THAT SHOULD BE EXCLUDED FROM TRIAL

### A.     The Defendants Should Not Be Allowed to Offer Evidence or Argument that May Lead to Improper Jury Nullification

The Defendants, Charlie Kim and Meghan Messenger, should be precluded from arguing or seeking to admit evidence for the purpose of encouraging the jury to nullify its verdict; such argument and evidence is not admissible.  Federal courts have universally excluded evidence and arguments that encourage jury nullification.  *See United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983) ("A jury has no more 'right' to find a 'guilty' defendant 'not guilty' than it has to find a 'not guilty' defendant 'guilty,' and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law.  Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power."); *see also United States v. Wilkerson*, 966 F.3d 828, 835 (D.C. Cir. 2020) (federal courts have

"categorically reject[ed] the idea that, in a society committed to the rule of law, . . . courts may permit [jury nullification of the law] to occur when it is within their authority to prevent" ) (quoting *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997)); *Gorham*, 523 F.2d at 1097-98 (affirming exclusion of evidence sought to entice jury nullification and agreeing that introduction of the evidence "would have been unnecessarily confusing and potentially prejudicial"); *United States v. Moss*, 297 F. App'x. 839, 841 (11th Cir. 2008) (granting government motion *in limine* to exclude defense evidence "intended to inspire a jury to exercise nullification"); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) ("[N]either the court nor counsel should encourage jurors to [nullify] . . . A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification.").

> More specifically, the D.C. Circuit has explained why jury nullification is improper:
>
> This so-called right of jury nullification is put forward in the name of liberty and democracy, but its explicit avowal risks the ultimate logic of anarchy. This is the concern voiced by Judge Sobeloff in *United States v. Moylan*, 417 F.2d 1002, 1009 (4th Cir. 1969), cert. denied, 397 U.S. 910, 90 S.Ct. 908, 25 L.Ed.2d 91 (1970):
>
>> To encourage individuals to make their own determinations as to which laws they will obey and which they will permit themselves as a matter of conscience to disobey is to invite chaos. No legal system could long survive if it gave every individual the option of disregarding with impunity any law which by his personal standard was judged morally untenable. Toleration of such conduct would not be democratic, as appellants claim, but inevitably anarchic.

*United States v. Dougherty*, 473 F.2d 1113, 1133–34 (D.C. Cir. 1972).

Based on these principles, and consistent with the Court's order in the related case of *United States v. Burke* (ECF No. 150 at 2), the United States moves the Court to order that the Defendants will not be permitted to make jury nullification arguments and to exclude any evidence probative of such arguments. *See* Transcript of Pretrial Conference at 86:21-23, *United States v. Burke*, 1:24-cr-00265-TNM (Apr. 10, 2025) (hereinafter "Transcript") ("To the extent the

3

[government's] motion seeks to prevent abject inducement of jury nullification, it is granted.").

Such arguments and evidence include, but are not limited to, the following topics:

> a. <u>The Defendants' participation in the community</u>. *United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (evidence of "bravery, attention to duty, perhaps community spirit—were hardly 'pertinent' to the [charged] crimes"); *United States v. Morison*, 622 F. Supp. 1009, 1010–11 (D. Md. 1985) ("patriotism" not relevant trait to charge);
>
> b. <u>The Defendants' religious beliefs and habits</u>. *See United States v. Bernard*, 299 F.3d 467, 476 (5th Cir. 2002) (approving court's sentencing instruction that jurors should not "consider the religious views of the defendants"); *United States v. Goxcon Chagal*, 885 F. Supp. 2d 1118, 1158–59 (D.N.M. 2012) ("[R]ule 610[ ] is . . . designed to avoid a jury drawing improper inferences about a witness' character or credibility in light of the witness' religious beliefs. . . ."); *see also* Fed. R. Evid. 610;
>
> c. <u>The Defendants' family status</u>. *See United States v. Santana-Camacho*, 931 F.2d 966, 967 (1st Cir. 1991) (excluding evidence that defendant was a good family man because it was not a trait relevant to the offense); *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (court properly excluded evidence that defendant had devoted his life to caring for a son with cerebral palsy);[1] and
>
> d. <u>The Defendants' status as kind, moral, or hard-working people</u>. *See Santana-Camacho*, 931 F.2d at 967 (excluding evidence that defendant was a kind man); *United States v. Perez*, 459 F. App'x 191, 198 (3d. Cir. 2012) (family and work life not relevant and "pose[d] an improper risk of jury nullification").

