UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:24-cr-00265 (TNM) |
| | : | |
| YONGCHUL "CHARLIE" KIM and MEGHAN MESSENGER, | : | |
| | : | |
| Defendants. | : | |

**UNITED STATES' NOTICE OF INTENT
TO USE EVIDENCE UNDER FED. R. EVID. 404(B)**

Please take notice that the United States may seek to introduce at trial evidence relating to a second bribery scheme in which defendants Charlie Kim and Meghan Messenger attempted to unlawfully induce a second senior military officer to award a government contract to their company, Company A, and promote Company A's struggling leadership training business to other military officials, in exchange for future employment with Company A. This evidence is admissible other acts evidence under Federal Rule of Evidence 404(b), because the government will offer it not to show the defendants' criminal propensity, but rather to establish their knowledge, intent, motive, plan, and absence of mistake in carrying out a similar scheme with defendant Robert P. Burke. The government reserves the right to present said evidence during its case-in-chief, in cross-examination, and in rebuttal.

I.     **INDICTMENT**

The Indictment alleges that Burke, while employed as an Admiral in the U.S. Navy, conspired with and accepted an offer of future employment from co-defendants Kim and Messenger, in exchange for directing a government contract to "Company A." (*See* ECF No. 1, ¶¶ 20-21, 23-24, 51). The conspirators communicated about the contract and Burke's future

employment throughout 2021, including at a key meeting in Washington, D.C. in July 2021 at which Kim and Messenger offered Burke a job at Company A. (*See, e.g.*, *id*. at ¶¶ 3-35). Burke ordered his subordinates to provide the contract in December 2021, and Company A executed it in January 2022. (*Id*. at ¶¶ 38, 44). Another part of the agreement between Burke, Kim, and Messenger was that, for the remaining few months before retiring from the Navy, Burke would continue to exploit his senior position to promote Company A to other high-ranking military officials with the hope that Company A would receive a larger contract in the future. (*Id.* at ¶ 45). Ultimately, however, Burke did not deliver the larger contract sought by Kim and Messenger. After retiring from the Navy, Burke worked at Company A from October 2022 until January 2023. (*Id.* at ¶¶ 1, 47).

## II.     EVIDENCE

As part of its case-in-chief, the government intends to introduce evidence that, in or around the same time as their charged conspiracy with Burke, Kim and Messenger attempted to engage in a similar scheme with a senior Air Force officer with ties to the United States Space Force and Space Command ("Senior Officer 1"). Specifically, the government will offer evidence that Kim and Messenger offered future employment and other items of value to Senior Officer 1, who retired in August 2023, in exchange for an agreement from Senior Officer 1 to use his official position to influence and direct the award of Space Force and Space Command contracts to Company A.

The evidence that the government intends to introduce includes documentary evidence of Kim and Messenger's repeated efforts to ingratiate themselves with Senior Officer 1, including but not limited to the following communications:

- On September 15, 2021, Kim, copying Messenger, invited Senior Officer 1 to come to Company A's headquarters in New York for a "mini leadership academy[.]" That

2

> same day, Senior Officer 1 replied, "Charlie! Great to hear from you…I was hoping we could get together, especially since the big opening was put on pause. I would love to join you!"

- On October 6, 2021, Kim sent Senior Officer 1 a picture taken from the rooftop terrace at Company A's offices in New York during the event to which Kim had previously invited Senior Officer 1. The following day, Senior Officer 1 replied, "…WOW!" and subsequently, "BTW…when I grow up I want to you two [sic]…"[1]

- On October 9, 2021, Kim replied to Senior Officer 1, "1/ aren't you already grown up? Maybe your next career post AF may be in nyc? We're evaluating hiring navy 4-star." That same day, Senior Officer 1 replied, "1/Would love to work with you all."

The evidence that the government intends to introduce also includes evidence that Kim and Messenger asked Senior Officer 1 for a government contract for Company A, including but not limited to the following:

- On February 3, 2022, Kim wrote to Senior Officer 1 about the background of a training program he wanted Senior Officer 1 to enact at the Space Force, ending with, "Would like to see at minimum Space Command start with a Level 1: 10 person leadership decision making training ($7500). Thoughts?"

