UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT P. BURKE,<br>YONGCHUL "CHARLIE" KIM, and<br>MEGHAN MESSENGER,<br><br>Defendants. | Case No. 1:24-cr-00265-TNM |

**YONGCHUL "CHARLIE" KIM AND MEGHAN MESSENGER'S
JOINT OBJECTION TO THE GOVERNMENT'S
<u>"NOTICE OF INTENT TO USE EVIDENCE UNDER FED. R. EVID. 404(b)" (ECF 180) [REDACTED]</u>**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND .......................................................................................................................... 2

     A.    The Indictment ............................................................................................................ 2

     B.    Defendants' Relationship with Senior Officer 1 ....................................................... 3

          1.    Relevant Interactions in 2021—the Initial Reach Out ................................. 4

          2.    Relevant Interactions in 2022—Defendants' Proposed Services and
               Command Visit .............................................................................................. 5

          3.    Relevant Interactions in 2022—Fall Leadership Academy and
               Introduction Offer ......................................................................................... 6

          4.    Relevant Interactions in 2023—Leadership Training ................................... 7

          5.    Relevant Interactions in 2023—Command Visit ......................................... 8

          6.    Senior Officer 1's Statement to the Government that Neither He
               Nor Defendants Did Anything Wrong. ....................................................... 10

          7.    The Government's Admission that No Contract Was Ordered and
               No Employment Was Given. ....................................................................... 10

     C.    The Government's 404(b) Notice ............................................................................ 10

LEGAL STANDARD ................................................................................................................ 11

ARGUMENT ............................................................................................................................. 12

I.      THE UNCHARGED ALLEGED SCHEME IS INADMISSIBLE UNDER
       FEDERAL RULE OF EVIDENCE 404(B)(1). ........................................................... 13

II.     THE NOTICED SCHEME IS INADMISSIBLE UNDER FEDERAL RULE OF
       EVIDENCE 403. ........................................................................................................... 14

     A.    The Probative Value Is Low. ................................................................................... 14

     B.    The Probative Value of Evidence Regarding the Uncharged Alleged
         Scheme Is Massively Outweighed by the Danger of Confusing the Issues,
         Unfair Prejudice to Defendants, and Undue Delay. ................................................ 19

III.    DEFENDANTS DO NOT HAVE TIME TO DEFEND AGAINST THE
       UNCHARGED ALLEGED SCHEME WITHOUT COMPROMISING THEIR
       SPEEDY TRIAL RIGHTS. .......................................................................................... 21

CONCLUSION .......................................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Donnelly v. DeChristoforo*,
    416 U.S. 637 (1974) ..................................................................................................................21

*Drew v. United States*,
    331 F.2d 85 (D.C. Cir. 1964) ....................................................................................................17

*Huddleston v. United States*,
    485 U.S. 681 (1988) ............................................................................................................11, 12

*Jankins v. TDC Mgmt. Corp.*,
    21 F.3d 436 (D.C. Cir. 1994) ....................................................................................................18

*McDonnell v. United States*,
    579 U.S. 550 (2016) ..................................................................................................................18

*Old Chief v. United States*,
    519 U.S. 172 (1997) ............................................................................................................13, 19

*United States v. Abu Khatallah*,
    No. 14-cr-00141 (CRC), 2017 WL 11493960 (D.D.C. Sept. 7, 2017) ....................................19

*United States v. Boone*,
    706 F. Supp. 2d 71 (D.D.C. 2010) ...........................................................................................22

*United States v. Boyd*,
    595 F.2d 120 (3d Cir. 1978) .....................................................................................................17

*United States v. Crowder*,
    141 F.3d 1202 (D.C. Cir. 1998) ..........................................................................................12, 14

*United States v. Lavelle*,
    751 F.2d 1266 (D.C. Cir. 1985) ................................................................................................14

*United States v. Loza*,
    764 F. Supp. 2d 55 (D.D.C. 2011) ...........................................................................................12

*United States v. Manner*,
    887 F.2d 317 (D.C. Cir. 1989) ..................................................................................................14

*United States v. Marion*,
    977 F.2d 1284 (8th Cir. 1992) .............................................................................................14, 16

