UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. 24–265 (2)(3) (TNM) |
| : | |
| YONGCHUL "CHARLIE" KIM, and : | |
| MEGHAN MESSENGER, : | |
| : | |
| Defendants. : | |

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO ADMIT OUT-OF-COURT CO-CONSPIRATOR STATEMENTS**

In their Joint Opposition to the United States' Motion *in limine* to Admit Out-of-Court Co-Conspirator Statements, ECF No. 197 ("Joint Opposition"), Defendant Yongchul "Charlie" Kim ("Kim") and Defendant Meghan Messenger ("Messenger") rely on a faulty and unsupported reading of Federal Rule of Evidence 801 and completely ignore the charges against them, and their co-conspirator and co-defendant, former United States Navy Admiral Robert Burke ("Burke"). As a result, Kim and Messenger's Joint Opposition fails. For reasons previously briefed, *see* ECF No. 179 ("Government's Motion"), and discussed in more detail below, pursuant to Rule 801 this Court should grant the Government's Motion and admit at trial statements co-conspirator Burke made in furtherance of the conspiracy, both as to Person 3 and to the Navy. In addition, the Court should admit (1) statements by party opponents Kim and Messenger against themselves; and (2) statements by co-conspirators Kim and Messenger against each other.[1]

---

[1] In the Government's Motion, the Government argued that (1) statements made by party opponents Kim and Messenger are admissible against themselves, at 11-13; (2) statements made by co-conspirators Kim and Messenger are admissible against each other, *id.*; (3) statements by Burke to Kim and Messenger are admissible against Kim and Messenger, at 13-14; and (4) statements made by Burke to other military personnel about a contract with Company A and to promote Company A are admissible against Kim and Messenger, at 15-16. Kim and Messenger do not even attempt to argue otherwise. Indeed, they cannot argue otherwise because, for reasons previously briefed, such statements are clearly admissible. *See generally* Gov. Mot.

**DISCUSSION**

I. **Burke's Statements to Person 3 are Co-Conspirator Statements Made in Furtherance of the Conspiracy and are Admissible**

Kim and Messenger suggest that the <u>only</u> purpose of these statements was to bolster Burke's relationship with Person 3 (Joint Opp. at 5), and therefore they are not co-conspirator statements made in furtherance of the conspiracy.[2] Kim's and Messenger's position ignores key, indisputable facts. Without Person 3's belief that this employment opportunity with Company A was legal and would be lucrative, it is unlikely that Burke would have moved forward with the illegal *quid pro quo*. Person 3's support and buy-in were imperative to the success of the corrupt agreement for Kim, Messenger, and Burke (referred to collectively herein as the "Defendants").

*First,* Burke and Person 3 were involved in a relationship that they envisioned would become more committed upon his retirement from the Navy—Burke envisioned a long-term future with Person 3. Person 3 was also Burke's trusted confidante. It was critical to Burke's decision to move forward with the conspiracy that Person 3 believe that the opportunity with Company A would be lucrative and allow them to begin building a life together, as he had promised. Indeed, it was Person 3's understanding that, following Burke's retirement, she would be both a financial and romantic partner of Burke's. If Person 3 was not on board, it was possible that Burke would not be able to accept Company A's employment offer and receive the lucrative salary and stock options that came with that offer. As such, Burke had no choice but to keep Person 3 informed, such as by telling Person 3 that Kim and Messenger "want to have a more intimate conversation"

---

[2] Kim and Messenger recognize that this Court has already found that the Government has proven a conspiracy existed between Kim, Messenger, and Burke by a preponderance of the evidence and, while not conceding the issue, do not attempt to argue to the contrary. Joint Opp. at 2. As such, the Government incorporates by reference its argument that such a conspiracy existed, *see* Gov. Mot. at 11-12, but does not address it further.

2

and "Meghan already talking about job[,]" detailing the terms of the job, and explaining why he wanted to take the job. Burke was not simply bragging, as Kim and Messenger claim while ignoring the statements' context; he was "enhancing [Person 3's] usefulness to the conspiracy." *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988). Put simply, in order to fulfill his role in the conspiracy (taking a lucrative post-Navy job in New York), Burke needed Person 3's buy-in that the agreement with Company A should be pursued. Tellingly, Messenger recognized the importance of Person 3's buy-in—Person 3 recalled that Messenger spent time during the meeting at Belga Café to sell her on Company A and the potential personal services she could receive at Company A's new headquarters.

