**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No. 24-CR-265 (2)(3) (TNM)** |
| v. | : | |
| | : | |
| **YONGCHUL "CHARLIE" KIM, and** | : | |
| **MEGHAN MESSENGER,** | : | |
| | : | |
| Defendants. | : | |

**UNITED STATES' OPPOSITION TO DEFENDANTS' AND NEXT JUMP'S**
**JOINT MOTION FOR VARIOUS RELIEF**

Defendants Yongchul "Charlie" Kim and Meghan Messenger ("Defendants") have jointly moved, along with their company Next Jump (filing as intervenor, *see* ECF 255), (a) to oppose the government's motion *in limine* to admit certain records into evidence pursuant to Federal Rule of Evidence 902, ECF 219; (b) quash a trial subpoena to Next Jump; (c) exclude purportedly privileged evidence; and (d) for sanctions.  ECF 249.[1]  Their motion lacks any basis in law or fact.  At bottom, their 31-page motion—replete with hyperbolic language and baseless accusations—is a desperate attempt to exclude a ██████████████████████████████ ██████████████████████████████ establishing Defendants' knowledge that their *quid pro quo* was corrupt.  ████████████████████████

████████████████████████████████████████

---

[1] Defendants filed their motion under seal.  While the government believes there is no basis for doing so, as there is no privileged information to protect for the reasons stated below, the government is filing this opposition under seal to be consistent with Defendants' motion.  The government is further filing portions of this motion *Ex Parte.*

███████████ putting them on notice of the illegality of their job-for-a-contract bribery agreement with co-Defendant, Robert Burke:

███████████████████████████████████████████████████

███████████████████████████████████ are not protected by attorney-client privilege.   Put simply, here, following internal consultation with the appropriate sections of the Department, the government obtained a voluntary statement and voluntary production of palpably non-privileged materials from a witness who specifically disclaimed any attorney-client relationship related to the same.   Defendants' and Next Jump's motion and the requested relief should be denied for the following reasons.

*First*, compliance materials are routinely considered by courts to be outside the attorney-client privilege.   Defendants and Next Jump cannot meet their burden to show that these compliance materials are privileged because (1) legal advice was not their primary purpose, as confirmed by the trainer and the circumstances of the training; (2) the compliance materials were not confidential, and (3) the trainer was not within the attorney-client relationship, so his involvement would have waived any privilege.   Additionally, the materials are not protected as attorney work product because they were given proactively, and thus not prepared in anticipation of litigation.

*Second*, Defendants' and Next Jump's requested relief—including an evidentiary hearing, suppression, quashing a trial subpoena, and sanctions—flows from their legally and factually baseless insistence that the compliance materials are privileged.   The record, as set forth below,

is clear:    the government, at all times, acted appropriately, within the applicable law and specific ethics guidance.

Given Next Jump's inexplicable failure thus far to produce ██████████ or similar potentially inculpatory materials, it appears that Defendants' unsupported allegations of misconduct by the government are a last-ditch effort to avoid producing records that would directly contradict Defendants' purported good faith defense.[2]    Next Jump has not named any ground to quash the legally valid trial subpoena.    They have run out of reasons not to produce the inculpatory records.    At a minimum, Next Jump must, as required by the trial subpoena, produce:

████████████████████████████████████████████████████████████████████

████████████████████████████

For all these reasons, Defendants' and Next Jump's motion should be denied in its entirety.

### BACKGROUND

Defendants' recitation of events related to Mr. Weisberg's interactions with the government is misleading and appears designed to make it seem that the government acted improperly.[3]    It is not rooted in reality and contemporaneous records.    Here are the facts:

---

[2] As discussed below, despite ████████████████████████████████████████
████████████████████████████████████████

[3] Defendants claim that the government made the decision not to alert Defendants or Next Jump about this interaction because the government knew it was doing something improper.    The allegation that the government somehow thought it would "get away with it" is also nonsensical. The government is well aware of its discovery obligations and knew it would be required to disclose to Defendants that it had communicated with Mr. Weisberg, the substance of those communications, and any documents that were provided by Mr. Weisberg.    The government has, of course, complied with those discovery obligations here.

### A. Government Contacts with Mr. Weisberg

The exhibits to Defendants' own filing show what happened here:

On June 12, 2025, government counsel had a call with Mr. Weisberg on an unrelated matter. ECF 249, Ex. 15 at 1. Unprompted, Mr. Weisberg volunteered that he had a prior relationship with Next Jump and gave a general overview of his background and how he became involved with the company. *Id.* Mr. Weisberg told government counsel that he was not retained to provide legal advice to Next Jump and never had an attorney-client relationship with Next Jump. *Id.* He said that he provided ███████████████████████████████ and began to describe it. *Id.* At that point, government counsel stopped the conversation and asked whether Mr. Weisberg would agree to schedule a voluntary interview in the presence of an agent. *Id.* He agreed. *Id.*

