**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No. 24-CR-265 (2)(3) (TNM)** |
| **v.** | : | |
| | : | |
| **YONGCHUL "CHARLIE" KIM, and** | : | |
| **MEGHAN MESSENGER,** | : | |
| | : | |
| **Defendants.** | : | |

### UNITED STATES' RESPONSE TO NEXT JUMP'S MOTION TO INTERVENE

Next Jump, Inc. has moved to intervene in the criminal prosecution of its co-Chief Executive Officers, Defendants Yongchul "Charlie" Kim and Meghan Messenger ("Defendants"). The government does not oppose Next Jump's motion. Rather, for several reasons, the government agrees that going forward, Next Jump should be under the direct authority of this Court.

*First*, the government has recently served three trial subpoenas on Next Jump. The government has engaged with Next Jump's recently retained corporate counsel. We understand from those conversations that, most of the responsive documents, primarily related to the April 15, 2019, compliance training, will not be produced until the Court rules on Next Jump's and Defendants' pending motion to quash one of the subpoenas. This means that if the Court agrees that Next Jump's privilege arguments as to the compliance training lack merit, Next Jump will not produce the associated responsive records until the same day as the Government's opening argument.[1]

---

[1] The government notes that many of these records were responsive to previous grand jury subpoenas. Next Jump never produced these documents, identified them in a privilege log, or

*Second*, as discussed below, Next Jump and Defendants have not made—and, given the facts, likely cannot make—specific privilege assertions about the withheld inculpatory materials as required by the applicable law. Next Jump's and Defendants' repeated assertions that a "privileged relationship" existed is not a substitute for meeting the elements of privilege on each particular item under the assertion. Moreover, their recent filing includes what can charitably be described as an incomplete declaration from an employee of Next Jump.

*Third*, while Next Jump's new counsel has signaled that the company will comply with its legal obligations going forward, Next Jump's prior lack of transparency and compliance has prejudiced these proceedings. Because Next Jump's privilege assertions were not made until the government learned of the withheld inculpatory records from a third party, the privilege issue has not been before the Court until now, just days before Defendants' trial, and further indicate that the requested records are not, in fact, privileged as Defendants and Next Jump are now arguing

## BACKGROUND

The relevant facts are set forth at length in the government's opposition to Next Jump's and Defendants' motion for various relief. ECF 262 at 3-11. In its filing, the government set forth the full history of Next Jump's production failures, including Next Jump's failure to produce records requested by multiple previous grand jury subpoenas, *id.* at 9-10, and explained why—based on the facts and well-established law—the withheld inculpatory materials are not privileged, *id.* at 14-20. In sum: by his own telling and as shown by the circumstances, Mr. Weisburg was not providing legal advice when he did the compliance training, and the training was not

---

even acknowledged their existence.

confidential—rather, it was designed to be given to a large set, if not all, Next Jump employees. *Id.*

Next Jump and Defendants filed a response, which continued to make a blanket assertion of privilege over materials related to Mr. Weisburg.   ECF 270 at 3-7 (arguing that various materials were privileged because they fell within a "privileged relationship").   As an exhibit to the filing, Next Jump and Defendants attached a declaration dated August 14, 2025, by a Next Jump employee (the "Next Jump Declarant") declaring under penalty of perjury that, with respect to the compliance training at issue, "I have reviewed the attendance roster, as well as acknowledgement forms that attendees were supposed to complete and provide to me after the training.   I did not find any record of [Defendants] attending the training or submitting an acknowledgement form."   ECF 270-4 at 2.   Based on information and belief, the Next Jump Declarant failed to acknowledge or alert the Court that he sent around a recording of the training so people—including Defendants—who couldn't attend live could attend it later.   The recording would have included a display of the relevant PowerPoint slide deck.   In other words, the PowerPoint slide deck is relevant and admissible evidence.

