UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 24-CR-265 (2)(3) (TNM) |
| v. | : | |
| | : | |
| YONGCHUL "CHARLIE" KIM, and MEGHAN MESSENGER, | : | |
| | : | |
| | : | |
| Defendants. | : | |

### UNITED STATES' MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM INADMISSIBLE EVIDENCE AND ARGUMENT ABOUT ATTORNEY INVOLVEMENT

In the opening statement by Defendant Meghan Messenger's counsel, Defendants Yongchul "Charlie" Kim and Meghan Messenger ("Defendants") told the jury that Defendants could not have committed conspiracy or bribery because they acted in good faith. Defendants' recently marked exhibits and statements in opening have revealed that as part of this, they seek to inject into this case selected self-serving communications with attorneys to argue that they "told their lawyers" about their dealings with Co-Conspirator Burke. But rather than asserting a good faith reliance on counsel defense—which would, under the law of this Circuit and others, necessarily waive their privilege over the subject matter of the communications—Defendants are attempting to use attorney-client privilege as both a sword and a shield to inject just enough evidence of attorneys' involvement to insinuate that they acted in good faith to clear their actions with their lawyers, without allowing any exploration of what they actually told their attorneys.

For several reasons, the government requests that the Court exclude all evidence and argument on Defendants' attorney communications. *First*, the assertion that Defendants "told their lawyers" about their dealings with Co-Conspirator Burke is misleading, even on the limited

1

facts available.  *Second*, the law expressly precludes a defendant from using the attorney-client privilege as a sword and a shield, or making selective self-serving disclosures, as Defendants are attempting to do here.  *Third*, injecting the special connotations of Next Jump's attorneys involvement—without showing the jury what was actually communicated—is factually misleading, and risks confusing and misleading the jury on the law.  This evidence and argument is inadmissible under Federal Rule of Evidence 403's prohibition on evidence that is more prejudicial than probative.

As described below, the Defendants previously specifically foresworn—to the government before trial, in asserting privilege over attorney-client communications in their privilege log, and in their litigation related to Mr. Weisberg's consulting services—any waiver of attorney-client privilege in this case.  Assuming the Defendants maintain that position, rather than pause these proceedings for discovery about Defendants' communications with attorneys,[1] the Court should ensure that all references to Defendants involving attorneys be excluded from evidence and argument.  Specifically, the government requests an order that (a) to the extent any communications involving attorneys are admitted into evidence by Defendants,[2] any indication that the individuals are attorneys must be redacted; and (b) Defendants are precluded from eliciting witness testimony or making further argument about the involvement of attorneys.  As further set

---

[1] Such a pause could be substantial not least because, once the privilege is waived, the government would not only need to obtain and review the privileged communications at issue but also speak with the attorneys involved in receiving information and providing any of the legal advice at issue as potential witnesses at trial.

[2] The government submits this motion *in limine* on Defendants' attempted use of attorney communications as both a sword and a shield but reserves the right to object to the exhibits on other grounds.

2

forth below, absent a waiver of privilege (to present the full scope of information disclosed to counsel and the advice provided), such evidence and argument is inadmissible under Fed. R. Evid. 403.

## FACTUAL BACKGROUND

In reciprocal discovery, Defendants produced numerous redacted communications from Next Jump, along with a 33-page log with individual entries asserting privilege over the redactions and materials completely withheld on an assertion of privilege. *See* Joint Privilege Log Charlie Kim/Meghan Messenger, attached as Exhibit A.[3] On August 15, 2025, Defendants provided the government with a copy of their stamped exhibits and exhibit list.

**A. Defendants' stamped exhibits contain attorney communications**

*1. DX 434 (April 9, 2021, email chain)*

Defendants included DX 434, an email chain from April 9, 2021, with the subject line "Dear Investors," forwarded to two individuals with @skadden.com email address. *See* DX 434 (attached as Exhibit 1). The text in the forward says:

---

[3] Because this exhibit includes names and email addresses, a redacted version has been placed on the docket. Similarly, the names of individuals other than Defendants have been redacted from the exhibits. Unredacted versions will be provided to chambers and Defendants' counsel.