None of these topics are probative of an element of the charged offenses or an affirmative defense available to the Defendants, and all of them could lead to improper nullification.

---

[1] In *Burke*, the Court ruled that Burke would "be permitted to introduce evidence related to his … family status." ECF No. 150 at 2. However, the basis of that ruling was the Court's expectation that "both parties will seek to introduce evidence about Mr. Burke's family status, given his extramarital affair is central to the alleged quid pro quo and highly relevant to potential bias on the part of one of the Government's witnesses." Transcript at 87:7-11. Because this concern does not apply to Kim or Messenger, the Court's prior ruling as to Burke's family status should have no bearing in this case.

4

### B. The Defendants Should Not Be Allowed to Introduce Evidence of Their General Good Character and Specific Instances of Good Conduct.

Similarly, the Defendants should be precluded from offering statements and arguments of their good character and evidence of specific instances of good conduct. Such arguments are made with the improper purpose of inviting jury nullification and are not allowed under Federal Rule of Evidence 404.

Federal Rule of Evidence 404(a)(1) provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." This rule means that "[e]vidence of a person's character is generally not admissible to prove that he acted in conformity therewith on a particular occasion." *Government of the Virgin Islands v. Grant*, 775 F.2d 508, 510 (3d Cir. 1985). The rule applies to prior good acts as well as prior bad acts of the defendant: "[f]or the same reason that prior 'bad acts' may not be used to show a predisposition to commit crimes, prior 'good acts' generally may not be used to show a predisposition not to commit crimes." *United States v. Dimora*, 750 F.3d 619 (6th Cir. 2014). In other words, "evidence of good conduct is not admissible to negate criminal intent." *United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008).

Rule 404(a)(2) provides that a criminal defendant "may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it." "In the criminal context, a pertinent character trait is one that is relevant to the offense charged[,]" and such a "pertinent trait must be specific, it may not be offered as evidence of one's general character." *United States v. Sutton*, 636 F. Supp. 3d 179, 208 (D.D.C. 2022).

Rule 402(a)(2)'s exception to the general rule that defendants may not introduce character evidence does not apply in this case because any purported prior good acts are not pertinent to the charges against the Defendants. And even if such prior good acts have some minimal, probative

5

value, such value would be far outweighed by the high likelihood of jury confusion and the risk of jury nullification. *See* Fed. R. Evid. 403; *see also*, *e.g.*, *United States v. Carpenter*, No. 21-305, 2023 WL 1860978, at *1 (D.D.C. Feb. 9, 2023) (finding that specific instances of good conduct unrelated to a character trait that is an essential element of a charge would violate Rule 405); *Sutton*, 636 F. Supp. 3d at 208 (same); *United States v. Chwiesiuk*, No. 20-0536, 2023 WL 3002493, at *7 (D.D.C. Apr. 19, 2023) (same).

To the extent the Defendants wish to offer character evidence and this Court determines that evidence is admissible, it should be limited to introducing only general reputation or opinion evidence concerning a pertinent character trait. Again, this position is consistent with the Court's previous ruling in *Burke*. *See* Transcript at 87:19-23 ("The Government is fully correct, though, that this evidence must be limited to general reputation or opinion evidence about a pertinent character trait. Mr. Burke may not introduce evidence of specific instances of good character."); *cf. id.* at 88:1-6 ("The defense is going to be given some latitude here to give the jury a sketch of Mr. Burke … . But the defense is forewarned that it should not abuse this latitude. Any background evidence should be short and to the point.").