- On September 7, 2022, Kim wrote to Senior Officer 1, copying Messenger, "[H]ope you are doing well. I know all the efforts to get you to NYC hasn't [sic] worked. We do an annual 'Learning Tour' with some of our senior leaders (approx. 12) and

---

[1] The statements from Senior Officer 1 and other military personnel discussed below are not hearsay in this context because, rather than being offered for their truth, the relevance of the statements is to establish the effect on Kim and/or Messenger, the listener.

wondered if a 2 day visit to Space Command some date in October or November could work? Would be interested in seeing how you operate, any exposure to leadership training, BIBs, etc…" Kim added that Burke "retired recently and will be joining our team full time as of October 1[.]"

- That same day, Senior Officer 1 responded to Kim and Messenger informing them that Senior Officer 1 was transitioning to a new role. Senior Officer 1 added that Senior Officer 1, and would not be "as involved / positioned to drive the full visit support I would love to provide from what I infer below. I am open to work through your expectations and see if I can at all make this a GREAT visit. That said I am much more free to travel in my new job and so if an opportunity for a leadership seminar in NYC arose...count me in." As to Burke, Senior Officer 1 wrote, "Great to hear about Admiral Burke...sounds like a great add to the team. What made him standout...?"

The evidence that the government intends to introduce also includes evidence that Kim and Messenger proposed future employment for Senior Officer 1 at Company A at the same time they discussed Senior Officer 1 awarding a government contract to Company A, including but not limited to the following:

- On January 14, 2023, Senior Officer 1 wrote to Kim and Messenger that he would "love to talk through some ideas I have for what I might pursue as I retire this summer (starting a new business, developing business for some small to moderate companies, leadership development / coaching…and some others)."

- On January 18, 2023, Kim emailed Senior Officer 1, "I don't know if you would be able to help schedule a meeting with the key leaders within Space Command. I'll

4

send you a note to your other email that should help you pursue that. If we could find time over the next few weeks, Meghan and I will fly over to come see you. We could talk separately afterwards."

- On January 24 and 26, 2023, Kim and Senior Officer 1, copying a senior enlisted at the U.S. Air Force Academy and Messenger, set up an itinerary for Kim and Messenger to meet with personnel at the Air Force and Space Command.

- As they were arranging the meetings, on February 3, 2023, Senior Officer 1 wrote to Kim, "Game on! I'll work to see what I can do on the Space end...might be nothing as these are organizations outside of my level of control and somewhat influence. Working on it, but want to set expectations. In any case it will be great to see you and perhaps we could all do dinner....?"

- On February 27, 2023, Kim and Messenger met with military leaders at the United States Air Force Academy, including Senior Officer 1.

- On February 28, 2023, Kim and Messenger met with military leaders at United States Space Command, including Senior Officer 1.  Following that meeting, Messenger sent an email to a Company A personnel describing, in part, Senior Officer 1 becoming a Company A employee ("Leadership Coach") after steering a $1 million contract from Space Command: "Today we met with the Space Command, [Senior Officer 1]'s command. He retires in July. He wants to start with 3 groups in his command of 81 people, including himself so we can get him certified. We discussed having him continue his work with us after he leaves the AirForce as one of our Leadership Coaches. The objective is for him to take the last 4 months of his time at the AirForce to help introduce us to a couple groups that

5

can approve a 1,000 person pilot ($1mm contract size). His first thought is the Space Force - about 4,500 people now growing to 16k within next year or 2. He knows this group well and they include leaders from all services, run by a 4-star who ultimately will be part of the Joint Chiefs. More opportunities he's pursuing and the goal is for him to lead the work with the AirForce on the ground for us. So he would be a consultant helping us run AF work. He was more than excited about this conversation as we had dinner with him and [senior enlisted] last night and how he's leaving the AF is unfortunate. Personal reasons he can't deploy so it's the end for him."

- On March 1, 2023, Kim wrote to Messenger and another Company A employee, "So much going on. Air Force academy will launch a few 10 packs. Space command 1 to start and quickly to 3. 32 people already indicated interest to [Senior Officer 1]. But best is [Senior Officer 1] next 4 months making intros for Meghan and I to close 1000 person pilot programs in space force and Air Force."