*United States v. McGill*,
    815 F.3d 846 (D.C. Cir. 2016).................................................................................11

*United States v. Nicely*,
    922 F.2d 850 (D.C. Cir. 1991).................................................................................17

*United States v. Sheffield*,
    832 F.3d 296 (D.C. Cir. 2016).............................................................................11, 13

*United States v. Turner*,
    No. 06-0026 (CKK), 2006 WL 1980232 (D.D.C. July 12, 2006)...........................20

*United States v. Watson*,
    894 F.2d 1345 (D.C. Cir. 1990)...............................................................................17

*United States v. Wiggins*,
    509 F.2d 454 (D.C. Cir. 1975).................................................................................13

**Statutes**

18 U.S.C. § 1001...........................................................................................................20

**Other Authorities**

Fed. R. Evid. 401 ..........................................................................................................11

Fed. R. Evid. 404(b)(2) .................................................................................................11

Fed. R. Evid. 403 ..................................................................................... 1, 12, 14, 18, 20

Fed. R. Evid. 404(b) ........................................................................... 1, 11, 12, 14, 17, 18, 21

Fed. R. Evid. 404(b)(1) ............................................................................... 1, 11, 12, 13

## PRELIMINARY STATEMENT

Yongchul "Charlie" Kim and Meghan Messenger ("Defendants") respectfully submit this objection to the government's notice of intent to use evidence under Federal Rule of Evidence 404(b). ECF No. 180 (the "404(b) Notice"). The 404(b) Notice purports to allege an uncharged bribery scheme between Defendants and Senior Officer 1, a U.S. Air Force officer, that began in or around September 2021. The government's theory is unfounded, devoid of context, and largely based on cherry-picked communications from lengthy email exchanges. Ultimately, the government's alleged scheme (the "Uncharged Alleged Scheme") is inadmissible under Federal Rule of Evidence 404(b)(1) because it is clearly offered to show Defendants' propensity to commit the charged crime, not for any allowable basis in Rule 404(b). In addition, any probative value of the Uncharged Alleged Scheme is substantially outweighed by the extreme danger of unfair prejudice to Defendants, confusing the issues, and undue delay, warranting exclusion under Federal Rule of Evidence 403. Indeed, if the Court allows the government to introduce evidence of the Uncharged Alleged Scheme, it will result in a trial-within-a-trial, as Defendants will be forced to admit huge amounts of evidence to disprove the Uncharged Alleged Scheme, thus confusing the jury.

By sitting on this evidence and attempting to inject it into this trial at the last minute—despite knowing for over a year that Defendants were pressing their speedy trial rights—the government has forced Defendants into an impossible position where they must choose between exercising their speedy trial rights and gathering evidence to defend themselves against meritless allegations of a new uncharged scheme that is roughly the same magnitude as the charged one. Defendants have spent months navigating the *Touhy* process to subpoena evidence from the Navy to defend against the charged scheme, and there is every reason to believe it will take just as long to obtain evidence from the Air Force and Space Force to disprove the Uncharged Alleged Scheme.

If the Court allows the government to admit evidence of the Uncharged Alleged Scheme, Defendants will not have sufficient time to defend against it without further delaying their trial.

For these reasons, the Court should preclude the government from offering evidence or argument regarding the Uncharged Alleged Scheme at trial.

## BACKGROUND

### A.    The Indictment

The Indictment alleges a conspiracy that involved only the Navy and that purportedly ran from September 2020 through October 2022.  ECF No. 1 ¶ 20.  According to the Indictment, from September 2020 until at least July 2021 Defendants allegedly made prohibited contact with Adm. Burke to secure a contract with the Navy.  *Id.* ¶¶ 27−34.

The Indictment further alleges that, on July 23, 2021, Defendants offered Adm. Burke a job and partial ownership of Company A in exchange for a workforce training contract with the Navy.  *Id.* ¶ 35.  According to the Indictment, Defendants specifically proposed that Adm. Burke would "remain in the Navy for approximately six months after Company A performed the contract and, pointing to its performance, influence senior Navy officers to award another contract to Company A – to train a larger portion of the Navy – before BURKE retired."  *Id.* ¶ 35b.  In exchange for the contract, Defendants purportedly "offered BURKE a job at Company A – at a salary of at least $500,000 per year plus stock options and other related compensation – to commence after BURKE retired from the Navy, which BURKE agreed to accept."  *Id.* ¶ 35c.