*Second,* after the private, unofficial, off-the-books conversation between the Defendants at the Belga Café, which Person 3 also attended, Person 3 was vocal about her concerns that the Defendants discussed an illegal agreement to commit bribery. She was at the meeting, witnessed the discussion, and saw Kim draw the illegal scheme on a napkin. This is exactly why, following the meeting, Burke had to make his statements to Person 3 to assuage her concerns about the illegality of his agreement with Kim and Messenger and thereby protect himself, Kim, and Messenger from criminal exposure. *See United States v. Paredes*, 176 F. Supp. 2d 183, 190 (S.D.N.Y. Nov. 26, 2001) (finding statements that co-conspirator made to his wife about meetings with and money received from co-conspirators were made in furtherance of the conspiracy because they "helped ensure that his wife knew what he was doing so that she neither questioned his activities nor obstructed" his criminal conduct). That is, Burke needed to thread the needle of sufficiently assuaging Person 3's concerns by giving her a sufficient "cover story" to conceal the full corrupt agreement from Person 3 while at the same time attempting to persuade her of the financial opportunity and benefits of the *quid pro quo* to retain her support and buy-in. Thus,

Burke's fig leaf claim that he had not "technically" accepted the job.

For example, when Person 3 asked, "To what extent to u think /believe the job for you is tied (or not?) to the contract/ trial w naveur? That made me nervous[,]" Burke had no choice but to tell Person 3 something – denying the obvious truth – so she neither reported what she witnessed nor tried to persuade Burke to abandon the corrupt agreement. Burke's response "technically - zero. But he desires that I be able to have a personal testimonial[,]" served a "current purpose in the conspiracy" because Burke made the statement to achieve precisely those goals: give sufficient plausible deniability to assuage Person 3 while still moving forward. *United States v. Thai*, 29 F.3d 785, 813–14 (2d Cir. 1994). This is true too of Burke's statement that he had "essentially agreed to work for [Company A]" and was "lean[ing]" toward working for Company A, when, as the Indictment alleges and the evidence proves, Burke had, in fact, already agreed to work for Kim and Messenger. *See e.g.*, ECF No. 1 at ¶¶ 31-32. The Defendants all had a vested interest in Person 3 not reporting the crime that she witnessed, which makes Burke's attempts to fig leaf and to conceal their corrupt agreement what they are: statements made in furtherance of the conspiracy. *See United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1994) (recognizing that statements "designed to promote or facilitate achievement of the goals of the ongoing conspiracy" are statements made in furtherance of a conspiracy). Indeed, an essential component of the Defendants' illegal agreement to commit bribery was concealment—absent the concealment, the Defendants would not have been able to carry out their bribery scheme. *See* ECF No. 1 at ¶¶ 26, 46, 53, 55. Burke's statements to Person 3 are examples of Burke, a co-conspirator, trying to conceal the full nature of the conspiracy and protect the co-conspirators and, as such, are admissible pursuant to Rule 801(d)(2)(E). *See, e.g.*, *United States v. Mayfield*, 909 F.3d 956, 962 (8th Cir. 2018); *United States v. Weaver*, 507 F.3d 178, 186 (3d Cir. 2007) ("[S]tatements made for

the purpose of concealing a conspiracy can further the conspiracy regardless of whether the addressee is a co-conspirator."); *United States v. Payne*, 437 F.3d 540, 546 (6th Cir. 2006) ("Statements designed to conceal an ongoing conspiracy are made in furtherance of the conspiracy for purposes of Rule 801(d)(2)(E)."); *United States v. Broussard*, 80 F.3d 1025, 1039 (5th Cir. 1996) ("Given that concealment is often a necessary part of a conspiracy, statements made to aid the concealment are made in furtherance of the conspiracy."); *United States v. Blakey*, 960 F.2d 996, 998 (11th Cir. 1992) ("Statements which serve a necessary part of a conspiracy by concealing it or impeding an investigation are admissible as statements made during and in furtherance of the conspiracy.").