On June 13, 2025, government counsel sought guidance from the Department of Justice's Office of Enforcement Operations and Professional Responsibility Advisory Office.[4] *Id.*

---

[4] Defendants assert that it is "likely" the government "did not even go through internal Department of Justice protocols mandated when a prosecutor subpoenas an attorney for information relating to the representation of a client." ECF 249 at 2. *First*, Defendants were aware—prior to filing their motion and making this false allegation—that government counsel did, in fact, seek guidance from the appropriate Department of Justice entities. ECF 249, Ex. 15 at 1. *Second*, Defendants' statement is misleading because the government did not serve Mr. Weisberg with a subpoena. All the government's communications with Mr. Weisberg were voluntary and all materials obtained from Mr. Weisberg were produced voluntarily. ECF No. 249, Ex. 15 at 1, Ex. 16 at 1. *Third*, Defendants' assertion that the Justice Manual requires authorization by the Assistant Attorney General or a Deputy Assistant General for the Criminal Division is wholly irrelevant to the court's inquiry pursuant to firmly established legal precedent. It is also misleading because such authorization is only required when issuing a subpoena to an attorney for information relating to the attorney's representation of a client. No subpoena was issued here, and as discussed in more detail below, Mr. Weisburg did not have an attorney-client relationship with Next Jump. In sum, it is not only false that government counsel failed to consult with the appropriate component of the Justice Department (in fact, we did), it would also be incorrect to say authorization was required under Department policy (here, none was).

Government counsel received explicit guidance confirming that she may obtain ███████████ ███████████████ voluntarily from Mr. Weisberg and proceed with a voluntary interview. *Id.* Government counsel spoke to Mr. Weisberg on the phone briefly on June 23, 2025, to ask if he would voluntarily produce documents in his possession that were not covered by attorney-client privilege, ████████████████████████. *Id.* Mr. Weisberg agreed to voluntarily produce those documents. *Id.*; *see also* ECF 249, Ex. 16 at 1. That same day, he emailed the government ████████████████████████████████████████████████████ ECF 249, Ex. 16.

On July 2, 2025, Mr. Weisberg participated in a voluntary interview. Government counsel began by confirming that she was not seeking any information covered by the attorney-client privilege and that Mr. Weisberg had never provided legal advice to Next Jump.[5] ECF 249, Ex. 3 at 1, Ex. 4 at 1, Ex. 5 at 1. In relevant part, Mr. Weisberg told the government that:



---

[5] Defendants attempt to make much of the fact that the rough notes are not verbatim the same as the MOI, and that there is a difference between the draft MOI and final MOI. This is not evidence of improper conduct, but merely the process of drafting an MOI from agent notes. As indicated in the final MOI, government counsel began the interview by cautioning Mr. Weisberg not to discuss attorney-client privileged information; confirmed Mr. Weisberg's previous statements that he exclusively provided Next Jump with ethics and government compliance advice, and that he never provided Next Jump with legal advice of any kind; and informed him that if any questions tended to elicit privileged information, that was not the intent and that he should not answer the question. That the agent's rough notes and draft MOI consolidated or summarized those carefully repeated warnings as instructing Mr. Weisberg not to discuss attorney-client privileged information does not alter the reality that those warnings were given. Moreover, the statements at issue (that Mr. Weisberg confirmed he did not provide legal advice, and his role was to provide training) are implicit and repeated throughout his MOI. Indeed, Mr. Weisberg's assessment that he provided training and was not providing legal advice formed the basis for his comfort in proactively voluntarily sharing this information with the government during the initial call on the other matter.



On July 8, 2025, government counsel asked if Mr. Weisberg would be able to provide a business records certification.   He responded the same day with a signed certification asserting that the materials he voluntarily produced to the government were business records pursuant to Federal Rules of Evidence 902(11) and 902(13).   This email, and the records certification, is attached to this filing as Exhibit A.

Government counsel received the final approved draft of Mr. Weisberg's Memorandum of Interview ("MOI") on July 16, 2025, and promptly provided it to Defendants the next day.   ECF No. 249, Ex. 15 at 5-6.   The government subsequently provided Defendants with the rough notes

of Mr. Weisberg's interview, as well as a draft version of the MOI.   *See* ECF 249, Exs. 3, 4, 5;

Exhibits B (email transmitting rough notes), C (email transmitting draft MOI).

On July 22, 2025, government counsel provided Defendants with the emails exchanged

with Mr. Weisberg, and a recounting of the government's contacts with him (including that

government counsel sought ethical guidance before receiving documents or interviewing Mr.

Weisberg).   ECF 249, Ex. 15 at 1.

**B.  Use of the Materials at Trial**

The law and the facts permit the government to introduce at trial the testimony of Mr.