On August 12, 2025, the government had a productive call with Next Jump's new counsel. The government asked about the status of Next Jump's compliance with three outstanding trial subpoenas dated July 11, 2025, July 31, 2025, and August 6, 2025, which are attached to this filing as Exhibits A, B, and C, respectively.   Next Jump's counsel indicated that the company is still going through responsive documents and intends to produce some responsive materials on or before Friday.   But records related to the compliance materials, and thus potentially within the privilege issue before the Court, will not be produced until there is a ruling by the Court.

3

The Court has directed the government to respond to Next Jump's motion to intervene by August 15, 2025.

## APPLICABLE LAW

The party seeking to invoke the privilege bears the burden of proving each element of the privilege. *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014). The elements are: (1) a communication, (2) made between privileged persons; (3) in confidence; (4) for the purpose of obtaining or providing legal assistance for the client. *Id.* To show that particular information is privileged, all of the elements must be proven. *In re Kellogg Brown & Root, Inc.*, 796 F.3d 137, 145 (D.C. Cir. 2015).

Where a party withholds production of documentary information on an assertion of attorney-client privilege, it must produce a privilege log with specific entries setting forth the basis for the assertion on each communication. *See, e.g.*, *In re Veiga*, 746 F. Supp.2d 27, 40 (D.C. 2010) (rejecting broad privilege assertions made in a privilege log that did not correlate to specific documents); *Diamond Resorts U.S. Collection Dev., LLC v. U.S.*, 519 F. Supp. 3d 1184 (S.D. Fla. 2021) (citing cases). A proponent of the privilege may not make "blanket" assertions of privilege but rather must identify the specific basis for the assertion of privilege for each withheld item. *See United States v. Moore, Ingram, Johnson & Steele, LLP*, No. 21-10341, 2022 WL 3134374, at *4 (11th Cir. Aug. 5, 2022) ("It is generally agreed that the recipient of a summons properly should appear before the issuing agent and claim privileges on a question-by-question and document-by-document basis.") (citing cases); *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 927 (N.D. Cal. 2023) (concluding that attorneys for a party had committed sanctionable conduct by proceeding with a blanket assertion of privilege that caused

extended delays in production of the materials in question).   Failure to provide a sufficiently-detailed privilege log can be considered a waiver of the privilege.   *See United States v. Fluitt*, 2022 WL 3098734, at *2 (5th Cir. 2022) ("A party asserting that information is privileged must 'provide sufficient information to permit courts and other parties to test the merits of the privilege claim.") (citing *EEOC BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017)).

**ARGUMENT**

**A. Next Jump Has Not Made the Legally Required Document-by-Document Assertion of Privilege**

As discussed at length in the government's filing, Next Jump's and Defendants have not (and cannot) show that the compliance materials and related information Mr. Weisburg provided to the government are privileged.   ECF 262.   Their repeated assertion that the compliance materials were within a "privileged relationship" does not end the inquiry.[2]   Communications within an attorney client relationship can be made in the presence of third parties, and thus not confidential (and not privileged).   *See, e.g.*, *United States v. Evans*, 113 F.3d 1457, 1463 (7th Cir. 1997) (holding that the presence of a friend, along with attorney and client, vitiated the privilege).

---

[2] Next Jump's and Defendants' reliance on *Matter of Lieber*, 442 A.2d 153 (D.C. 1982), is misplaced.   In *Lieber*, an attorney signed up to participate in a pro bono roster and was assigned an inmate to represent in a discrete matter.   Even though the attorney later tried to disclaim that he had represented the inmate, the court concluded that an attorney-client relationship had formed because: (1) the attorney had volunteered to be on the roster, and (2) the court had appointed him to represent the inmate.   This case is inapposite here for several reasons.   *First*, the facts are not analogous because apparently there was not a single identified discrete matter where Weisburg was involved at Next Jump (as opposed to general compliance policies and training), and there is no court appointment.   *Second*, and most importantly, the *Lieber* court did not discern the existence of an attorney-client relationship for the purpose of concluding that all communications between the attorney and his client were necessarily privileged.   Rather, the existence of the relationship meant that the attorney had shirked his duties by entirely failing to communicate with his client at all.   The case has little to no application into the privilege inquiry here, where the proponents must show each of the elements of privilege—not just assert the existence of a relationship.