3



DX 434, attached hereto as Exhibit B. This document was produced to the government, and marked as an exhibit, without redactions.

   2. *DX 442R (April 14, 2021, email chain)*

In DX 442R, Defendants redacted the body of an email but left the header information showing that it was an exchange with individuals @skadden.com:



DX 442R, attached hereto as Exhibit C. This document was included in Defendants' privilege log on the basis that the redacted portion was "email, requesting legal advice from and providing information necessary to render legal advice to [REDACTED], concerning corporate matters." Ex. A at 22 (referring to line 394, DOJ_Prod_006_Kim-0000014691).

    3. *DX 444R (April 16, 2021, email chain)*

In DX 444R, Defendants again redacted the content of several emails to and from Defendant Kim, but left the @skadden email addresses of the individuals in the exchange—along with their signature block from the law firm:



Exhibit 444R, attached hereto as Exhibit D. This document was included in Defendants' privilege log on the basis that the redacted portion was "[e]mail, requesting legal advice of, providing information necessary to render legal advice to, requesting information necessary to

6

render legal advice, and containing thoughts, impressions, or strategy of ▇▇▇▇▇, concerning intellectual property and corporate matters." Ex. A at 17 (referring to line 311, DOJ_Prod_006_Kim-0000012136).

       *4. DX 621R (May 17, 2022, email chain)*

DX 621R begins with an email from Co-Conspirator Burke telling Defendants that he has "all [his] ducks in a row now with Navy to have discussions with you on employment." DX 621R, attached hereto as Exhibit E. Burke attached two files, one with ethics advice, and a "Letter of Disqualification." According to the unredacted material, it appears that Defendant Kim forwarded Co-Conspirator Burke's email to outside general counsel ▇▇▇▇▇ with a redacted message, and Shim responded:



This document was included in Defendants' privilege log on the basis that the redacted portion was "[e]mail, requesting and providing legal advice from ▮▮▮, concerning employment matters." Ex. A at 7 (referring to line 116, DOJ_Prod_006_Kim-0000005109).

### B. Defendants' counsel confirmed they are not raising a reliance on counsel defense

After receiving Defendants' exhibits, the government emailed defense counsel and asked "Is Mr. Kim or Ms. Messenger raising an advice of counsel defense?" and "Are you waiving

8

privilege as to communications between Skadden and Next Jump"? Counsel for Defendant Kim responded "No" to each question.

### C. Opening statements by counsel for Defendant Messenger repeatedly asserted that Defendants "told their lawyers" about their plans with Co-Conspirator Burke

In his opening statement, Defendant Messenger's counsel brought up attorney communications several times. At the top of his statement, counsel emphasized that Defendants "told the world" about their dealings with Co-Conspirator Burke, including their investors, their parents, their spouses, and their lawyers. Selected portion of Aug. 18, 2025, PM Trial Transcript 111:16-25, attached hereto as Exhibit F ("And fourth—and this is big—by contrast, [Defendants] told the world. . . . They proudly announced this news about what the four-star told them to over 60 investors, many of whom are highly sophisticated . . . They told their employees . . . They told their parents. They told their spouses. They told their lawyers."). Then, with respect to an April 9, 2021, videoconference with Co-Conspirator Burke and others from the Navy, counsel described that:

> Now, did Meghan and Charlie—how did they respond after this call ended? Did they keep it a secret like a criminal would? The exact opposite. They told over 90 people about what happened on that videoconference. In exactly those words, in writing, they told their parents. They told their spouses. They told their employees. They told lawyers. They told over 60 investors in writing by email. And you will see that email.

Ex. F 119:21-120:3.