### C. Statements About Punishment or Collateral Consequences of Conviction Should Be Prohibited

Consistent with the Court's ruling in *Burke* (ECF No. 150 at 2), the Court should preclude as irrelevant and prejudicial any reference to the Defendants' potential sentences during all phases of the trial, including jury selection, opening statements, examination of witnesses—to include the Defendants if they elect to testify—and summation. That reference could be as overt as, "You understand the defendant is facing multiple years in prison if convicted," or more subtle such as, "the defendant is facing a lot of time," "this case has serious consequences for the defendant," "the

defendant's liberty is at stake in this trial," or "your decision will have consequences for a long time to come."

"The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury." *See, e.g.*, *Shannon v. United States*, 512 U.S. 573, 579 (1994) ("The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged."). Besides being "irrelevant to the jury's task," such "information invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id.* Accordingly, a jury "should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Id.* (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)). Under this well-established principle, the Defendants and their counsel must be prohibited from referencing in the presence of the jury, whether directly or indirectly, the penalties associated with the charged offenses, or any collateral consequences that the proceedings may cause for the Defendants, their livelihood, or their other activities. Any mention of the potential penalties or other consequences faced by the Defendants would serve only the improper purpose of jury nullification. Therefore, the Defendants should be precluded from making any reference to punishment or the consequences of such punishment on the Defendants or their families.

### D. All Evidence and Arguments Regarding the Government's Charging Decisions Should Be Precluded.

This Court has recognized that the "Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws." *United States v. Stone*, 394 F. Supp. 3d 1, 10 (D.D.C. 2019) (internal quotations omitted) (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996)). This authority "lies at the core of the Executive's duty to see to the faithful

execution of the laws." *Id.* (internal quotations omitted) (quoting *Cmty. for Creative Non-Violence v. Pierce*, 786 F.2d 1199, 1201 (D.C. Cir. 1986)); *accord* U.S. Const. Art. II, § 3; *see* 28 U.S.C. §§ 516, 547.

"[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 368 (1978); *accord United States v. Cespedes*, 151 F.3d 1329, 1332 (11th Cir. 1998); *see also United States v. Batchelder*, 442 U.S. 114, 124–25 (1979) ("Selectivity in the enforcement of criminal laws is, of course, subject to constitutional constraints."). The claim that others "could have been charged but were not" is not a factual defense that bears upon whether the defendant is guilty of the crimes charged by the Grand Jury. *See Armstrong*, 517 U.S. at 463-64. *United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000). Evidence that some other individual is currently uncharged has no probative value to the issues at trial and serves only to confuse or mislead the jury. *See* Fed R. Evid. 402, 403.

Judged under these legal principles, and consistent with the Court's ruling in *Burke* (ECF No. 150 at 2), the Defendants should be precluded from introducing evidence or making arguments regarding charging decisions made by the United States, including any argument that the charges in this case were politically motivated. *See United States v. Abboud*, 438 F.3d 554, 579 (6th Cir. 2006) ("[T]he defense of selective prosecution is a matter that is independent of a defendant's guilt or innocence, so it is not a matter for the jury.") To the extent that the Defendants seek to present evidence or arguments: (1) that the charges in this case were politically motivated; (2) that other individuals have not been charged for similar or related conduct; or (3) that it is unfair that the Defendants were charged, while other individuals involved in criminal conduct remain uncharged,

such evidence is irrelevant, inadmissible, and only serves to divert the jury's attention to matters unrelated to the Defendants' guilt or innocence. *Gorham*, 523 F.2d at 1097–98 (affirming a trial court order precluding defense evidence that might encourage a "conscience verdict" of acquittal).

### E. The Defendants Should Not be Permitted to Argue that They Did Not Act Corruptly Because They Purportedly Acted in Good Faith.

There is no good faith defense to bribery. A bribe payor's offer of a quid pro quo—an intent to exchange of a thing of value for an official act—is inherently corrupt. Section 201(b) does not require the Government to prove, on top of proving the quid pro quo, that the bribe payor also acted willfully. In this way, "corruptly" under § 201(b) bribery differs fundamentally from other uses of the term, including in relation to § 666 gratuities. Were it otherwise, "knowing winks and nods" would provide an impenetrable defense to § 201(b). *See Evans v. United States*, 504 U.S. 255, 274 (1992) (rejecting an interpretation of bribery that would cause "the law's effect [to] be frustrated by knowing winks and nods"). The Court should prohibit Kim and Messenger from presenting any evidence or argument to the contrary.