- The same day, Senior Officer 1 wrote an introduction to another U.S. Space Force senior civilian, praising Company A and advising the Space Force senior civilian to "get[] a brief" from Company A and perhaps look into visiting Company A for a leadership academy.[2]

## III.  LEGAL STANDARDS

Rule 401 of the Federal Rules of Evidence provides that evidence is relevant if "it has any tendency to make a fact of more or less probable than it would be without the evidence." Rule 402

---

[2] Ultimately, Senior Officer 1 did not order a contract for Company A to provide workforce training to the Air Force or Space Command. Nor did Senior Officer 1 receive or accept employment at Company A.

provides that "relevant evidence is admissible unless," *inter alia*, another Rule of Evidence provides otherwise. Rule 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 404(b)(2), however, provides that such evidence is admissible for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

The D.C. Circuit has recognized that although Rule 404(b) is "framed restrictively," the rule in practice "is quite permissive." *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc). It only prohibits the introduction of other acts evidence in "one circumstance," which is to show that the defendant's actions conformed to his character. *Id.*; *see also United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) ("[A]ny purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character") (emphasis in original); *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000) (Rule 404(b) is one of "inclusion rather than exclusion"). As such, Rule 404(b) prohibits "evidence of any other crime, wrong, or act" only when its *sole* purpose is to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence is allowed for any other purpose unrelated to the defendant's character or propensity to commit crime, such as proving, without limitation, "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Accordingly, Rule 404(b) evidence is admissible at trial if it satisfies two prongs: (1) the evidence is probative of a material issue other than the defendant's character, and (2) the probative value of the evidence is not substantially outweighed by the risk of undue prejudice under Rule

403. *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1990). "Evidence of similar acts must also be sufficient to support a jury finding that the defendant committed the other crime or act." *United States v. Long*, 328 F.3d 655, 660 (D.C. Cir. 2003). Specifically, the threshold for admitting Rule 404(b) evidence is a preponderance of the evidence—that is, the incident "sought to be proved is more probable than not." *United States v. Mathis*, 216 F.3d 18, 28 (D.C. Cir. 2000) (defining "preponderance of the evidence"); *see also United States v. Marion*, 977 F.2d 1284, 1288 (8th Cir. 1992) ("To be admissible under Rule 404(b), the evidence must be … proved by a preponderance of the evidence …." (citation and quotation marks omitted)); *United States v. Straker*, 567 F. Supp. 2d 174, 179 n.4 (D.D.C. 2008) ("Other crimes evidence may be conditionally admitted subject to proof from which a jury reasonably could conclude by a preponderance of the evidence that the defendant committed the crimes." (citing *United States v. Ruffin*, 40 F.3d 1296, 1298 (D.C. Cir. 1994))).

## IV.  ARGUMENT

Applying the two-prong test for admissibility under Rule 404(b), *see Miller*, 895 F.2d at 1435, the Court should admit the evidence because it is probative of Kim's and Messenger's knowledge, intent, motive, plan, and absence of mistake, and it is not unduly prejudicial. As an initial matter, the government easily meets its burden of proving by a preponderance of the evidence that, in or around the same time as their charged conspiracy with Burke, Kim and Messenger attempted to engage in a similar scheme with another senior military leader, Senior Officer 1—the evidence is Kim's, Messenger's, and Senior Officer 1's own statements. *See Long*, 328 F.3d at 660.

8

**Intent**

As to showing Kim's and Messenger's intent as to the charged conspiracy with Burke, to be admissible as other acts evidence, their conduct with Senior Officer 1 "must meet a threshold level of similarity to be admissible." *Id*. at 661. However, "exact congruence" is not required, and the other acts evidence must only "be relevant to show a pattern of operation that would suggest intent and … tend[] to undermine the defendant's innocent explanation." *Id.* (citation and quotations marks omitted). Moreover, the other acts need not have resulted in a criminal charge or a conviction; in fact, they do not even need to have been criminal or unlawful to be admissible under Rule 404(b). *See id*.

Here, Kim's and Messenger's conduct as to Burke and their communications with Senior Officer 1 bear more than just a "threshold level of similarly"; rather the two sets of conduct bear a striking resemblance. As they did with Burke, Kim and Messenger repeatedly asked Senior Officer 1 to help them make inroads with the military and to obtain a contract for Company A's leadership training business. *See, e.g.,* Feb 3, 2022, email (Kim: "Would like to see at minimum Space Command start with a Level 1: 10 person leadership decision making training ($7500). Thoughts?"); Jan. 18, 2023, email (Kim: "I don't know if you would be able to help schedule a meeting with the key leaders within Space Command. I'll send you a note to your other email that should help you pursue that. If we could find time over the next few weeks, Meghan and I will fly over to come see you. We could talk separately afterwards.").