After the July 2021 meeting, Defendants and Adm. Burke allegedly worked to procure a training contract with the Navy, which was entered into and performed in January 2022.  *Id.* ¶¶ 36−44.  Beginning in March 2022, Adm. Burke purportedly advocated to other military leaders about Company A.  *Id.* ¶ 45.  Specifically, the Indictment alleges that Adm. Burke introduced

Defendants to another Navy admiral, and that Adm. Burke promoted Company A to certain foreign military officers.  *Id.*

According to the Indictment, from August 2021 and continuing through July 2022, Adm. Burke misrepresented the status of his job discussions with Company A to the Navy.  *Id.* ¶ 46.  In October 2022, Adm. Burke started work at Company A.  *Id.* ¶ 47.

Nowhere does the Indictment allege that Defendants offered anything of value in exchange for official acts from anyone other than Adm. Burke, and nowhere does the Indictment make any mention of the Air Force or Space Force.

**B.    Defendants' Relationship with Senior Officer 1**



. After the academy, Senior Officer 1 told Defendants that he was "excited to team up" and requested access to Defendants' app. Ex. B at 3.  Senior Officer 1 also personally requested coaching from Defendants and told Defendants that he was interested in contributing to their programming.  *Id.* at 4.

; *see also* Ex. C at 1 ("[T]hanks again for leaning in on our organization and helping in amazing ways!!!"); Ex. D at 1 ("Big thanks to ALL of your advice…it was a huge help!").

. For instance, in July 2017, Mr. Kim asked Senior Officer 1 who Defendants should connect with from the Air Force regarding Company A's services.  Ex. E at 2.  Senior Officer 1 told Mr. Kim that he should connect with a certain commander who would be attending the same upcoming conference as Senior Officer 1.  *Id.* at 1.  Senior Officer 1 then invited Defendants to attend the conference to

meet the commander or, alternatively, offered to help bring the commander "out to NYC." *Id*. In June 2018, Senior Officer 1 emailed an Air Force officer, Defendants, and others, stating that a high-ranking Air Force officer had chosen certain commands "as two rapid leadership experimental locations in partnership with [Company A]." Ex. F at 1. Senior Officer 1 noted that this initiative was something he had been working on and that it was "great to see" the initiative grow. *Id*. In March 2019, Senior Officer 1 shared with Defendants that Mr. Kim's "emails ha[d] really helped [him] feel tied to something [he] fe[lt] very passionate about and in many ways felt [he] was leaving behind when [he] deployed." Ex. G at 1.

### 1.    Relevant Interactions in 2021—the Initial Reach Out

On September 15, 2021, Mr. Kim asked Senior Officer 1—who, by that time, Defendants had known for several years and who had previously attended Company A programming—

2.     **Relevant Interactions in 2022—Defendants' Proposed Services and Command Visit**

███████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████ █ ███████ ████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████

██████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████ █ ██████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

---

[1]  Company A was encouraged to develop a "Train the Trainer" model by the U.S. Navy. ██████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████  Under this model, Company A instructors would initially teach "trainers" from the client organization.  These "trainers" would eventually go on to train others within the client organization.  This method allowed the client organization to become self-sufficient.  ████████████████████████ ████████████████

[2]  Around this time, Defendants sought to update others about Adm. Burke's imminent employment at Company A.  Ex. O at 1-2 (███████████); Ex. P at 1 (███████); Ex. Q at 1 (████████████████████).

████████████████████████  ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████

      **3.**       **Relevant Interactions in 2022—Fall Leadership Academy and Introduction Offer**

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████  ████████  ██████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████ ████████ ██████████

███████████████████████████████████████████

██████████████ ████████ █████████████████████

███████████████████████████████████████████

██

    **4.**      **Relevant Interactions in 2023—Leadership Training**

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██

---

[3] ███████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

### 5.    Relevant Interactions in 2023—Command Visit

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████    ████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

██  ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████that is, a freelance leadership training coach who had received specialized training from Company A and could be paid by Company A for teaching leadership classes.[4]  *Id.*

───────────────────────

███████████████████████████████████████████████

██████████████████████████████

[4] External Leadership Coaches are not Next Jump employees.  ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████  In fact, Company A described its coaching program as "white collar uber."  Ex. Z at 1.  Leadership coaches receive a certification

after completing a set of training modules, qualifying them to teach the course themselves and receive a modest hourly sum from Company A.  *See, e.g.*, Ex. AA at 14; Ex. BB at 1.