Kim's and Messenger's legal arguments to exclude the statements are equally flawed. For instance, the fact that Person 3 was not part of the conspiracy is not relevant to the present inquiry. "Rule 801(d)(2)(E) does not require that the statement be made to a co-conspirator" to be admissible. *United States v. Edmond*, 52 F.3d 1080, 1111 (D.C. Cir. 1995). To the contrary, statements aimed at "communicating with a person who is not a member of the conspiracy in a way that is designed to help the coconspirators to achieve the conspiracy's goals" further the conspiracy and are admissible under Rule 801(d)(2)(E). *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994); *see also Tarantino*, 846 F.2d at 1412 (statements that "can reasonably be interpreted as encouraging a co-conspirator *or other person* to advance the conspiracy, or as enhancing a co-conspirator *or other person's* usefulness to the conspiracy" are admissible under Rule 801(d)(2)(E) (emphasis added)).

Similarly, whether the Government decides to call Person 3 as a witness at trial has no bearing on the admissibility of co-conspirator statements made in furtherance of the conspiracy. Joint Opp. at 7. Despite Kim's and Messenger's assertions, Person 3's testimony at trial is wholly

irrelevant to this Court's analysis as to the admissibility of Burke's statements to Person 3 pursuant to Rule 803(d)(2)(E). The only relevant analysis is whether this Court finds by a preponderance of the evidence that Burke, as a co-conspirator, made the statement and that he made the statement to Person 3 during and in furtherance of the conspiracy. *See United States v. Gatling*, 96 F.3d 1511, 1520 (D.C. Cir. 1996) (discussing the standard to admit co-conspirator statements pursuant to Rule 801(d)(2)(E)). For the reasons discussed above and previously briefed, *see* Gov. Mot at 18-20, it is clear that Burke's statements made to Person 3 about his job offer at Company A and the meeting at the Belga Café were made in furtherance of this conspiracy. This Court should reject Kim's and Messenger's arguments and admit these statements pursuant to Rule 801(d)(2)(E).[3]

## II. Burke's Statements to Navy Personnel Discussing his Retirement and Future Employment are Admissible as Co-Conspirator Statements Made in Furtherance of the Conspiracy

Kim and Messenger next argue that Burke's statements to the Navy about his retirement and future employment are inadmissible because the statements do not implicate any hearsay exceptions. Indeed, the Government agrees with Kim and Messenger—the statements do not implicate a hearsay exception because they cannot be offered for their truth and as such are not hearsay at all. Burke's statements are lies that the Government seeks to admit to prove that Burke intentionally concealed his relationship with Kim and Messenger and his job at Company A to allow him to carry out his part of the corrupt bribery agreement. The fact that the statements are lies, as Kim and Messenger acknowledge, is the reason the statements are co-conspirator statements made in furtherance of the conspiracy and are admissible pursuant to Rule 801(d)(2)(E). *See infra* at 4-5 (citing to well-settled case law that recognizes that statements made for the purpose

---

[3] The Court should also admit Person 3's statements to Burke that are identified herein and in the Government's Motion for the reasons already explained in the Government's initial filing. *See* Gov. Mot. at 19 n.3.

of concealing a conspiracy are made in furtherance of the conspiracy).

Burke had to lie to the Navy about his retirement and future employment because if he did not, then he would be unable to carry out the illegal bribery agreement he made with Kim and Messenger. The agreement required Burke to not only obtain a Navy contract for Company A, ECF No. 1 at ¶¶ 21, 24, 35a, but also to continue leveraging his position at the Navy to promote Company A's services in an ongoing effort to secure additional contracts. *See id.* at ¶ 26, 46. If Burke had not lied to the Navy to conceal his illegal agreement with Kim and Messenger, he never would have been able use his official position to ensure Company A received a Navy contract and promote Company A to other high-ranking officials. Had Burke disclosed his relationship with Kim, Messenger, and Company A, Burke would have been forced to recuse himself from anything having to do with Company A. As such, Burke's lies—his concealment—were vital to ensuring the success of the illegal agreement and are admissible pursuant to Rule 801(d)(2)(E). *See United States v. Perholtz*, 842 F.2d 343, 357 (D.C. Cir. 1988) (finding no error where statements were admitted because the statements "were parts of continuing activity that was essential to and therefore in furtherance of the survival of the ongoing operating." (quoting *United States v. Del Valle,* 587 F.2d 699, 704 (5th Cir. 1979))).