Weisberg, the ██████████████████████████████████.   However, at this

time, the government anticipates ████████████████████████████

███████.[6]   The government will seek to admit ████████████████ as a business

record pursuant to Federal Rule of Evidence 902(11) and as attested to in the business records

certification provided by Mr. Weisberg.   Exhibit A at 3.   The government anticipates that a

former Next Jump employee, Employee 1, who attended the training, will also be able to

authenticate ████████.   *See* Exhibit D (Memoranda of Interviews of Employee 1).[7]

Employee 1 told the government she is not certain whether all employees were required to attend

but recalls that it was a big deal and that it was potentially necessary for Next Jump to become a

government contractor.   Employee 1 further told the government that she recalls that Defendant

Kim specifically ordered her to attend and stated that he was required to and would be attending

---

[6] At this time, should the ████████████████████ be admitted via certification, the government does not believe it will be necessary to call Mr. Weisburg in its case-in-chief nor does it intend to offer ████████████ into evidence at trial.   Nevertheless, the privilege analysis below includes discussion of the interview, ████████████████.

the training.  *Id.*  Employee 1 recalls signing a document confirming that she had attended the training.  *Id.*

To be clear, despite being responsive to ▮▮▮▮▮▮ and current trial subpoenas (as described in detail below), Next Jump has produced no records of this training or documents reflecting who was invited and/or attended, nor did they include any reference to it on their privilege log, nor otherwise object to producing the same.







### C.  Next Jump's Production Failures

The compliance materials from Mr. Weisburg, as well as other such records ██████

█████████████████████████████████████████████████████████████████

██████ ██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████



On July 11, 2025, the government served Next Jump with a trial subpoena for production

of:





ECF 249, Ex. 18 at 3.    Next Jump has not produced any materials sought by the trial subpoena.

### D. Defendants' Privilege Assertions

On July 18, 2025, after learning that Mr. Weisburg had been interviewed and after the government had produced an MOI of that interview, Next Jump's counsel Haejin Shim—who had recently been re-retained to represent Next Jump ███████████████████████████████ emailed government counsel, attaching the two compliance documents Mr. Weisburg voluntarily produced to the government.    Ms. Shim said that she had recently learned of Mr. Weisberg's interview, and that he gave the compliance materials to the government.    ECF 249, Ex. 6.    She advised that "Next Jump asserts all privilege rights it has over documents and information in the possession of Mr. Weisberg [and] . . . has not and does not intend to waive privilege."    *Id.*

The government responded by letter on July 22, 2025, providing factual points and precedent supporting the notion that Mr. Weisberg was not retained as a lawyer for Next Jump and his compliance training was not privileged.    *See* ECF 249, Ex. 17.    The government also pointed out Next Jump's failure to previously produce the documents, and outstanding obligations under the trial subpoena.    *Id.* at 3.    Rather than respond, Defendants filed their motion for various relief on July 30, 2025.    ECF 249.

### APPLICABLE LAW

### A. Attorney-Client Privilege

The attorney-client privilege may be invoked with respect to (1) a communication; (2) made between privileged persons; (3) in confidence; (4) for the purpose of obtaining or providing legal assistance for the client.    *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014) ("*Kellogg I*") (citing Restatement (Third) of the Law Governing Lawyers §§ 68-72 (2000)). The party invoking the privilege bears the burden of proving its application to particular

11

information. *In re Kellogg Brown & Root, Inc.*, 796 F.3d 137, 145 (D.C. Cir. 2015) ("*Kellogg II*"). Because the privilege obstructs the search for truth, courts must construe it narrowly. *United States v. Singhal*, 800 F. Supp. 2d 1, 6 (D.D.C. 2011).

Corporations, as well as individuals, may assert attorney-client privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 392 (1981). A corporation's privilege may protect communications with in-house counsel as well as outside attorneys. *Id.* at 395. But merely involving an attorney in some aspect of corporate business does not imbue privilege. *See, e.g.*, *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2023 WL 1871107, at *6 (N.D. Cal. 9, 2023) (rejecting Gibson Dunn's proposition that an entire investigation was privileged by reasoning that "a party cannot simply 'cc' their attorney to privilege a document—they must be communicating with their attorney in order to receive legal advice") (citing cases). To be privileged, seeking or obtaining legal advice must be the "primary purpose" of the communication.[9] *Kellogg I* at 760 (articulating the test as asking "[w]as obtaining or providing legal advice a primary purpose of the communication, meaning one of the significant purposes of the communication?"). The attorney-client privilege is an evidentiary privilege—if a violation is proven, the appropriate remedy is suppression of the relevant evidence. *See United States v. Moscony*, 927 F.2d 742, 753 (3d Cir. 1991).

---

[9] Reasoning along these lines has been applied in a variety of contexts—including tax return preparation, *see In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1224 (11th Cir. 1987), facilitating real estate transactions, *see In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 71-72 (1st Cir. 2011), business functions of in-house counsel, *see U.S. Postal Service v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 160-62 (E.D.N.Y. 1994), and drafting memoranda providing neutral, objective analysis of federal regulations, *see Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980)—to conclude that attorneys were not providing legal advice for the purpose of attorney-client privilege.