5

Communications within an attorney client relationship can be made where legal advice was not the primary purpose, and thus not privileged.   *See, e.g.*, *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980).   Professionals like Mr. Weisburg may wear different hats when they deal with clients.   Sometimes they are providing legal advice, and sometimes—like these circumstances—they are not.

Next Jump's and Defendants' recent filing attaches invoices from Mr. Weisburg in instances where they aver that he was providing the company legal advice in mid-2018.   *See* ECF 270-1, 270-2, 270-3.   For several reasons, these do not move the needle.   *First*, just because Mr. Weisburg may have been engaged by Next Jump to provide legal advice on some matters does not mean that everything he ever did for Next Jump or communicated to Next Jump was privileged. *See In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1224 (11th Cir. 1987) (reasoning that communications with an attorney who provides legal advice on tax matters would be privileged, but that same attorney's preparation of an unrelated tax return would not be legal advice for the purposes of privilege); *U.S. Postal Service v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 160-62 (E.D.N.Y. 1994) (explaining that attorney-client privilege attaches only to communications within legal, not professional, services performed by in-house attorneys). *Second*, the attorney-client privilege inquiry is a communication-by-communication inquiry. *See, e.g.*, *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984) (making separate rulings, with distinct privilege analysis, on each alleged confidential communication); *United States v. Moore, Ingram, Johnson & Steele, LLP*, 2022 WL 3134374, at *4 (citing cases).   The law expressly precludes blanket assertions like the one Next Jump and Defendants are attempting to make. *Third*, the exhibits do not appear to be related to the compliance training, as they are dated nine

6

months prior and appear to make no reference to compliance training for contacts with government officials.

Rather than address this failure, Next Jump and Defendants continue to point to the government's actions (receiving the information from Mr. Weisburg, when he volunteered it) as alleged misconduct.    This is a red herring.

**B.  Next Jump's Conduct Has Prejudiced these Proceedings**

The government now finds itself mere days from trial awaiting production of Next Jump records requested years ago via grand jury subpoenas.    If Next Jump had a legal basis for withholding the compliance training or code of ethics (or other related documents potentially within the grand jury and trial subpoenas, such as the training acknowledgment forms and the emails forwarding the training to Defendants) it should have put those records on a privilege log. It did not do this in response to the grand jury subpoenas.    In fact, it appears that Next Jump did not even look in earnest for documents (such as logs of attendance, and emails inviting attendees) related to the compliance training until now.    The government could not file a motion to compel the withheld records because their existence was not made known until Mr. Weisburg's contact with government counsel in June 2025.    Instead, the government served trial subpoenas specifically seeking records showing who attended the training, and whether Defendants got word of its content, which they did, at a minimum, because of the email the Next Jump Declarant circulated regarding the training.

Even now, it is not clear what records may exist.    Next Jump and Defendants submitted a disingenuous—if not misleading—declaration by a Next Jump employee averring that Defendants had not attended the training but omitting any mention of facts indicating that there are likely records showing that Defendants received the training recording (which would display the slides

7

as part of the presentation) and/or slides by email.    These were, again, facts that the government had to learn through other channels—since Next Jump withheld the inculpatory information and, in fact, attempted to mislead the government and the Court to make it seem as though no such records would exist.

Should the motion be granted, with this Court's ability to supervise Next Jump as an intervenor in this criminal case against the Next Jump Chief Executive Officers, the government expects these issues will finally and promptly be resolved, and Next Jump's obligations to produce responsive documents in a timely manner for use at trial will – after years of delay – be satisfied.

**CONCLUSION**

For the reasons set forth above, the government does not oppose Next Jump's intervention in this matter.

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By          /s/
Rebecca G. Ross (NY Bar No. 5590666)
Brian P. Kelly (DC Bar No. 983689)
Joshua S. Rothstein (NY Bar. No. 4453759)
Sarah Santiago (GA Bar No. 724304)
Sarah Ranney (NY Bar No. 5050919)
Assistant United States Attorneys
601 D Street NW
Washington, DC 20530
Office: (202) 252-4490