Then again, when describing the evidence about the May 2022 timeframe and Co-Conspirator Burke's retirement paperwork with the Navy, counsel told the jury that "the evidence will show that [Defendant Kim] sent it to a lawyer to review." Ex. F at 129:22-25. At this point, the government objected on the basis that Defendants had confirmed that they were not raising a reliance on counsel defense, and counsel's remarks raised an impermissible impression to the jury

9

that they were. The Court overruled the government's objection at that juncture but agreed that it could be taken up in a larger sense. Ex. F 130:5-24 ("I'm overruling the objection for now. We can deal with this bigger issue later.").

The government files this motion *in limine* to deal with the bigger issue and exclude the inadmissible evidence and argument Defendants intend to inject into this case.

### APPLICABLE LAW

#### A. Advice of counsel defense

A defendant's good faith reliance on advice of counsel may establish a defense to a specific intent crime. *United States v. DeFries*, 129 F.3d 1293, 1308 (D.C. Cir. 1997). In order to assert an advice of counsel defense, a defendant must introduce evidence showing "'(1) he made full disclosure of all material facts to his attorney before receiving the advice at issue,' and '(2) he relied in good faith on the counsel's advice that his course of conduct was legal.'" *United States v. Gray-Burriss*, 920 F.3d 61, 66 (D.C. Cir. 2019) (quoting *DeFries*, 129 F.3d at 1309); *see also United States v. West*, 392 F.3d 450, 457 (D.C. Cir. 2004) ("A defendant may avail himself of an advice of counsel defense only where he makes a complete disclosure to counsel, seeks advice as to the legality of the contemplated action, is advised that the action is legal, and relies on that advice in good faith.").

#### B. Implied waiver of attorney-client privilege

The attorney-client privilege cannot at once be used as a shield and a sword. *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). That is, a defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes while not disclosing others. *Id.* Raising a reliance defense necessarily waives attorney-client privilege over the subject matter of the defense. *United States v. Naegele*, 468 F.

10

Supp. 2d 165, 174 n.8 (D.D.C. 2007); *United States v. White*, 887 F.2d 267, 270 (D.C. Cir. 1989) (observing that reliance on an advice of counsel defense waives the attorney-client privilege, but concluding that a co-defendant's inserting the issue did not implicitly waive for the defendant holding the privilege); *United States v. Exxon Corp.*, 94 F.R.D. 246, 249 (D.D.C. 1981) (injecting claim of good faith reliance implicitly waived attorney-client privilege) (citing cases). Disclosure of any significant portion of a communication waives the privilege for the entire communication. *In re Sealed Case*, 676 F.2d 793, 825 (D.C. Cir. 1982).

Raising a good faith reliance defense entitles the opposing party to learn the basis for the purported advice of counsel. *Naegele*, 468 F. Supp. 2d at 174 n.8; *see, e.g.*, *In re Broadcom Corp. Sec. Litig.*, No. SA CV 01275GLTMLGX, 2005 WL 1403516, at *2 (C.D. Cal. Feb. 10, 2005) ("This proposed testimony unequivocally puts in issue reliance upon counsel as a defense-reliance on the fact counsel came to the conclusion everything was legal and didn't warn defendants of a problem. Rather than simply deny scienter, defendants assert good faith based on an expectation the lawyers would tell them if anything illegal was happening. Defendants have injected an issue that requires examination of the attorneys' communications with defendants to see if defendants are corroborated.").

### ARGUMENT

#### A. Counsel's misleading assertions in opening that Defendants "told their lawyers" are not based in fact

In opening statements, Defendant Messenger's counsel twice asserted that Defendants "told their lawyers" about their communication with Co-Conspirator Burke, and that the evidence would bear that out. *See* Ex. F 111:16-25, 119:21-120:3. Specifically, counsel told the jury that after the April 2021 videoconference (on April 8, 2019) with Co-Conspirator Burke, Defendants

told several groups, including their lawyers. But the facts don't necessarily bear this out. DX 434, an email chain from April 9, refers to the two Skadden attorneys as "partners"—that is, ostensibly partners in Next Jump. These same two Skadden attorneys are included in the privilege log as giving legal advice to Next Jump, but the message to them in DX 434 is not redacted, ostensibly because Defendant was forwarding the information to the two in their capacity as Next Jump partners. But counsel didn't tell the jury Defendants forwarded information to "partners," he specifically said "lawyers." *See* Ex. F 111:16-25, 119:21-120:3. DX 444R, an email chain from April 14, 2021, has a redacted back and forth with attorneys from Skadden. But Defendants' privilege log lists the redaction for DX 444R as relating to "intellectual property and corporate matters." Ex. F at 17. Using this exhibit to tell the jury that Defendants "told their lawyers" about their plans with Co-Conspirator Burke is misleading, given their own assertion that the email chain related to intellectual property and corporate matters.