#### 1. Background

In connection with the May 2025 trial of Burke, the Government and Burke jointly proposed jury instructions that stated three elements to the crime of accepting a bribe, in violation of 18 U.S.C. § 201(b)(2). ECF Nos. 102, 102-1 at 13-14. The third element was that "[t]he Defendant acted corruptly, that is, he intended that, in exchange for the thing of value, he would be influenced in the performance of an official act." *Id.* at 14. The instruction further proposed defining "corruptly" as "having an improper, wrongful motive or purpose . . . ordinarily a hope or an expectation of either prohibited financial gain or other benefit to oneself . . ." *Id*. Burke agreed to the legal elements of § 201(b)(2) but sought to underscore the importance of "a *quid pro quo* arrangement" in defining "corruptly." *Id*. at 22. The Government opposed Burke's proposed

9

addition to the jury instructions and this Court agreed and declined to provide it. 05/13/2025 PM Trial Tr. at 76:13-25. The Court fully adopted (and read to the jury) the parties' joint proposed jury instruction for 18 U.S.C. § 201(b)(2), ECF No. 102-1 at 13-17. This instruction was consistent with established legal precedence and this Court's practice. *See id.* at 103:10-23.

Although Defendants Kim and Messenger were not part of the earlier trial, they nevertheless objected to the Government and Burke's jointly proposed instruction. As part of this unusual move, the Defendants claimed, albeit incorrectly, that § 201(b) requires the Government to prove the defendants possessed two mental states: (1) an intent to offer a *quid pro quo*, and (2) a corrupt state of mind, which they claimed means acting with "consciousness of wrongdoing." ECF No. 115 at 2-3. Their goal was crystal clear: Kim and Messenger wanted the jury instructed—contrary to law—that they cannot be convicted of bribery if they acted in good faith when offering a bribe to Burke. *See* ECF No. 129 (Government's response brief). Based on the position they already staked out in the Burke trial, the Government expects that Kim and Messenger will again attempt to insert a *mens rea* of willfulness into the bribery statute where none exists.

First, it is settled that § 201(b) has only one mental state element—the specific intent to engage in a *quid pro quo*. In other words, one acts "corruptly" under § 201(b)(1) when one intends to offer a thing of value *in exchange* for an official act. In the Burke case, Kim and Messenger argued that this is no longer good law after *Snyder v. United States*, 603 U.S. 1 (2024). *See* ECF No. 115 at. The Defendants are mistaken. As the Government has previously noted, *Synder* examined corruption in the context of § 666 gratuities, not § 201(b) bribery. *See* ECF No. 129 at 2-3. And the two times that *Snyder* mentioned § 201(b), in *dicta*, the reference was to subsection (b)(2) that criminalizes *accepting* a bribe, and not the crime with which Kim and Messenger are charged—which is *offering* a bribe under subsection (b)(1).

10

Second, "corruptly" for purposes of § 201(b) does not mean acting with "consciousness of wrongdoing." This amounts to a *mens rea* of willfulness, which has no legal support in § 201's jurisprudence  Perhaps recognizing this problem, Kim and Messenger relied instead on the obstruction statutes for support. This comparison is inapt on several levels. Among other things, the term "corruptly" is largely defined by statute when dealing with obstruction. *See*, *e.g.*, 18 U.S.C. § 1515. Defining "corruptly" to mean somingthing  akin to willfulnessis inappropriate where, as here, the charged conduct is inherently corrupt. Because "American law generally treats bribes as inherently corrupt and unlawful," *Snyder*, 603 U.S. at 5, there is no need to reach to obstruction statutes and deviate from the well-established definition of "corruptly" in the bribery context. And this Court has already concluded as such in the *Burke* trial.  05/13/2025 PM Trial Tr. at 76.