At the same time Kim and Messenger solicited Senior Officer 1's assistance, the three of them also actively discussed having Senior Officer 1 work for Company A following his retirement from the military—again, just as they had with Burke. *See* Oct. 9, 2021, emails (Kim: "Maybe your next career post AF may be in nyc? We're evaluating hiring navy 4-star.") (Senior Officer 1:

"Would love to work with you all."); Sept. 7, 2022, emails (Kim informing Senior Officer 1 that Company A had hired Burke) (Senior Officer 1: "Great to hear about Admiral Burke...sounds like a great add to the team. What made him standout...?"); Jan. 14, 2023 email (Senior Officer 1: "I'd love to talk through some ideas I have for what I might pursue as I retire this summer (starting a new business, developing business for some small to moderate companies, leadership development / coaching…and some others)."); Feb. 28, 2023, email (Messenger: "We discussed having [Senior Officer 1] continue his work with us after he leaves the AirForce as one of our Leadership Coaches. … [T]he goal is for him to lead the work with the AirForce on the ground for us. So he would be a consultant helping us run AF work. He was more than excited about this conversation as we had dinner with him and Chief K last night[.]").

Kim's and Messenger's conduct with Senior Officer 1 "show[s] a pattern of operation that would suggest intent[.]" *Long*, 328 F.3d at 661. While discussing having Senior Officer 1 work for Company A after his retirement, Kim and Messenger pressed Senior Officer 1, prior to his retirement, to make introductions on their behalf and praise Company A to other senior military leaders—yet again, precisely as they had arranged with Burke. *See* Feb. 28, 2023, email (Messenger: "The objective is for [Senior Officer 1] to take the last 4 months of his time at the AirForce to help introduce us to a couple groups that can approve a 1,000 person pilot ($1mm contract size)."); Mar. 1, 2023, email (Kim: "So much going on. Air Force academy will launch a few 10 packs. Space command 1 to start and quickly to 3. 32 people already indicated interest to [Senior Officer 1's callsign]. But best is [Senior Officer 1's callsign] next 4 months making intros for Meghan and I to close 1000 person pilot programs in space force and Air Force."); Mar. 1, 2023 email (Senior Officer 1 introducing Kim, Messenger, and Company A to a U.S. Space Force senior civilian).

The 404(b) evidence also "undermine[s]" any "innocent explanation" Kim and Messenger may offer as to the charged scheme with Burke. *Long*, 328 F.3d at 661; *see also United States v. Williams*, 507 F. Supp.3d, 181,190 (D.D.C. 2020) ("The government is allowed to admit 404(b) evidence in the government's case-in-chief in anticipation that a defendant will deny intent or knowledge" (citing *United States v. Inserra*, 34 F.3d 83, 90 (2d Cir. 1994))). Indeed, other courts have allowed evidence of uncharged bribes or attempted bribes to be admitted under Rule 404(b) as probative of intent and other permissible purposes such as showing a common plan. *See United States v. Harrold*, 872 F.2d 1029, 1989 WL 34821, at *1-2 (6th Cir. 1989) (affirming admission under Rule 404(b) of evidence that defendant charged with paying bribes had previously bribed another government official as probative of intent for the charged conduct); *United States v. Chaimson*, 760 F.2d 798, 804-09 (7th Cir. 1985) (evidence of previous bribe payments by the defendant to a Cook County public official was admissible to prove intent and the existence of a plan in a case involving employees at the Cook County Board of Appeals, Chicago area attorneys, and Chicago area tax consultants to fraudulently reduce real estate assessments); *United States v. McPartlin*, 595 F.2d 1321, 1343 (7th Cir. 1979) (evidence of defendant corporate officer's bribes of foreign officials was admissible against that defendant as tending to refute his defense that he lacked the intent to bribe city officials in exchange for contract).

### Knowledge, Plan, and Absence of Mistake

Kim and Messenger's offer of future employment and other items of value (*e.g.*, trips to New York, dinners) to Senior Officer 1 is also probative of their knowledge, plan, and absence of mistake as to the charged conduct with Burke. In both cases the methods by which Kim and Messenger operated were nearly identical—for example, in both cases they initially sought a relatively low-dollar initial contract through a senior military insider in order to use that

11

performance to later obtain a second, high-value contract; and they not only offered future employment, but also ensured their contact would promote Company A's business within the military prior to his retirement.