6.    **Senior Officer 1's Statement to the Government that Neither He Nor Defendants Did Anything Wrong.**

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████    ████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████

7.    **The Government's Admission that No Contract Was Ordered and No Employment Was Given.**

In a *footnote* on page 6 of the government's 404(b) Notice, the government concedes that "Senior Officer 1 did not order a contract for Company A to provide workforce training to the Air Force or Space Command. Nor did Senior Officer 1 receive or accept employment at Company A." Notice at 6 n.2.

C.    **The Government's 404(b) Notice**

In its 404(b) Notice, the government seeks "to introduce at trial evidence relating to a second bribery scheme" where Defendants "attempted to unlawfully induce a second senior military officer [Senior Officer 1] to award a government contract to . . . Company A . . . and promote Company A's struggling leadership training business to other military officials, in exchange for future employment with Company A." *Id.* at 1.  In other words, the government seeks to introduce evidence of the Uncharged Alleged Scheme.

The government unconvincingly states that—despite the fact that it describes the Uncharged Alleged Scheme as nearly identical to the charged scheme—the government will not offer evidence of the Uncharged Alleged Scheme to show Defendants' propensity. Rather, merely parroting the language of the rule, the government claims it offers the evidence to establish

Defendants' "knowledge, intent, motive, plan, and absence of mistake in carrying out a similar scheme with defendant Robert P. Burke." *Id.*

The government further states that specific emails from Senior Officer 1 and other military personnel described in the 404(b) Notice will not be "offered for their truth," but "to establish the effect on Kim and/or Messenger, the listener." *Id.* at 3 n.1.

Finally, the government argues that "the risk of undue prejudice to Kim and Messenger from admitting the evidence is minimal" because the government intends to first establish that Defendants participated in the charged scheme, before later introducing the 404(b) evidence of the Uncharged Alleged Scheme—to make sure the jurors conclude that Defendants committed the crimes charged. *Id.* at 13.

## LEGAL STANDARD

"Convictions are supposed to rest on evidence relevant to the crime charged, not on evidence of other, unrelated bad acts suggesting nothing more than a tendency or propensity to engage in criminality." *United States v. Sheffield*, 832 F.3d 296, 307 (D.C. Cir. 2016) (quoting *United States v. McGill*, 815 F.3d 846, 878 (D.C. Cir. 2016)).  Accordingly, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Notwithstanding, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

"The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988); *see generally* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has tendency to make a fact more or less probable than it would be without the

evidence; and (b) the fact is of consequence in determining the action."). "In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston*, 485 U.S. at 689.

If the Court concludes that the similar acts "evidence is admissible for a legitimate purpose, the Court then must decide whether it nevertheless should be excluded under Rule 403." *See United States v. Loza*, 764 F. Supp. 2d 55, 57–58 (D.D.C. 2011); *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (noting that "compliance with Rule 404(b) does not assure admission of other crimes evidence"). Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## **ARGUMENT**

The Uncharged Alleged Scheme is inadmissible under Federal Rule of Evidence 404(b)(1) because it is clearly intended to show Defendants' propensity to commit the charged crime. In addition, the Uncharged Alleged Scheme should be excluded under Federal Rule of Evidence 403 because its limited probative value is substantially outweighed by the risk of unfair prejudice, issue confusion, and undue delay. Indeed, allowing the government to admit evidence of the Uncharged Alleged Scheme would greatly expand the scope of the trial and confuse the jury as the parties fight over whether the Uncharged Alleged Scheme occurred—while also fighting over whether the Charged Scheme occurred. For these reasons, the Court should preclude the government from offering evidence about the Uncharged Alleged Scheme.