Additionally, Kim and Messenger argue that Burke's statements to the Navy about his retirement and future employment are inadmissible because Kim and Messenger were unaware of the statements and did not encourage Burke to make the statements. This argument ignores, and is in direct contravention of, firmly established legal precedent. The case law is clear: because Burke's statements were intended to facilitate the conspiracy, it does not matter whether Kim and Messenger were implicated in the statements, involved in the statements, or knew about the statements. *See United States v. Weisz*, 718 F.3d 413, 433 (D.C. Cir. 1983) (Rule 801(d)(2)(E)

"embodies the long-standing doctrine that when two or more individuals are acting in concert toward a common goal, the out-of-court statements of one are . . . admissible against the others, if made in furtherance of the common goal"); *United States v. Wright*, 285 F. Supp. 3d 443, 454 (D. Mass. Jan. 22, 2018) ("Knowledge of . . . every detail of the conspiracy is not a prerequisite to coconspirator statement admissibility." (*citing United States v. Cruz-Rodriguez*, 541 F.3d 19, 28 (1st Cir. 2008) (a conspiracy can be proven without showing that "each conspirator knew of all the details of the conspiracy or participated in every act in furtherance of it . . .."))); Conspiracy: Basic Instruction, 1 Barbara E. Bergman, Criminal Jury Instructions for the District of Columbia § 7.102 (Matthew Bender, Rev. Ed.) ("When persons enter into an agreement to commit a crime, they become agents for each other so that everything which is said or done by one of them in furtherance of that purpose is deemed to be the statement of all who have joined in that conspiracy and is evidence against all of the conspirators."). And, of course, as described above, and as previously briefed, Gov. Mot at 16-18, Burke's statements to the Navy were in furtherance of the conspiracy—he had to lie to the Navy to ensure his ability to carry out the corrupt agreement was not impacted and to cover up his criminal conduct.

  Kim and Messenger, in conclusory fashion without any supporting legal precedent, further maintain that the probative value of these statements is "substantially outweighed by the risk of unfair prejudice and confusion." Def. Mot. at 8. Kim and Messenger explain that "absent any evidence that [they] knew about or encouraged these lies beforehand, admission of Adm. Burke's lies to the Navy will invite the jury to conflate Adm. Burke's knowledge, motive, and intent with [Kim's and Messenger's]." *Id.* This argument defies all logic for a number of reasons. First, the basis for Kim's and Messenger's argument, that there is no evidence Kim and Messenger knew about Burke's lies, is simply not true. For example, on May 13, 2022, Burke sent Kim and

8

Messenger a copy of his disqualification statement and post-government employment opinion, which gave Burke approval to <u>begin</u> job discussions with Company A. Those documents were littered with false statements, including, for example, that Burke "anticipate[d] commencing discussions related to employment" with Company A, when in fact, as the indictment alleges and the evidence indicates, he had been having employment discussions with Kim and Messenger for over a year. *See* ECF No. 1 at ¶ 29. Second, it does not matter whether there is evidence that Kim and Messenger knew about Burke's lies because they were statements made in furtherance of the conspiracy—as described above, Burke lied and concealed his employment discussions with Company A and his employment offer so he did not have to recuse himself and could carry out his end of the corrupt bribery agreement. *See Tarantino*, 846 F.2d at 1398 ("All that is required is that the evidence establish that he knew others were involved and that his own benefits depended upon the success of the entire venture."). And third, any prejudicial effect of these statements is simply because it is inculpatory of a bribery conspiracy, and plainly not "substantially outweigh[ed]" by its significant probative value. *United States v. Bradley*, 145 F.3d 889, 893 (7th Cir. 1998) (Rule 403 is not a tool designed "to permit the Court to 'even out' the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none."). Nor is there any reason to believe a jury cannot capably distinguish between what inferences to draw from Burke's actions in furtherance of the conspiracy about *his* culpable mental state versus the mens rea of the trial defendants Kim and Messenger.

For these reasons, and reasons previously briefed, Gov. Mot at 16-18, this Court should reject Kim's and Messenger's arguments and admit the Burke's statements to the Navy about his retirement and future employment.

## III.  CONCLUSION

For the reasons previously briefed, *see* Gov. Mot., and argued above, this Court should reject the Defendant's arguments and grant the Government's Motion in its entirety.

Respectfully submitted,

JEANINE FERRIS PERRO
UNITED STATES ATTORNEY

By         /s/
Rebecca G. Ross (NY Bar No. 5590666)
Brian P. Kelly (DC Bar No. 983689)
Joshua S. Rothstein (NY Bar. No. 4453759)
Assistant United States Attorneys
601 D Street NW
Washington, DC 20530
Office: (202) 252-4490