### B.  Work-Product Doctrine

The work-product doctrine protects "material obtained or prepared by an adversary's counsel in the course of his legal duties, provided that the work was done with an eye toward litigation."   *In re Sealed Case*, 676 F.2d 793, 808 (D.C. Cir. 1982) (citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)) (internal citations omitted).   The primary purpose of the work product doctrine is to "prevent exploitation of a party's efforts in preparing for litigation."   *Hickman*, 329 U.S. at 498.   To qualify as prepared in anticipation of litigation, the proponent of the work-product doctrine must show that materials were prepared because of the prospect of litigation. *United States v. Deloitte, LLP*, 610 F.3d 129, 138 (D.C. Cir. 2010).

### ARGUMENT

Compliance materials, by design, are made to inform large groups of people (like Next Jump employees) about the law.   Generally, they are not for the primary purpose of providing legal advice, and they are not intended to be confidential.   Adopting Defendants' view of privilege and the attorney work-product doctrine would render corporate compliance materials privileged (and thus shielded from civil discovery, agency inquiry, and criminal investigations) so long as they were drafted by someone who went to law school.   This would be a sea change in legal precedent and would make no sense given the facts surrounding the materials in this case.

Even if Defendants could show that there were privileged or protected portions within the documents, which to be clear, they cannot, there is no legal basis for an evidentiary hearing, or any of the other relief they seek.

**A. Defendants' Motion Ignores a Significant Body of Caselaw Concluding that Compliance Materials are Not Privileged**

Throughout their motion, Defendants repeatedly assert ███████████████████

██████████████████████████████████ with Mr. Weisburg are protected by the

attorney client-privilege.    *See generally* ECF 249.    In a glaring omission, nowhere in

Defendants' motion do they even attempt to grapple with the fact that these documents and

communications, as supported by Mr. Weisberg's own repeated characterizations of those

documents and communications, indicate that they were intended to provide compliance advice,

not legal advice.    *See e.g.*, ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████ Courts have routinely held that compliance materials and advice

are not covered by the attorney-client privilege.    *See e.g.*, *In re Diisocyanates Antitrust Litig.*, No.

MC 18-1001, 2024 WL 3412049, at *3 (W.D. Pa. Mar. 28, 2024) (compliance PowerPoint

presentations not protected by attorney-client privilege); *Vilkofsky v. Specialized Loan Servicing,

LLC*, No. 16-1291, 2018 WL 10215696, at *2 (W.D. Pa. Jan. 10, 2018) (rejecting claim that

"instructional guides for complying with various federal laws" are privileged attorney-client

communications or work product); *In re Domestic Drywall Antitrust Litigation*, MDL No. 2437,

2014 WL 5090032, at *4 (E.D. Pa. Oct. 9, 2014) (finding that an antitrust compliance policy is

14

more akin to a reference or instructional guide and thus is primarily a business policy not entitled to protection from compelled production by the attorney-client privilege); *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 07-MD-01871, 2009 WL 4641707, at *3 (E.D. Pa. Dec. 7, 2009) (finding that documents prepared by a corporation as part of efforts to ensure compliance with federal regulatory agencies or maintain positive public image are not protected by the work product doctrine); *Hartford Life Insurance Co. v. Bank of America Corp.*, No. 06–3805, 2007 WL 2398824, at *6 (S.D.N.Y. Aug. 21, 2007) (finding that due diligence presentation appended to bank's due diligence manual was not privileged because it provided only generic descriptions of the law, did not apply those generic legal principles to specific facts, and did not disclose or reflect any confidential information disclosed by the bank).    As described in these cases, compliance materials are designed to be general and informative.    They are proactive in the sense that they provide guidance for the future and generic statements of the law.

Defendants do not even attempt to address this legal precedent that firmly establishes that compliance advice is not legal advice.    Instead, Defendants, in conclusory fashion, repeatedly assert that their compliance materials are privileged in their entirety.    These mere assertions are not enough and are not supported by the case law.

### B. Defendants Have Not, and Cannot, Meet Their Burden to Show that the Compliance Materials[10] are Privileged

As the proponents of the privilege, Defendants must show each element to establish that the privilege applies.    *Kellogg II* at 145.    Defendants have utterly failed to make the requisite

---

[10]  As stated above, the government does not intend to offer the ██████████████████████ ████████████████████████████████████ into evidence at trial.    Nevertheless, to show that the government proceeded in accordance with applicable law, the analysis below takes up the compliance materials in their entirety.

showings, including that legal advice was a primary purpose of Mr. Weisberg's work, that the materials were confidential, or that Mr. Weisberg was within the attorney-client relationship.    *Id.*

### 1.  Legal advice was not a primary purpose of Mr. Weisberg's work

Defendants have not shown that a primary purpose of Mr. Weisberg's work on ███████

███████████████████████████████ was providing legal advice—because it was not. [11]    Mr.