Counsel is able to draw these, and potentially other, misleading implications for the jury because the information that would reveal the substance of the communications is redacted or withheld by Defendants on an assertion of privilege. As discussed below, this flouts the law.

**B. Defendants are attempting to use their misleading exhibits and arguments to flout the law on attorney-client privilege**

Contrary to well-settled law, Defendants are trying to use the attorney-client privilege as both a sword and a shield. *Bilzerian*, 926 F.2d 1285, 1292. To see the swords and shields in the Defendants'[4] hands, the Court need look no further than the redacted defense exhibits. In

---

[4] As this Court has noted, Next Jump as an entity has privilege distinct from Defendants. The authority to assert and waive a corporation's privileges "rests with the corporation's management and is normally exercised by its officers and directors. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985). Defendants are co-Chief Executive Officers of Next Jump. Defendants—not Next Jump—produced the Next Jump records at issue, and provided the

DX 444R, first email in the April 2021 chain is from Defendant Kim to investors, including description of a conversation with Co-Conspirator Burke where he purportedly agreed to be an "ambassador/custodian." Ex. D. The email chain includes a back and forth between Defendant Kim and an attorney at Skadden. The signature blocks are email addresses are not redacted, but the text of the back and forth is. Other than trying to argue or imply (as they did in opening) that Defendants sought and received legal advice on their contacts with Admiral Burke, what other purpose is there for offering into evidence this redacted email chain with multiple attorneys, during the time period the conspiracy is alleged to have begun?

This sword and shield is problematic in the exhibits, but even more so in testimony. If Defendant Kim takes the stand and tells the jury—as counsel did—that he "told his lawyers" about his plans with Co-Conspirator Burke, under Defendants' strategy, the government would be precluded, by the very privilege Defendants claim in their redactions and withheld communications, from asking questions about what exactly Defendant conveyed to his attorneys and, more specifically, whether he conveyed that he intended to offer Co-Conspirator Burke a $500,000 job with equity in Next Jump. This is precisely why, if Defendant were to testify that he had told his lawyers about the job offer, the law dictates that he would make an implied waiver of privilege over communications on that subject matter so that the government could put facts before the jury about what information Defendant gave his lawyers. *Naegele*, 468 F. Supp. 2d at 174 n.8.

---

33-page log asserting privilege over select communications. *See* Ex. A. And Defendants have now told the jury that, in their role as co-CEOs, they "told their lawyers" (that is, Next Jump's lawyers) about Co-Conspirator Burke. It bears noting that at the time Defendants produced the privilege log, Next Jump was represented by the same counsel who now represents Defendant Messenger and gave the opening statement at trial.

Impermissibly attempting to use the attorney-client privilege as a sword and a shield is not the only way Defendants are flouting the law.  *First*, in order to raise a reliance on counsel defense, Defendants would need to show that they had made a full disclosure to their attorneys in order to seek advice.  *United States v. Gray-Burriss*, 920 F.3d at 66.  But they have not made that disclosure.  Instead, they want to offer redacted exhibits into evidence and withhold whole email chains on assertions of privilege.

*Second*, with respect to the redacted email chains (DX 442R, DX 444R, and DX 621R), Defendants are selectively redacting only a part of the communication—that is, they are showing part of the information sent to the attorney (in the forwarded emails) but not all of it.  The law does not permit this type of selective disclosure of a defendant's communications with his attorney.  *Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes."); *see also In re Grand Jury Proceedings*, 219 F.3d 175, 185 (2d Cir. 2000).