### 2. The Law Does Not Require Proving Two Separate Mental States or Consciousness of Wrongdoing to Convict Kim and Messenger of Offering a Bribe Under § 201(b)(1)(A).

Under § 201(b)(1)(A), the crime of offering a bribe is committed when a person "directly or indirectly, corruptly gives, offers or promises anything of value to any public official . . . with intent – to influence any official act." In the Burke case, Kim and Messenger claimed the statute requires the Government to prove they possessed two separate mental states— that they offered a thing of value in exchange for an official act, and that they did so corruptly. ECF No. 115 at 1-3. To do otherwise, they asserted, would read the word "corruptly" out of § 201. *See id*. This is wrong. Far from reading the word out of the statute, "corruptly" for purposes of § 201(b) has been defined by courts to mean intending to engage in a *quid pro quo*.

As this Court recently found, "the Supreme Court explained that 'corruptly' means '*quid pro quo* corruption,' *i.e.*, a specific intent to 'exchange a thing of value for' an action[,]" whether

11

it is an official action or a violation of a lawful duty. *United States v. Paitsel*, Crim. No. 19-156-2 (CKK), 2023 WL 2139366, at *4 (D.D.C. Feb. 21, 2023) (affirming sufficiency of the evidence that the defendant acted corruptly under § 201 (citing *McDonnell v. United States*, 136 S. Ct. 2355, 2372 (2016))). Indeed, in *McDonnell*, the Supreme Court held that "[s]ection 201 prohibits *quid pro quo* corruption – the exchange of a thing of value for an 'official act.'" *McDonnell*, 136 S. Ct. at 2372. The holding that the intent element of § 201 bribery is based on a prohibited "this for that" exchange follows the Supreme Court's earlier precedent and is settled law.  *See*, *e.g.*, *United States v. Sun-Diamond Growers*, 526 U.S. 398, 404-05 (1999) ("[F]or bribery there must be a *quid pro quo*—a specific intent to give or receive something of value *in exchange* for an official act") (emphasis in original); *Clark v. United States*, 102 U.S. 322 (1880) ("The voluntary payment of money to an officer, with the corrupt motive of securing the official action of another officer, constitutes bribery . . ."); *United States v. Fischer*, 64 F.4th 329, 340 (D.C. Cir. 2023) ("[T]he unlawful purpose required under § 201 is an intent to obtain an illegal benefit. A briber payer must intend to secure a benefit from the bribe taker and vice versa"), *vacated on other grounds by Fischer v. United States*, 144 S. Ct. 2176 (2023); *United States v. Brewster*, 506 F.2d 62, 82 (D.C. Cir. 1974) ("We have laid emphasis under the bribery section on 'corruptly. . . in return for being influenced' as defining the requisite intent, incorporating a concept of the bribe being the prime mover or producer of the official act").[2]

---

[2] *Accord*, *e.g.*, *United States v. Alfisi*, 308 F.3d 144, 149 (2d Cir. 2002) ("The 'corrupt' intent necessary to a bribery conviction is in the nature of a quid pro quo requirement"); *United States v. Jennings*, 160 F.3d 1006, 1013 (4th Cir. 1998) ("Under § 201 'corrupt intent' is the intent to receive a specific benefit in return for the payment"); *United States v. Bonito*, 57 F.3d 167, 171 (2d Cir. 1995) (affirming trial court instruction that "[a] person acts corruptly, for example, when he gives or offers to give something of value intending to influence or reward a government agent in connection with his official duties."); 7th Cir. Fed. Crim. Jury Instr. 201(b)(1)(A) (2023 ed.) ("A person acts corruptly when that person acts with the intent that something of value is given, offered, or promised to influence the public official in the performance of any official act."); 3d Cir. Mod.

In *Paitsel*, the court made clear that "[c]orruptly *does not* mean acting with a 'bad or evil purpose.'" *Paitsel*, 2023 WL 2139366, at *4 (citation omitted) (emphasis existing). That being the case, there is no additional mental state to bribery in addition to the specific intent to enter a *quid pro quo*.