## Motive

Finally, the motive behind Kim's and Messenger's communications with Senior Officer 1 is probative of the motive behind their unlawful arrangement with Burke. Stated simply, Kim and Mesenger sought inroads at various military branches to obtain a lucrative military contract to prop up their failing leadership training business. Indeed, as evidenced by the above, *supra* at 6-9, it was not until after Burke failed to deliver a second large-value contract from the Navy to Company A, and subsequently resigned from Company A in January 2023, that Kim and Messenger doubled down on their efforts to have Senior Officer 1 exert his influence to help them obtain a contract and also began openly discussing Senior Officer 1 working for Company A following his retirement. The relevance of that evidence is clear—once their *quid pro quo* with Burke failed to bear fruit, they turned their attention to the next senior military official available to them.

## No Undue Prejudice

The second prong of the Rule 404(b) test is also satisfied because the probative value of the evidence is not substantially outweighed by the risk of undue prejudice. *See Miller*, 895 F.2d at 1435. Rule 403 "tilts, as do the rules as a whole, toward the admission of evidence in close cases, even when other crimes evidence is involved." *Cassell*, 292 F.3d at 795 (internal quotation marks removed). Thus, the Rule 403 balancing test "should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged." *Id*. The balancing test is a matter of discretion for the Court, and the assessment is "not of relevance, but of the evidentiary value of the government's Rule 404(b) evidence." *Crowder*, 141 F.3d at 1210.

Here, the communications between Kim, Messenger, and Senior Officer 1 are evidence that Kim and Messenger had a plan and intended to entice whatever senior military officials were available to them to award lucrative contracts to Company A in exchange for the promise of future employment. The communications with Senior Officer 1 also show that offering Burke a *quid pro quo* was not a mistake. This is especially apparent insofar as the communications with Senior Officer 1 closely overlap in time and manner with the charged conduct.

By comparison, the risk of undue prejudice to Kim and Messenger from admitting the evidence is minimal. In its case-in-chief, before introducing the Rule 404(b) evidence, the government expects to establish that Kim and Messenger engaged in a *quid pro quo* with Burke by offering him a thing of value—lucrative future employment with Company A—in exchange for Burke steering them a government contract that Company A did not deserve. Against this backdrop, evidence that Kim and Messenger attempted the same thing with another senior military official will not unfairly prejudice the jury against Kim and Messenger. Notably, in the context of Rule 404(b) the D.C. Circuit has held that "the danger of unfair prejudice [is] minimal" where the other acts evidence adds "no emotional or other pejorative emphasis not already introduced" by the evidence of the charged crimes themselves. *United States v. Straker*, 800 F.3d 570, 591 (D.C. Cir. 2015); *United States v. Bell*, 795 F.3d 88, 99-100 (D.C. Cir. 2015) (upholding admission of other crimes evidence under Rule 404(b) where the contested evidence "did not involve conduct any more sensational or disturbing than the other conduct attributed to the [defendant]" (internal alterations and quotation marks omitted)); *United States v. Mosquera-Murillo*, 153 F.Supp.3d 130, 185 (D.D.C. 2015) (allowing admission of Rule 404(b) evidence where it involved conduct "that is no more serious than that charged in the indictment").

And finally, even assuming there was a danger of unfair prejudice to Kim and Messenger (there is not), the Court can instruct the jury as to the limited purpose of the evidence. *See Crowder* 141 F.3d at 1210; *Long*, 328 F.3d at 662 ("limiting instructions ordinarily suffice to protect the defendant's interests.").

## V.    CONCLUSION

Evidence that Kim and Messenger attempted to have Senior Officer 1 direct a government contract to Company A while simultaneously discussing Senior Officer 1's post-government employment with Company A is admissible under Federal Rule of Evidence 404(b). The evidence is highly probative of the defendants' knowledge, intent, motive, plan, and absence of mistake as to the charged bribery scheme. The evidence is also no more inflammatory than the charged crimes themselves—indeed, the conduct is virtually identical—ensuring there would be no unfair prejudice from its use at trial. The government reserves the right to introduce this evidence during its case-in-chief, in cross-examination during the defendants' case, or in rebuttal.

Respectfully submitted,

| | |
|---|---|
| JEANINE FERRIS PERRO<br>UNITED STATES ATTORNEY | EDWARD P. SULLIVAN<br>Acting Chief, Public Integrity Section<br>U.S. Department of Justice |
| By    /s/<br>Rebecca G. Ross<br>Brian P. Kelly<br>Assistant United States Attorneys<br>601 D Street N.W.<br>Washington, DC 20530<br>Office: (202) 252-4490 | /s/<br>Trevor Wilmot<br>Kathryn E. Fifield<br>Trial Attorney<br>1301 New York Ave. NW, Suite 1000 Washington, D.C. 20530<br>Office: (202) 514-1412 |