## I.    THE UNCHARGED ALLEGED SCHEME IS INADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 404(B)(1).

The government has not offered any plausible, non-propensity reason for seeking to introduce evidence about the Uncharged Alleged Scheme. Rather, the government has written its 404(b) Notice as one, lengthy analogy likening the Uncharged Alleged Scheme to the Charged Scheme, essentially doubling the allegations in the Indictment. In sum, the government alleges that Defendants attempted to bribe Senior Officer 1, just as they allegedly successfully bribed Adm. Burke. There can be little doubt that the government intends to offer evidence of the Uncharged Alleged Scheme to prove that Defendants must have committed the Charged Scheme because Defendants have a "tendency or propensity to engage in criminality." *Sheffield*, 832 F.3d at 307; *United States v. Wiggins*, 509 F.2d 454, 462 (D.C. Cir. 1975) ("[O]n the trial of a defendant for one offense, evidence that he committed another is inadmissible to prove his disposition to commit crime; the jury may not be permitted to infer that the defendant is guilty of the crime charged because he committed another similar offense.").

Additionally, the government's 404(b) Notice betrays the government's intent to offer evidence of the Uncharged Scheme to depict Defendants as slippery, unsuccessful businesspeople who needed to resort to bribery. *See Old Chief v. United States*, 519 U.S. 172, 180−81 (1997). For example, the government frames Defendants' overtures to Senior Officer 1 as an effort to "ingratiate themselves" with him. Notice at 2−3. Defendants' communications with Senior Officer 1 purportedly reflect an effort to "entice whatever senior military officials were available to them to award lucrative contracts to Company A in exchange for the promise of future employment." *Id.* at 13. And the government claims that Defendants were keen on "prop[ping] up their failing leadership training business." *Id.* at 12. This is classic, impermissible propensity evidence.

13

## II.    THE NOTICED SCHEME IS INADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 403.

Any probative value of the Uncharged Alleged Scheme is massively outweighed by the danger of confusing the issues, unfair prejudice to Defendants, and undue delay.  Fed. R. Evid. 403.  Indeed, "present in every Rule 404(b) case" is a danger that the jury will use "other crimes evidence in a way the rules do not permit—to conclude that because the defendant committed some other crime, he must have committed the one charged in the indictment." *Crowder*, 141 F.3d at 1210.  Additionally, "the similarity of other act evidence to the charged offense 'increases the danger that the jury will confuse the issues necessary to convict the defendant.'" *United States v. Manner*, 887 F.2d 317, 323 (D.C. Cir. 1989) (quoting *United States v. Lavelle*, 751 F.2d 1266, 1278 (D.C. Cir. 1985)).

### A.    The Probative Value Is Low.

The probative value of evidence regarding the Uncharged Alleged Scheme is exceedingly low or nonexistent, because Defendants did nothing wrong in connection with their dealings with Senior Officer 1.  The evidence set forth in the government's 404(b) Notice cherry picks emails out of context and describes them in a way that makes it appear as though Defendants engaged in criminal activity when, in fact, Defendants did no such thing.  The evidence should therefore be excluded because it does not meet the preponderance standard for admission under Rule 404(b).  *See United States v. Marion*, 977 F.2d 1284, 1288 (8th Cir. 1992) ("To be admissible under Rule 404(b), the evidence must be . . . proved by a preponderance of the evidence . . . ." (citation omitted)).  ███████████████████████████████████████████████████████████████████████. Ex. DD at 76:5−8, 84:5−6, 94:22−24. ███████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████ Ex. A at 3; Ex. DD at 76:5−8.  The government makes no mention of this critical exculpatory evidence in its 404(b) Notice; instead it simply mischaracterizes emails with this witness as demonstrating illegal activity.

When put in context, these emails show that Defendants did nothing wrong.  The full set of emails show that discussions between Defendants and Senior Officer 1 about a potential contract with Company A—a contract the government admits was never awarded—were completely divorced from conversations involving Senior Officer 1's potential employment with Company A—another event that the government admits never happened.  *See* Notice at 6 n.2.