Weisberg did not believe himself to be providing legal advice when ████████████████████

████████████████████████████████████ His assessment, as the attorney who

performed the work, is itself powerful evidence.    *See United States v. Rogers,* 751 F.2d 1074,

1080 (9th Cir. 1985) ("Normally, an attorney is in a better position to protect the confidences of

his client and to know the scope of his ethical duty to his client than is [law enforcement].") (citing

*United States v. Rasheed*, 663 F.2d 843, 854 (9th Cir. 1981) ("[A]bsent unusual circumstances, an

attorney is in a better position to protect the confidences of his client and to know the scope of the

privilege with his client than is the prosecutor.")).

Moreover, the facts support Mr. Weisberg's informed assessment.    According to

Defendants' factual submission, Mr. Weisberg was hired by White & Case, who had been retained

by Next Jump.    ECF 249, Ex. 7.    Mr. Weisberg worked with Next Jump's outside general

counsel, Ms. Shim.    His invoices from April and June 2019 (issued to White & Case) do not

indicate provision of legal services, but rather list "service" and "flat rate" or ████████████

---

[11] In their filing, Defendants refer to Mr. Weisberg's providing legal advice to Next Jump on "IP matters."    *See, e.g.*, ECF 249 at 5.    The specific assertions and related exhibits are redacted from the version of Defendants' motion provided to the government.    The government did not question Mr. Weisberg about "IP matters," nor did Mr. Weisberg mention anything about them.    These "IP matters" are not, to the government's understanding, within any of the materials requested by the trial subpoena.    To the government's understanding, Mr. Weisberg's involvement on "IP matters" is irrelevant to the issues before the Court.

████████████████████████ in the descriptions.    White & Case coded payment on the invoices as "professional service" on the June 28 invoice, ECF 249, Ex. 12, and alternately as "professional services" and "outside legal services" on payment of the April 26 invoice, ECF 249, Ex. 8.    Regardless of how White & Case may have coded the services, Mr. Weisberg provided the services, knows what services he provided, and, unsurprisingly, both of his invoices make clear that he did not bill for legal services.

████████████████ was done proactively.    ECF 249, Decl. for H. Shim ¶ 8 (explaining that Mr. Weisberg was brought in to work ████████████████████████████ ████████████████); ECF 249, Ex 3. at 1 (Mr. Weisberg explaining that a portion of his business was to provide proactive C&E training to companies); *see also* www.govprocurementlaw.com/firmdesc.html (Mr. Weisberg's firm's website describing "[p]roactive design and implementation of FAR part 3.10 and similar compliance programs . . . and compliance and ethics training").    The ████████ was not provided to Next Jump as part of an internal investigation, nor in response to allegations of wrongdoing.    *Kellogg I* at 756-59 (reasoning that legal advice was a primary purpose of communications within a company's internal investigation into potential wrongdoing).    ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████.    ECF 249, Ex. 3 at 1-2, Ex. 4 at 2, Ex. 5 at 1-2.    Mr. Weisberg used ████████████████████████████████ ████████████████ ECF 249, Ex. 3 at 3, Ex. 4 at 4, Ex. 5 at 3.    ████████████ ████████████████████████████████████████████████████not Mr. Weisberg, which further underscores that Mr. Weisberg was hired to ████████████████,

not provide legal advice.    ECF 249, Ex. 2 at 15.    Even if it could feasibly be said that answers

to specific questions or hypotheticals would edge into providing legal advice, that is not applicable

here because Mr. Weisberg recalls ██████████████████████████████████████

██████████    ECF 249, Ex. 3 at 1-2, Ex. 4 at 10, Ex. 5 at 2.

████████████████████████████████████████.    ECF 249, Decl. for H. Shim ¶

7 (████████████████████████████████████████████

████████████████████    ████████████████████████████

████████████████████████    ECF 249, Ex. 3 at 4, Ex. 4 at 8, Ex. 5 at 4.

Next Jump has produced—without any privilege assertions—another such company-wide policy

from its files.    *See, e.g.*, Ex. G (DOJ-NXJ-00528985, marked for possible admission at trial as

Gov. Ex. 10).    Defendants make much of the fact that ████████████ Mr. Weisberg provided

appears to have track changes and was a draft he shared with Ms. Shim.    Neither fact changes

that Mr. Weisberg was not providing legal advice when he helped Next Jump's counsel make a

████████████—something Mr. Weisburg reiterated throughout his conversations with the

government.    *See* ECF 249 Ex. 3 at 1, Ex. 4 at 1, Ex. 5. at 1, Ex. 15 at 1.

### 2. *The compliance materials were not confidential*

Defendants repeatedly contend that the compliance ████████ was confidential, but the

only facts in support of this notion are self-serving statements ████████████████████

████████████████████████████████"    ECF 249, Decl. for H.

Shim ¶ 8.    But Employee 1, a former Next Jump employee who worked on accounting and

payroll, ████████████████████████████████████████████

████████████████████████████    *See* Ex. D (memorializing

recollection that Employee 1—an employee who administered payroll—████████████████

18



.” *See,*

*e.g.,* ECF 249, Ex. 2 at 15 (“

”); 18.