*Third*, if Defendants now change their position and want to put these communications at issue and rely on them as evidence that they "told their lawyers" about their dealings with Co-Conspirator Burke and thus acted in good faith, as noted above, the law says that they would thereby be making an implied waiver of their privilege on the subject matter of these communications.  *Naegele*, 468 F. Supp. 2d at 174 n.8.  That would mean that Defendants must provide not only unredacted versions of these documents to the government, but they must also produce any attorney communications on the same subject matter and—if they testify—be cross examined on the specifics of their discussions with counsel.  To be clear, the government is not asking for that.  Rather, if Defendants are not raising a reliance on counsel defense—as they say

they are not—the government is asking that the Court exclude all reference to these individuals being attorneys.

### C. Without a reliance on counsel defense, the attorney communications in Defendants' exhibits have little or no relevance, but are misleading and confusing

As discussed above, Defendants' use of the evidence to argue that Defendants "told their lawyers" about communications with Co-Conspirator Burke is factually misleading. That is because – absent a waiver of privilege, full discovery of the issue and opportunity to present all evidence both about information provided to counsel as well as counsel's advice – the record does not establish that Defendants even remotely meet the elements of an advice of counsel defense, including whether each defendant "made full disclosure of all material facts to his attorney before receiving the advice at issue," nor the specifics of that advice. *Gray-Burriss*, 920 F.3d at 66. Indeed, the exhibits the defense identified are redacted, the defense acknowledged withhold materials on the basis of privilege, and the record is barren of what Defendants told their counsel.

Such incomplete evidence—that does not even purport to meet the elements of the advice-of-counsel defense—necessarily poses a substantial "danger of one or more of the following: unfair prejudice, confusing the issues, [and] misleading the jury." Therefore, the evidence and argument must be excluded under Federal Rule of Evidence 403.

In addition to being incomplete, Defendants' strategy risks misleading and confusing the jury in other ways—including into thinking that they must consider the involvement of attorneys and whether Defendants relied on the advice of counsel. The law precludes a defendant from being entitled to a reliance on counsel jury instruction unless the evidence shows that she provided full disclosure to her attorney. *Gray-Burriss*, 920 F.3d at 67. With jury instructions on good faith reliance and evidence of what a defendant disclosed, the jury can weigh a defendant's

15

purported good faith. But here, without jury instructions and only a limited (and factually misleading) record of what Defendants disclosed, the risk is too great that the jury will be misled or confused. The evidence of attorney involvement must be excluded. Fed. R. Evid. 403.

If the fact of the emails being forwarded to some additional people is all that matters (because there is no reliance defense), then Defendants should agree to redaction of any indication that those people are attorneys. To be clear, to the extent the communications with counsel are purportedly being introduced to show the Defendants shared information with others, the fact that the persons at issue were "attorneys" is simply irrelevant, and the evidence of sharing with them is merely cumulative of the other evidence in the very email chains that Defendants shared some information with other non-lawyers—and thus is appropriately redacted or excluded under Fed. R. Evid. 403.

## CONCLUSION

The government moves *in limine* to exclude impermissible evidence and argument about attorney involvement with Defendants' plans for the Navy and Co-Conspirator Burke. Specifically, the government requests an order that (a) to the extent any communications involving attorneys are admitted into evidence by Defendants, any indication that the individuals are attorneys must be redacted; and (b) Defendants are precluded from eliciting witness testimony or making further argument about the involvement of attorneys.

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By      /s/
Rebecca G. Ross (NY Bar No. 5590666)

16

                                      Brian P. Kelly (DC Bar No. 983689)
                                      Joshua S. Rothstein (NY Bar. No. 4453759)
                                      Sarah Santiago (GA Bar No. 724304)
                                      Sarah Ranney (NY Bar No. 5050919)
                                      Assistant United States Attorneys
                                      601 D Street NW
                                      Washington, DC 20530
                                      Office: (202) 252-4490