In their filings in the *Burke* case, Kim and Messenger did not attempt to grapple with any of the authority above. Instead, they cherry-picked two sentences from *Snyder*, the significance of which they attempted to punch up by adding emphasis to the word "and." ECF No. 115 at 3. Specifically, they claimed it is "clear" that there are two separate mental states for § 201 bribery because the Supreme Court in *Snyder* wrote: 1) "bribery requires that the official have a corrupt state of mind *and* accept (or agree to accept) the payment intending to be influenced in the official act," and 2) that § 201(b) requires "the corrupt state of mind *and* the intent to be influenced in the official act." ECF No. 115 at 3 (emphasis added to Defendants' brief) (citing *Snyder*, 603 U.S. at 11).

Kim's and Messenger's reliance on *Snyder* falls flat. *Snyder* was not a § 201(b) bribery case, and it did not purport to modify, distinguish, or break from its precedent concerning § 201. *See generally Snyder*, 603 U.S. at 1-20. Rather, in *Snyder*, the Supreme Court invalidated the use of a completely different statute, 18 U.S.C. § 666, to charge state and local officials with accepting gratuities.[3] *See id*. at 5, 19-20. It was only in *dicta*, while explaining why § 666 did not apply to

---

Crim. Jury Inst. 6.18.201B1-3 & cmt. (citing Kevin F. O'Malley, Jay E. Grenig, & Hon. William C. Lee, 1A Federal Jury Practice and Instructions § 27.09) ("A person offers a thing of value to a public official 'corruptly' if the person acts knowingly and intentionally with the purpose either of accomplishing an unlawful end or unlawful result or of accomplishing some otherwise lawful end or lawful result influenced by the offer of the thing of value to the public official.").

[3]    Gratuities are after-the-fact rewards, while bribery punishes a prior agreement to make payment in exchange for an official act. It makes sense, therefore, that the *mens rea* of providing a prohibited gratuity would differ from the *mens rea* of offering a bribe.

13

gratuities, that the Supreme wrote the two sentences referencing § 201(b) quoted above, and the *Snyder* decision shows that Kim and Messenger are misreading the context of those sentences here. *See id*. at 11.

Further undermining the usefulness of looking to *Snyder* here is that the sentences Kim and Messenger rely upon are related to § 201(b)(2)—accepting a bribe—rather than the crime that Kim and Messenger are charged with, offering a bribe under § 201(b)(1). *See id*. at 11 and n.2 (citing § 201(b)(2)(A) and discussing the proof required to convict a public official with accepting a bribe). This matters because convicting the public official (here, Burke) of accepting a bribe requires proof beyond what the Government must marshal to convict the bribe payer (here, Kim and Messenger).

To convict the official, the Government must prove that he agreed to the *quid pro quo*. *See United States v. McDonough*, 727 F.3d 143, 152 (1st Cir. 2013) (citing *United States v. Brewster*, 408 U.S. 501, 525 (1972)). In contrast, the "taking of bribes, [has] no bearing on the defendant's liability for offering one." *United States v. O'Donovan*, 126 F.4th 17, 33 (1st Cir. 2025) ("The federal bribery statute criminalizes the offering and taking of bribes, but only the latter requires the parties to reach a *quid pro quo* agreement" and comparing § 201(b)(1) with (b)(2)); *accord United States v. Ring*, 706 F.3d 460, 467 (D.C. Cir. 2013) ("In the context of a briber payor . . . the offer of the bribe is the violation of the statute"); *United States v. Shen Zhen New World I, LLC*, 115 F.4th 1167, 1177 (9th Cir. 2024) ("When the defendant is the briber-giver, . . . '[t]he crime of offering a bribe is completed when a defendant expresses an ability and a desire to pay the bribe'"); *United States v. Suhl*, 885 F.3d 1106, 1113 (8th Cir. 2018) ("A payor defendant completes the crime[] of honest-services . . . bribery as soon as he gives or offers payment in

14

exchange for an official act . . . ."). Viewed through this lens, the sentences from *Snyder* upon which Kim and Messenger rely are utterly inapposite to them.