███████████████████████████████████████████
██  ██████  ███████████████████████  █  ███████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
█████████████████████████████████████████
████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

On February 28, 2023—19 months after the July 23, 2021 lunch conversation between Defendants and Adm. Burke—Defendants met with Senior Officer 1.  ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████. Ex. W at 1.  Ms. Messenger did not suggest that Defendants offered Senior Officer 1 freelance work *in exchange for* introductions and a workforce training contract.  And similarly, ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██

All told, evidence of the Uncharged Alleged Scheme is either irrelevant or only minimally relevant to the Charged Scheme, because the evidence does not show, by a preponderance or otherwise, that Defendants sought to engage in the alleged other criminal misconduct.  *See Marion*, 977 F.2d at 1288 (evidence of other bad acts must meet a preponderance standard).  Instead, the evidence that the government seeks to introduce shows Defendants discussing their company's leadership training at length with an individual (Senior Officer 1) who was a long-time proponent of their services, as well as untethered discussions of Senior Officer 1's potential post-government employment plans.  *See supra* at 3−8, 14−16.  There is no evidence that Defendants made any serious offer of employment to Senior Officer 1, and the government concedes that Senior Officer

1 did not steer a contract to Defendants' company. *See* Notice at 6 n.2. Evidence of the Uncharged Alleged Scheme should be excluded on that basis alone.

In addition, the two alleged schemes involved different people, organizations, courses of alleged conduct, and time periods, meaning that Defendants' conduct in the Uncharged Alleged Scheme is not probative of Defendants' intent, knowledge, motive, plan, or the absence of mistake in the charged scheme. *See United States v. Nicely*, 922 F.2d 850, 857 (D.C. Cir. 1991) (reasoning that, because "two conspiracies were not substantially alike, the exceptions" to Rule 404(b) "ha[d] only limited application" and noting that "[e]vidence of other crimes is . . . admissible when relevant to 'a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other'" (quoting *Drew v. United States*, 331 F.2d 85, 90 (D.C. Cir. 1964)).

Moreover, the Uncharged Alleged Scheme involves conduct that occurred *after* the July 2021 meeting between Defendants and Adm. Burke, greatly diminishing the scheme's relevance. *See United States v. Watson*, 894 F.2d 1345, 1349 (D.C. Cir. 1990) ("The temporal (as well as the logical) relationship between a defendant's later act and his earlier state of mind attenuates the relevance of such proof."); *United States v. Boyd*, 595 F.2d 120, 126 (3d Cir. 1978) ("The logic of showing prior intent or knowledge by proof of subsequent activity escapes us.").

Finally, the government's contention that Defendants offered Senior Officer 1 employment and other things "in exchange for an agreement," Notice at 2, is baseless. No reasonable jury would conclude otherwise if presented with all the relevant facts, but forcing Defendants to admit evidence of the full factual background will add significant time to the trial. The government fails to proffer any evidence of the alleged *quid pro quo* with Senior Officer 1. The Uncharged Alleged Scheme instead involves only lawful conduct and is similar to the Charged Scheme only at the

highest levels of generality (*e.g.*, both alleged schemes involved communications with senior military officials about Company A training).[5]  *See Jankins v. TDC Mgmt. Corp.*, 21 F.3d 436, 441 (D.C. Cir. 1994) ("[W]hen one must, in order to find similarity, define the character of the acts at such a high level of generality as here (greed, strategic behavior), and many of the events occur years after the conduct in dispute, we cannot find the conditions of admissibility under Rule 404(b) satisfied."); *see generally McDonnell v. United States*, 579 U.S. 550, 574 (2016) ("Setting up a meeting, talking to another official, or organizing an event (or agreeing to do so)—without more— does not fit that definition of 'official act.'").  Because the Uncharged Alleged Scheme is not probative (or at most minimally probative) of Defendants' states of mind or conduct, it should be excluded under Rule 403.

No grand jury or court has determined the Uncharged Alleged Scheme was criminal in nature.  And the key witness—Senior Officer 1—has described his dealings with Defendants as lawful in exculpatory interview statements that the government has not shared with the Court in its Notice.  It is simply not true, as the government claims, that it "easily meets its burden of proving by a preponderance of the evidence that, in or around the same time as their charged conspiracy with Burke, Kim and Messenger attempted to engage in a similar scheme with another senior military leader, Senior Officer 1."  Notice at 8.  If the government was so persuaded that Defendants had tried to bribe Senior Officer 1, it should have sought to supersede the Indictment.  But it cannot now seek to backdoor this extremely prejudicial evidence.