ECF No.

249, Ex. 3 at 1-2; *cf. Coastal States Gas Corp., v. Department of Energy*, 617 F.2d 854, 862 (D.C.

Cir. 1980) (reasoning that memoranda were not privileged where the documents were broadly

circulated and indexed for future use).    Nor was the ▇▇▇▇▇▇ designated as “privileged,”

“work product,” or “confidential.”    Because it was not.

Defendants' confidentiality contentions on the code of conduct similarly fail.    The fact

that the document was stamped “confidential” is not dispositive on this point.    *Cf. In re Facebook*,

2023 WL 1871107, at *6.    If it were, then any party could imbue documents with privilege simply

through use of a Microsoft Word watermark.    Mr. Weisberg informed the government ▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇.    ECF 249, Ex. 3

at 5.    And in fact, the ▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇    ECF 249, Ex. 1 at 13.

### 3. Defendants did not demonstrate that Mr. Weisberg had an attorney-client relationship with Next Jump

As discussed above, Mr. Weisberg was hired by White & Case, who had been hired by

Next Jump.    Mr. Weisberg believed himself to have been hired to provide professional training

and compliance services, not provide legal advice, as his invoices bear out.    *See* section III.B.1,

*supra*.    In particular circumstances, outside professionals can be considered integral to the

attorney-client relationship such that their communications are imbued with privilege.    *See*

19

*United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961) (in limited circumstances, the attorney-client privilege may extend to communications with a third party such as an accountant or a private investigator hired to assist in the rendition of legal services).    But that principle is narrowly construed and only applies where a professional serves an integral role interpreting information necessary to an attorney's representation.    *See In re Lindsey*, 158 F.3d 1263, 1272 (D.C. Cir. 1998) (applying *Kovel* narrowly and limiting it to instances where the third party serves a crucial role in translating the information necessary for the provision of the attorney's advice); *see also United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999) (in order for privilege to extend to a third party under *Kovel*, the third party must be acting as an agent of the attorney, and his involvement must be necessary (not simply useful) to improve comprehension of the communications between attorney and client).

Defendants have not provided a retainer agreement, or any other document showing that Mr. Weisberg was retained to provide legal advice.    Mr. Weisberg's professional services were not within the attorney-client relationship.    Communications involving him are not privileged.

In fact, forwarding otherwise-privileged information to Mr. Weisberg would have waived the privilege.    Consequently, if even if Next Jump could show that █████████████████ █████████████████████████████████████████████████, that privilege was waived when she forwarded it to Mr. Weisberg, who was not retained to provide legal advice.[12]

---

[12] Unlike attorney-client privilege, work product protections are not necessarily waived through disclosure to a third party.  *See, e.g.*, *United States v. Sanmina Corp. & Subsidiaries*, 968 F.3d 1107, 1121 (9th Cir. 2020) ("[D]isclosing work product to a third party may waive the protection where 'such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy form the disclosing party's adversary.'").   But, as discussed herein, the work product doctrine does not apply here because Mr. Weisberg's work was not in anticipation of litigation.

*See In re Chevron Corp.*, 633 F.3d 153, 155 (3d Cir. 2011) (concluding that privilege was waived when materials were provided to a court-appointed expert).

### C.  Defendants Rely on a Nonexistent "Categorial" Privilege Designation

As discussed above, courts routinely regard compliance materials as outside the attorney-client privilege.    And this makes sense, since by their nature and purpose, compliance documents are proactive and instructional, rather than specific to particular facts.    Rather than acknowledge generally accepted legal precedent or apply the elements of privilege to the facts here, Defendants contend that the compliance materials are "categorically privileged."    ECF 249 at 1.    They rely on two cases for the proposition that attorney-client privilege and the work product doctrine must apply to "legal training materials that are prepared by lawyers for employees who are likely to be involved in the type of work about which the legal advice is provided."    *Id.* at 13.    Neither of the cases support Defendants' contention.

In *National Security Counselors v. Central Intelligence Agency*, Chief Judge Howell agreed with the CIA's limited redactions to two training materials to withhold legal advice provided by Office of General Counsel attorneys that was directly quoted or summarized.    206 F.Supp.3d 241, 285-86 (D.D.C. 2016).[13]    The court based this conclusion on the facts that (1) the redacted portions were "legal advice and examples provided by [agency] attorneys to assist in the preparation of training materials for CIA employees responsible for processing FOIA requests for agency records," and (2) were not shared outside the agency employees responsible for carrying

---

[13] The court also agreed with privilege redactions to portions of records memorializing legal advice from agency counsel with respect to specific FOIA requests.    *Id.* at 285.    As discussed herein, the compliance materials at issue here were *proactive* and not in response to any specific legal issue, anticipated litigation, or request.

out the record processing tasks described in the materials. *Id.* at 286-87. Here, unlike the CIA's specific training materials in *National Security Counselors*, Mr. Weisberg's ███████████

███████████████████████████████████████████████████████████

████████████████████████████████████████. Ex. C at 5. And the ███████████████████████████████████████. *Coastal States Gas*, 617 F.2d at 863 (materials that were "indexed for future use" were not confidential). On its face, ███████████████████████████████. Nor has Next Jump provided any evidence showing that the compliance materials at issue were kept confidential within any particular subset of employees. *National Security Counselors*, 206 F. Supp.3d 241, 286-87 (citing *Coastal States Gas*, 617 F.2d 854, 863 (reasoning that memoranda were not privileged where the documents were broadly circulated)).