Nor should Kim and Messenger be permitted to argue at trial that the Government must prove both the improper, unlawful *quid pro quo*, and that they also acted with "consciousness of wrongdoing." This language is derived from the obstruction statutes and is not applicable to bribery.

In their filing in the Burke trial, Kim and Messenger relied on a litany of cases that concerned different statutes than § 201. *See United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (false statements and obstruction of justice in violation of 18 U.S.C. §§ 1001 and 1512(c)); *Arthur Andersen, LLP v. United States*, 554 U.S. 696 (2005) (obstruction of justice in violation of 18 U.S.C. § 1512); *United States v. Plume*, 110 F.4th 1130, 1133 (8th Cir. 2024) (witness tampering and assault). But they failed to acknowledge that "corruptly" has different meanings depending on the criminal statute. *See United States v. Robertson*, 103 F.4th 1, 24 (D.C. Cir. 2023) (discussing different definitions of "corruptly" as applied to different statutes). Indeed, the D.C. Circuit recently held that where the charged conduct is inherently corrupt, the term "corruptly" required no further showing of motive beyond the intent to commit the illegal act. *Compare id*. at 12-14 ("where obstructive actions are not inherently corrupt, the requirement to act 'corruptly' separates innocent from illegal behavior . . . . [t]hus under circumstances where a defendant's conduct is not inherently corrupt . . . 'corruptly' can be proved by examining the defendant's purpose") *with id*. at 24 ("in bribery and tax cases, the expectation of a benefit is inherent in the crime in a way that it is not in the obstruction context"). The Supreme Court has also held that bribery is inherently corrupt. *Snyder*, 603 U.S. at 5 ("American law generally treats bribes as inherently corrupt and unlawful."). This Court agreed in *Burke*. 05/13/2025 PM Trial Tr. at 76.

15

The bribery cases cited by Kim and Messenger do not support their proposed instruction. For instance, in *United States v. West*, 746 F. Supp. 2d 932, 935 (N.D. Ill. 2010), the court, in distinguishing between bribery and gratuities, recognized that bribery requires "a corrupt intent to influence an official act." *Id.* at 934-36. But the Court did not adopt a particular definition for "corruptly;" instead, the Court noted that courts "differ on how to articulate the standard for acting 'corruptly' under 18 U.S.C. § 201(b)." *See id.* at 935 n.4. Kim and Messenger's reliance on *United States v. Ng Lap Seng*, 934 F.3d 110, 142 n.32 (2d Cir. 2019), is equally unavailing in support of their proposed definition of "corruptly." *Ng Lap Seng* involved a defendant charged with theft or bribery concerning programs receiving federal funds in violation of 18 U.S.C. § 666. Importantly, the Second Circuit recognized that a "public official acts corruptly, whenever he 'accept[s] or demand[s] a personal benefit *intending to be improperly influenced* in [his] official duties.'" *Id.* at 143-44 (citing *United States v. Rooney*, 37 F.3d 847, 853 (2nd Cir. 1994) (brackets and emphasis in original)). Thus, *Ng Lap Seng* speaks to the mental state of the bribee, and not that of the bribor, which is at issue here.

In sum, Kim and Messenger cannot establish either that the Government must prove consciousness of wrongdoing, or that there are two separate mental states required to convict them of offering a bribe to Burke in violation of § 201(b)(1)(A). As such, they should be prohibited from offering any evidence or argument to that effect during their trial.

**CONCLUSION**

To ensure the jury reaches a verdict based on the facts and evidence properly presented at trial, the Government hereby asks that the Court grant its motion *in limine*.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY
N.Y. Bar No. 1387455

By      /s/
Rebecca G. Ross
Brian P. Kelly
Assistant United States Attorney
601 D Street N.W.
Washington, DC 20530
Office: (202) 252-4490

Respectfully submitted,

EDWARD P. SULLIVAN
Acting Chief, Public Integrity Section
U.S. Department of Justice

     /s/
Trevor Wilmot
Kathryn E. Fifield
Trial Attorneys
1301 New York Ave. NW
Washington, D.C. 20530
Office: (202) 514-1412