---

[5]  Defendants interfaced with high-level Air Force personnel (such as the Vice Chief of Staff) long before the Uncharged Alleged Scheme, further debunking the government's baseless theory that Defendants needed to offer Senior Officer 1 anything to obtain introductions.  Ex. EE at 1; Ex. FF at 1.

**B.    The Probative Value of Evidence Regarding the Uncharged Alleged Scheme Is Massively Outweighed by the Danger of Confusing the Issues, Unfair Prejudice to Defendants, and Undue Delay.**

*First*, the Uncharged Alleged Scheme will likely confuse the issues.  A jury will unlikely understand that Defendants' later-in-time discussions about Company A with Senior Officer 1, a senior military leader, were not tethered to Defendants' discussions with Adm. Burke, a different senior military leader.  Additionally, a jury will unlikely understand that the relationship between employment and workforce training in the Uncharged Alleged Scheme has no bearing on the relationship between employment and workforce training in the Charged Scheme.  All things considered, these apparent similarities may confuse the jury and lead it "to engage in impermissible propensity reasoning," thus supporting exclusion.  *United States v. Abu Khatallah*, No. 14-cr-00141 (CRC), 2017 WL 11493960, at *3 (D.D.C. Sept. 7, 2017).

*Second*, allowing the government to admit evidence about the Uncharged Alleged Scheme is extremely prejudicial and will lead the jury to make a "decision on an improper basis."  *Old Chief*, 519 U.S. at 180.  Namely, evidence regarding the Uncharged Alleged Scheme may lead a jury to inappropriately infer Defendants' guilt as to their dealings with Adm. Burke based on *Senior Officer 1's* conduct—his expressions of interest in Company A and facilitation of meetings on Defendants' behalf.  The most obvious inference from the government's mischaracterization of the Uncharged Alleged Scheme is that Defendants tried to bribe not one, but two senior military officials, thus negating the notion that their dealings with Adm. Burke were in good faith.  The government may formulaically recite Rule 404(b)'s permissible use language, but its intention is unmistakable:  it wants the jury to conclude that Defendants are habitual, repeat offenders who have a propensity for trading jobs for contracts.

Encouraging the jury to use later-in-time, unrelated, uncharged conduct to speculate about what Defendants thought, believed, or knew at an earlier time is risky.  How will introducing

evidence of their later-in-time dealings with Senior Officer 1 (principally beginning in January 2023)[6] show their knowledge, intent, motive, and plan at the time that they dealt with Adm. Burke (principally in July 2021)?  The government does not explain.  *See* Notice at 11−12.  Nor can it.

And beyond the emails it selectively quotes in its motion, what evidence will the government introduce as to the Uncharged Alleged Scheme?  Will it call Senior Officer 1 to either repeat or recant the exculpatory interview statements he made to law enforcement?  Unlikely. Since the government apparently believes those exculpatory statements were false, does the government plan to charge Senior Officer 1 with a violation of 18 U.S.C. § 1001, and have him testify as a cooperating witness?  High unlikely.  Or now that it has publicly referred to his dealings with Defendants as criminal in nature, will it immunize Senior Officer 1 so that Defendants can call him as a witness?  Again, unlikely.  No, the government's plan is to use cherry-picked portions of email communications, out of context, to paint Defendants as serial bribers, and thus force Defendants to rebut the evidence when it knows that the principal exculpatory witness almost certainly will not be available to Defendants now that the government has branded his dealings with them as unlawful.

Because the Uncharged Alleged Scheme's probative value is substantially outweighed by the danger of unfair prejudice and confusion, it should be excluded.  *See United States v. Turner*, No. 06-0026 (CKK), 2006 WL 1980232, at *6 (D.D.C. July 12, 2006) (concluding that evidence was inadmissible under Rule 403 where it was "not particularly relevant, [wa]s quite distant in time, [wa]s absolutely inessential to the Government's case, carrie[d] with it the very significant

---

[6] ███████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████

danger that the jury's attention will be redirected to distant events that confuse the real issues in th[e] case, and tend[ed] to prove only [the defendant's] alleged criminal predisposition").