In *Valassis Communications, Inc. v. News Corporation*, 2018 WL 4489285 (S.D.N.Y. Sept. 19, 2018), the court examined materials *in camera* and issued summary determinations about privilege in a written order. For a category designated "training and policy materials"—which both parties had agreed could potentially contain privileged materials—the court concluded that the documents submitted for review in that category contained "confidential legal advice concerning marketing tactics to . . . employees who are in a position to act on the information." 2018 WL 4489285, at *3. Mr. Weisberg's compliance materials do not contain ██████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████.

### D. The Work Product Doctrine Does Not Apply Because the Compliance Materials Were Not Prepared in Anticipation of Litigation

Defendants aver that ███████████████████ are covered by the work product doctrine.    ECF 249 at 18.    But the work product doctrine only applies where the materials were prepared or obtained because of the prospect of litigation.    *Deloitte*, 610 F.3d at 137.    Defendants attempt to meet this requirement with the general contention that the materials were prepared ██████████████████████████████████████████ ████████████████████████████████████████.”    ECF 249 at 18. This would mean that all potential government contractors—and businesses otherwise subject to any kind of government regulation or investigation—face the prospect of litigation *all the time*. The D.C. Circuit has rejected this type of overbroad reading of the work product exemption. *Senate of P.R. v. Department of Justice*, 823 F.2d 574, 587 (D.C. Cir. 1987) (“[I]f the agency were allowed to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated.”); *see also Judicial Watch, Inc. v. U.S. Dept. of Homeland Sec.*, 926 F. Supp.2d 121, 143 (D.D.C. 2013) (memorandum conveying agency policies and instructions was not prepared in anticipation of litigation); *American Immigration Council v. U. S. Dept. of Homeland Sec.*, 905 F.Supp.2d 206, 222 (D.D.C. 2012) (training materials were not prepared in anticipation of litigation where the attorneys giving the training were not worried about litigation from any particular transaction and were not sifting through facts, preparing legal theories, or planning strategy for a case).

### E.  Defendants' Opposition to the Government's Motion *In Limine* Regarding the Weisberg Documents, Apple Documents, and KPMG Documents is Largely Moot

Defendants contend that the Court should deny the government's motion to admit evidence pursuant to Federal Rule of Evidence 902, which allows admission of business records that have been authenticated and certified as such by a records custodian.    ECF 249 at 21.    The government's motion was filed out of an abundance of caution, since Federal Rule of Evidence 902(11) requires advance notice.

With respect to the Weisberg documents, as described above, these documents are business records pursuant to Rule 902.    Alternatively, the government can authenticate the compliance ██████████ through a former Next Jump employee ████████████████████, or, alternatively, through Mr. Weisberg himself.    *See* Ex. D at 5.    The government does not intend to offer the Apple documents into evidence.    Defendants' contention that the government must be sanctioned for producing slip sheets (rather than native files) in the KPMG production is now moot.    The government was first alerted to this inadvertent production error in Defendants' filing on July 30, 2025.    At no point prior to that filing did Defendants even attempt to notify the government of the error, instead choosing to color the inadvertent omission as somehow nefarious.    On August 1, 2025, the government corrected the inadvertent production error by producing the missing materials to Defendants.    Defendants apparently have no issue with the motion *in limine* as it relates to documents obtained from the U.S. Navy.    ECF 249 at 21 n.6.

### F.  None of the Other Relief Defendants Seek is Justified

#### 1.  *An evidentiary hearing is not required*

Defendants contend that an evidentiary hearing must be held to "determine the extent of the taint from the government's action, and concomitant sanction, but also to determine what

exactly happened during the Weisberg interview." ECF 249 at 7. As an initial matter, there are no facts in dispute to hear evidence about. The government has provided all necessary information to Defendants. The privilege analysis above is based largely on specific facts within the documents Defendants attached as support for their filing. When those documents are looked at in their entirety, rather than through piecemeal quotations cited to in Defendants' brief, it is clear that no evidentiary hearing is required.