*Finally*, allowing the government to admit evidence of the Uncharged Alleged Scheme will greatly expand the breadth of the trial. If the Court admits the government's 404(b) evidence, Defendants will be required to admit their own evidence to prove that Defendants did nothing wrong in connection with the uncharged conduct. That evidence will include testimony from percipient witnesses and admission of relevant documents and other communications—from a different time period, and involving different a different branch of the military and different witnesses. Such evidence will be extensive, given that the Uncharged Alleged Scheme is essentially equivalent in scope to the Charged Scheme.

Because any probative value of evidence concerning the Uncharged Alleged Scheme is substantially outweighed by the immense risk of confusion, unfair prejudice, and undue delay, the evidence should be excluded. In addition, the enormity of the risk of undue prejudice and confusion is so great that a limiting instruction is wholly inappropriate and inadequate here. *Cf. Donnelly v. DeChristoforo*, 416 U.S. 637, 644 (1974) ("[S]ome occurrences at trial may be too clearly prejudicial for . . . a curative instruction to mitigate their effect.").

## III.    DEFENDANTS DO NOT HAVE TIME TO DEFEND AGAINST THE UNCHARGED ALLEGED SCHEME WITHOUT COMPROMISING THEIR SPEEDY TRIAL RIGHTS.

Defendants have been pressing their speedy trial rights since this case was indicted, as the government is well aware. Still, the government sat on evidence of the Uncharged Alleged Scheme, which is roughly the same magnitude as the Charged Scheme. Now, the government attempts to inject evidence about the Uncharged Alleged Scheme into this trial at the last minute, ostensibly as Rule 404(b) evidence. The Court should reject this plainly inappropriate request. Although the government complied with the disclosure deadline, it could and should have provided

notice earlier given the scope of the uncharged conduct at issue. At this point, Defendants do not have sufficient time to obtain evidence to rebut the existence of the Uncharged Alleged Scheme. *See United States v. Boone*, 706 F. Supp. 2d 71, 74 (D.D.C. 2010) ("[P]resumed prejudice to the defendant intensifies over time."). Defendants have spent months navigating the *Touhy* process to obtain evidence from the Navy as to the Charged Scheme, and there is every reason to believe it will take just as long to obtain evidence from the Air Force and Space Force as to the Uncharged Alleged Scheme. But Defendants no longer have that time. And so, if permitted, the government's late-breaking disclosure of a second alleged scheme will force Defendants to choose between their speedy trial rights and collecting evidence to defend against the new, meritless allegations. Either way, the prejudice will be inescapable. To protect Defendants' rights, the Court thus should exclude the evidence described in the 404(b) Notice, which is clearly being offered to show Defendants' propensity and amounts to essentially doubling the issues that will need to be litigated in this case.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court preclude the government from introducing evidence or argument about the material described in its 404(b) Notice.

Respectfully submitted,

DATED June 20, 2025                          */s/ William A. Burck*

22

William A. Burck

Rocco F. D'Agostino
(Bar No. NY0592)
445 Hamilton Ave., Suite 605
White Plains, NY 10601
Tel: (914) 682-1993

*Counsel for Defendant Meghan
Messenger*

William A. Burck (DC Bar No.: 979677)
Avi Perry (DC Bar No.: 90023480)
Rachel G. Frank (DC Bar No.: 1659649)
John (Fritz) Scanlon (DC Bar No.: 983169)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
Tel: (202) 538-8000
Fax: (202) 538-8100
williamburck@quinnemanuel.com
aviperry@quinnemanuel.com
rachelfrank@quinnemanuel.com
fritzscanlon@quinnemanuel.com

Christopher Clore (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 5th Ave
New York, NY 10016
Tel: (212) 849-7000
Fax: (212) 849-8100
christopherclore@quinnemanuel.com

*Counsel for Defendant Yongchul "Charlie" Kim*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, a copy of the foregoing Objection was electronically filed with the Clerk of the U.S. District Court for the District of Columbia via CM/ECF and served to all counsel of record via electronic mail.

/s/ *William A. Burck*
William A. Burck (DC Bar No.: 979677)

Dated: June 20, 2025