*First*, there are no facts showing that the government acted with intentional disregard for the attorney-client privilege, as would be required for any remedy other than suppression of relevant evidence. *See, e.g.*, *United States v. Squillacote*, 221 F.3d 542, 560 (4th Cir. 2000) (citing cases). Even if the Court were to conclude that there were potentially-privileged portions within the compliance materials, limited suppression is the appropriate remedy.[14] *See United States v. Moscony*, 927 F.2d 742, 753 (3d Cir. 1991); *United States v. Segal*, 313 F. Supp.2d 774 (N.D. Ill. 2004) (explaining that because the attorney-client privilege is an evidentiary privilege, not a constitutional right, suppression of the evidence at issue is the appropriate remedy); *see also* ECF 249 at 23 (citing *United States v. SDI Future Health, Inc.*, 464 F. Supp. 2d 1027, 1047 (D. Nev. 2006) ("The general remedy for violation of the attorney-client privilege is to suppress introduction of the privileged information at trial.")).

---

[14] The attorney-client privilege is an evidentiary privilege, not a constitutional right. Generally, courts do not apply constitutional principles—such as derivative use from *Kastigar v. United States*, 406 U.S. 441, 460-62 (1972), or "fruit of the poisonous tree" from *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)—in the context of evidentiary privileges. *See, e.g.*, *Trammel v. United States*, 445 U.S. 40, 51 (1980) (a testimonial privilege must be balanced against "the need for probative evidence in the administration of criminal justice"); *United States v. Warshak*, 631 F.3d 266, 294 (6th Cir. 2010); *Nickel v. Hannigan*, 97 F.3d 403, 409 (10th Cir. 1996) (declining to apply the fruit of the poisonous tree doctrine to a possible breach of attorney-client privilege).

*Second*, there was no misconduct here.    Government counsel followed proper Department of Justice channels before obtaining any materials or interviewing Mr. Weisberg. [15]    The government relied on a significant volume of precedent in concluding that the compliance materials were not privileged.    Mr. Weisberg was free to decline to give any information he thought might be privileged.    *Rogers*, 751 F.2d at 1080 (finding no misconduct where an agent employed no subterfuge to deprive attorney of the opportunity to decline to answer because of his ethical duty of confidentiality).    But he did not decline.    In fact, it was he who volunteered that he had relevant, non-privileged information for the government in the first place.    Mr. Weisberg was comfortable that his compliance work was not privileged and would have gained nothing by knowingly breaching a privilege with Next Jump had one existed.    The law agrees with him.

### 2. No suppression of evidence is warranted

At this time, the government does not intend to call Mr. Weisberg to testify or offer the ██████████████ into evidence.    That leaves the ████████████ which show that ██████ ████████████████████████████████████████████████████████████ ████████████████████████████████ is not privileged, and no relief is warranted.

### 3. Next Jump has not put forth any basis to further evade production of the information sought by the trial subpoena

Defendants argue that the Next Jump trial subpoena must be quashed because it seeks privileged attorney-client communications.    ECF 249 at 22.    First, this is not the case.    Second,

---

[15] Even if that were not the case, it would not be grounds for any of the relief Defendants seek. *See* Justice Manual 1-1.200 ("The Justice Manual provides internal DOJ guidance.  It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at laws by any party in any matter, civil or criminal.").

even if it were, the subpoena seeks other items—such as recordings of weekly meetings, and logs of attendance at compliance trainings—that are plainly not communications with any attorney that could fall within the privilege.    The materials sought by the trial subpoena are no fishing expedition.    They have been previously sought, and Next Jump did not produce them or identify any such material as being privileged.    The subpoenaed materials go directly to show Defendants' knowledge about the laws governing their contacts and conduct with government officials. Defendants intend to raise a "good faith" defense and present evidence that they relied on Admiral Burke to know the contracting rules.    *See* ECF 210, 251.    The information within the trial subpoena seeks records showing, among other things, Defendants' level of knowledge about government contracting laws.    Specifically, the records sought include ███████████████████ ██████████████████████████████████████████.    Based on the recollection of ████████████████████████████████████████████████.    Ex. D at

5.    Next Jump is out of reasons not to produce these inculpatory materials to the government and should have done so months ago.[16]

**CONCLUSION**

For the reasons set forth above, the government respectfully requests that Defendants' and Next Jump's motion be denied in its entirety.

---

[16] On August 7, 2025, Defendants filed a supplemental motion, ECF 260, suggesting that Mr. Weisberg had a conflict in his representation of a witness who had prior business interactions with Next Jump because of Mr. Weisburg's alleged representation of Next Jump.    Any alleged ethical violation is not only irrelevant to the Court's present inquiry but also is non-existent.    As set forth here, Mr. Weisberg never represented Next Jump and did not have an attorney-client relationship with Next Jump.    There is no conflict.    The fact that Mr. Weisburg, an experienced attorney, did not feel compelled to raise any conflict further underscores that Mr. Weisburg does not believe he ever had an attorney-client relationship with Next Jump.

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By        <u>      /s/                         </u>
Rebecca G. Ross (NY Bar No. 5590666)
Brian P. Kelly (DC Bar No. 983689)
Joshua S. Rothstein (NY Bar. No. 4453759)
Sarah Santiago (GA Bar No. 724304)
Sarah Ranney (NY Bar No. 5050919)
Assistant United States Attorneys
601 D Street NW
Washington, DC 20530
Office: (202) 252-4490