UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>      Plaintiff,<br><br>      v.<br><br>YONGCHUL "CHARLIE" KIM, and<br>MEGHAN MESSENGER,<br><br>      Defendants. | Case No. 1:24-cr-00265-TNM |

**YONGCHUL "CHARLIE" KIM'S AND MEGHAN MESSENGER'S
MOTION TO ADMIT TESTIMONY FROM HERMAN SHELANSKI AND TO COMPEL
THE UNITED STATES NAVY TO AUTHORIZE THE RELEASE OF THE SAME**

## PRELIMINARY STATEMENT

Defendants Charlie Kim and Meghan Messenger, by and through undersigned counsel, respectfully move this Court for an order *in limine* admitting certain testimony from Vice Admiral ("VADM") Herman Shelanski (Ret.) either as (a) lay opinion or (b) expert opinion. In addition, Defendants seek an order compelling the United States Navy to authorize the release of such testimony.

During Defendants' first trial, the Court prohibited Defendants from asking VADM Shelanski certain questions about Navy ethics rules, upholding an objection from the government that such testimony constituted undisclosed expert opinions. In an effort to ensure that such testimony may be admissible in any retrial, Defendants submitted a request to the Navy for the release of expert testimony from VADM Shelanski in connection with Defendants' April 2026 retrial. On January 30, 2026, however, the Navy denied Defendants' request, impeding Defendants' access to critical information from a key defense witness and hindering Defendants' ability to comply with the Court's February 6, 2026 deadline for expert witness notices.[1] Defendants served VADM Shelanski with a subpoena seeking his testimony and now seek an order from the Court compelling the Navy to release the expert testimony.

Whether classified as lay opinion or expert testimony, VADM Shelanski's testimony regarding Navy ethics rules is admissible, and Defendants should be permitted to elicit it at trial. Indeed, VADM Shelanski's testimony is based on his personal knowledge of the relevant rules and experience enforcing them as the Navy's Inspector General ("IG"). *See* Fed. R. Evid. 701. Even if

---

[1]  Defendants also note that they provided the government with an expert notice today regarding an expert who the defense may call regarding the expert's forensic analysis of electronic devices, if the government introduces evidence regarding deletion of information from those devices.

VADM Shelanski's testimony regarding Navy rules is considered expert testimony, it is admissible, given VADM Shelanski's qualifications and background. *See* Fed. R. Evid. 702. For these reasons, the Court should enter an order admitting VADM Shelanski's testimony regarding Navy ethics and conflict of interest rules. Because Defendants cannot obtain this testimony from VADM Shelanski without the Navy's permission, and because the Navy has denied Defendants' request, the Court should compel the Navy to authorize the release of this testimony.

**BACKGROUND**

At Defendants' first trial, the government elicited testimony from multiple lay witnesses regarding technical Navy rules and processes. For instance, over defense counsel's objection, Juliet Beyler testified about "what typically happens when the Navy initiates a contract with a private company." ECF No. 325 (Aug. 19, 2025 PM Trial Tr.) at 64:16-65:8. The government also elicited lay opinion testimony from Ms. Beyler regarding the effect of Navy ethics rules on Adm. Robert Burke, including whether the rules would "have required Admiral Burke to disclose at any point if he was discussing post-government employment." *Id*. at 86:4-87:9. Separately, Rear Admiral Brett Mietus testified, over defense counsel's objection, what Navy "rules say about what are and are not permissible communications" between contractors and Navy officials. Ex. A (Aug. 20, 2025 PM Trial Tr.) at 12:12-19. And FBI Special Agent Sebastian Gardner was asked about the breadth of Department of Defense policy and whether Adm. Burke was bound by Navy ethics rules. ECF No. 335 (Aug. 22, 2025 AM Trial Tr.) at 55:9-12, 89:10-16.

During Defendants' case-in-chief, Defendants attempted to elicit similar testimony from VADM Shelanski regarding Navy ethics and conflict of interest rules. Ex. B (Aug. 27, 2025 PM Trial Tr.) at 73:21-74:3. Specifically, Defendants sought testimony from VADM Shelanski regarding (a) the permissibility of job and contracting discussions and (b) a flag officer's duty to

2

make sure that that ethics and conflicts of interest rules are followed when interacting with private contractors. *See id.* The government objected on the grounds that VADM Shelanski was providing undisclosed expert testimony. *Id*. at 75:23-25. The Court ultimately agreed with the government and prohibited Defendants from asking VADM Shelanski about what an Admiral should or should not do based "on facts that mirror this case." *Id*. at 77:1-10.

Following Defendants' mistrial, the Court set a January 30, 2026 deadline for pretrial motions and expert witness notices in connection with Defendants' April 2026 retrial. In light of the Court's earlier ruling on VADM Shelanski's testimony, Mr. Kim's counsel submitted a request to the Navy on December 23, 2025 for, among other things, the release of expert testimony from VADM Shelanski regarding his knowledge of the Navy's ethics and conflict of interest rules. On December 31, 2025, the Navy—through counsel—indicated that the Navy was not inclined to authorize the release of expert testimony from VADM Shelanski.  On January 15, 2026, Mr. Kim's counsel served a trial subpoena on VADM Shelanski through his counsel. Ex. C.

On January 30, 2026, the Navy sent Mr. Kim's counsel a letter officially denying Mr. Kim's request.[2] In its letter, the Navy summarily explained that Mr. Kim had "not demonstrated exceptional need or unique circumstances, or that the expert testimony" sought from VADM Shelanski was "unavailable from any other source." Ex. D at 3. Separately, the Navy explained that Mr. Kim was not permitted to elicit factual testimony from VADM Shelanski regarding ethics and conflict of interest rules. *Id*. at 3-4. Although VADM Shelanski "worked with ethics rules as the" Inspector General, he "was not the official responsible for the [Navy's] ethics program or guidance." *Id*. Additionally, because VADM Shelanski retired from the Navy in 2018, he would be

---

[2]   Attached hereto as Exhibit D is a copy of the Navy's January 30, 2026 letter, which has been redacted to protect information that might reveal Defendants' trial strategy. Upon request, Defendants can provide the Court with an unredacted copy of the letter for inspection *in camera*.

unable to speak to the "rules that were in place in 2021." *Id*. at 4. Finally, the Navy explained that "there [wa]s too much potential for VADM Shelanski to provide speculative, inaccurate information that would mislead the jury or veer into" areas that are precluded under the Navy's *Touhy* regulations (*e.g.*, ultimate issue testimony). *Id*.

Contemporaneously with this motion, Defendants served the government with expert disclosures for VADM Shelanski. Ex. E.

## ARGUMENT

### I.    THE COURT SHOULD ADMIT VADM SHELANSKI'S TESTIMONY UNDER RULE 701 OR 702.

As described in the expert disclosures, Defendants anticipate that VADM Shelanski will opine on Navy ethics and conflict of interest rules governing contracting and post-retirement employment discussions, including their scope and applicability (or not) to Navy and private-sector personnel. VADM Shelanski is expected to testify that, in light of the applicable rules and training that flag officers receive, flag officers, such as Adm. Burke, are expected to know the rules and make sure they are followed during contracting and post-retirement employment discussions with private contractors. In particular, VADM Shelanski is expected to testify that a flag officer, not a contractor, is responsible for knowing and enforcing Navy ethics and conflict of interest rules. To this end, Defendants expect VADM Shelanski to testify that, in light of the applicable rules and training that flag officers receive, flag officers, such as Adm. Burke, would know when to recuse themselves during employment discussions with contractors. VADM Shelanski is expected to testify that contractors typically do not receive the same kind of training as flag officers and thus would not have the same knowledge. VADM Shelanski is also expected to testify that internal Navy rules do not apply to private parties and, relatedly, that any rules concerning contractor-officer contact during a contracting action do not bind the private party. Defendants

4

further expect VADM Shelanski to testify that he is aware of scenarios involving concurrent job and contracting discussions as the Navy's Inspector General and that, in some instances, a flag officer may have violated Navy ethics rules without intending to trade a contract for a job.

VADM Shelanski's expected testimony constitutes lay opinion under Federal Rule of Evidence 701. Such testimony is admissible under Rule 701 because it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. VADM Shelanski's testimony is not based on "specialized knowledge" within the meaning of Rule 702; rather, it is based on information VADM Shelanski learned firsthand during his tenure as a Navy flag officer and the Navy's IG, where he "was in charge of investigating any type of ethical" and conflict of interest "violation[] in the Navy." ECF No. B (Aug. 27, 2025 PM Trial Tr.) at 71:19-20,72:19-20, 77:18-23; *see United States v. Farrell*, 921 F.3d 116, 144–45 (4th Cir. 2019) ("Farrell contests the trial court's admission of lawyer Brown's opinion that an attorney communicating with a represented party or witness . . . contravenes legal ethics rules. Put succinctly, the court did not err in admitting this testimony because it was based on personal knowledge and on Brown's experience as a lawyer."); *United States v. Ruzicka*, No. CR 16-246 (JRT/FLN), 2018 WL 385422, at *11 (D. Minn. Jan. 11, 2018) ("The Court will therefore deny Taylor's motion to exclude lay opinion testimony about business ethics or the legality or propriety of business relationships, assuming proper foundation is laid."); *Wilgenbusch v. Fryer-Knowles, Inc.*, No. 19-CV-05620-JST, 2019 WL 13201904, at *3 (N.D. Cal. Nov. 19, 2019) ("Ay need not be qualified as an expert witness under Federal Rule of Evidence 702 to provide competent evidence as to his own experience working on Naval ships and contracting with the Navy."). Or to the extent it the Court finds it *is* based on

specialized knowledge, it is no different than the knowledge that informed the basis for Ms. Beyler's and Adm. Mietus's opinion testimony insofar as all three witnesses derived their knowledge from their day-to-day responsibilities in the Navy, and the Court should treat VADM Shelanski's testimony consistent with Ms. Beyler's and Adm. Mietus's testimony.

VADM Shelanski's testimony will also help the jury understand issues that are critical to Defendants' core defense that they lacked corrupt intent. Testimony showing that a flag officer like Adm. Burke would have been more knowledgeable about and principally responsible for making sure Navy ethics rules were followed in his encounters with contractors like Defendants supports Defendants' position that they reasonably relied on Adm. Burke to follow and enforce the rules; indeed, Defendants knew well Adm. Burke's long history and senior position in the Navy. In addition, admitting VADM Shelanski's testimony under Rule 701 would merely permit Defendants to examine VADM Shelanski in a manner similar to how the government examined multiple lay witnesses. *See, e.g.*, Ex. A (Aug. 20, 2025 PM Trial Tr.) at 12:12-19 (Brett Mietus) (overruling defense counsel's objection to the question, "what do those rules say about what are and are not permissible communications?"), 13:12-20 (asking Mietus to describe "regulations" covering "what a Navy official should do if they engage in job discussions with a contractor or a potential contractor"); ECF No. 325 (Aug. 19, 2025 PM Trial Tr.) at 86:4-87:9 (Juliet Beyler) (asking Beyler whether rules would "have required Admiral Burke to disclose at any point if he was discussing post-government employment").

In the alternative, VADM Shelanski's testimony would also be admissible under Rule 702. Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if it is more probable than not that "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to

understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

VADM Shelanski is clearly qualified to testify about Navy ethics and conflict of interest rules. Indeed, he held a variety of roles over his more-than-38-year career in the Navy. Ex. B (Aug. 27, 2025 PM Trial Tr.) at 68:20-69:5. In his final tour, VADM Shelanski served as the Navy's IG, where he "investigat[ed] and inspect[ed]" Navy personnel and supervised hundreds of investigations. *Id*. at 70:24-71:1, 72:8-10. Simply put, VADM Shelanski's testimony will be based on information that is squarely within his IG ambit, which covered "any type of ethical" and conflict of interest "violation[]" in the Navy." *Id*. at 71:14-20; *see Bunting v. D.C. CVS Pharmacy, LLC*, No. 22-CV-766, 2024 WL 474159, at *2 (D.D.C. Feb. 7, 2024) ("[T]he expert's background must match the subject matter of the expert's testimony."). Indeed, he is a far superior authority on the Navy's rules than any of the government's witnesses who were permitted to opine on that topic.

For the foregoing reasons, the Court should admit VADM Shelanski's testimony concerning Navy ethics and conflict of interest rules under Rules 701 or 702.

## II.    THE COURT SHOULD COMPEL THE NAVY TO AUTHORIZE THE RELEASE OF EXPERT TESTIMONY FROM VADM SHELANSKI.

Mr. Kim submitted a written *Touhy* request to the Navy to obtain expert testimony from VADM Shelanski. *See* 32 C.F.R. §§ 725.7(a), 725.8(b)(3)(ii). On January 30, 2026, the Navy denied Mr. Kim's request, summarily explaining that Mr. Kim had not demonstrated "exceptional need or unique circumstances, or that the" testimony sought from VADM Shelanski was not available "from any other source." Ex. D at 3. Because VADM Shelanski's testimony is critical, and the Navy's denial was arbitrary and capricious, it should be set aside, and the Navy should be compelled to authorize the release of expert testimony from VADM Shelanski.

7

The Sixth Amendment bars arbitrary deprivations of testimony that is relevant, material, and vital to the defense. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). As a result, while agencies may enact *Touhy* regulations with which litigants must comply, if the request is denied, a "court will then review any unfavorable agency decision under an arbitrary and capricious standard" pursuant to the Administrative Procedure Act. *United States v. Timms*, 844 F. App'x 658, 659 (4th Cir. 2021); *Bloomgarden v. United States Dep't of Just.*, No. CV 15-0298 (ESH), 2016 WL 845299, at *3 n.3 (D.D.C. Mar. 2, 2016) ("When an agency denies an administrative demand made pursuant to these *Touhy* regulations, the denial is reviewable under the APA."). This is no less true of expert testimony. *Spears v. United States*, No. 5:13-CV-47-DAE, 2014 WL 258766, at *4 (W.D. Tex. Jan. 23, 2014) ("[A] court's power to govern the admissibility of expert witnesses cannot be circumscribed by regulation."). Under the APA, "[t]he reviewing court shall—(1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.

The Navy's denial of Mr. Kim's request was arbitrary and capricious. Indeed, the Navy did not substantively explain why it denied Mr. Kim's request. Ex. D at 3. Rather, the Navy regurgitated boilerplate language from its own *Touhy* regulations when concluding that Mr. Kim had not demonstrated "exceptional need or unique circumstances" or that the testimony sought from VADM Shelanski was not available "from any other source." *Compare id.* with 32 C.F.R. § 725.8(b)(3)(ii). In any case, the Navy is wrong: Defendants have satisfied the applicable regulations. As discussed above, VADM Shelanski's testimony goes to the heart of Defendants' good faith defense—namely, it tends to show that Defendants reasonably relied on Adm. Burke, who understood and was responsible for making sure the rules were followed. *Cf. Valenzuela-*

*Bernal*, 458 U.S. at 867 ("[T]his Court found a violation of this [compulsory process] Clause of the Sixth Amendment when the defendant was arbitrarily deprived of 'testimony [that] would have been *relevant* and *material*, and ... *vital* to the defense.'" (citation omitted)). VADM Shelanski is also uniquely situated, given his personal knowledge of Adm. Burke's and Defendants' conduct and intimate familiarity with the Navy's rules and regulations. Ex. B at 81:11-18, 97:18-99:24, 100:8-18.

Defendants have not requested anything novel—a retired flag officer may serve as an expert witness. *See, e.g.*, *Mullinex v. John Crane, Inc.*, No. 4:18-CV-33, 2020 WL 1316657, at *1 (E.D. Va. Feb. 6, 2020) (noting that a party had retained a retired rear admiral to opine on "Navy specifications and standards," among other things). What is more, the Navy evidently permitted government witnesses like Ms. Beyler and Adm. Mietus to opine on Navy rules, and there is no non-arbitrary basis for treating VADM Shelanski differently. *See U.S. ex rel. Roby v. Boeing Co.*, 189 F.R.D. 512, 517–18 (S.D. Ohio 1999) ("The Government, like Defendant, will also be allowed to present its position through its own factual and expert witnesses, even if those witnesses contradict the expected testimony of Mr. Palmer."). And of course, the Navy's denial here has serious implications for Defendants' constitutional rights and ability to mount a defense.

Each purported basis for the Navy's denial is unfounded. There is an "exceptional need," "unique circumstances," and VADM Shelanski's testimony is not available "from any other source." Ex. D at 3. VADM Shelanski is the only available witness, who can testify about the relevant ethical rules and guidelines. The Navy points to no other witness who could provide similar testimony.

Similarly, while VADM Shelanski "was not the official responsible for the [Navy's] ethics program or guidance," the Navy admits he did work with those "ethics rules" as Inspector General.

*Id*. In other words, he has first-hand knowledge of the applicable rules and thus would provide critical testimony.

The Navy goes particularly astray when arguing that his 2018 retirement means he could not speak to "rules that were in place in 2021." *Id*. at 4. There is no information that the relevant rules changed in a material way between 2018 and 2021, and if it were true that the rules *changed* during the period of the alleged conspiracy, that would be highly relevant exculpatory information that the government should disclose, since it would further indicate both the complex nature of the regulatory structure and that it would be entirely reasonable for an outside contractor to rely on a flag officer's contemporaneous knowledge and understanding of those rules.

Finally, the Navy's suggestion that "there is too much potential for VADM Shelanski to provide speculative, inaccurate information that would mislead the jury or veer into testimony that is precluded under DON'S *Touhy* regulations" is a clear attempt to usurp this Court's role in "control[ling] the admission of evidence at trial." *Gulf Grp. Gen. Enters. Co. W.L.L. v. United States*, 98 Fed. Cl. 639, 647 (2011). Federal Rules of Evidence 401, 402, and 403 all govern what evidence is overly speculative, inaccurate, or would mislead the jury. The Court is perfectly capable of ensuring that VADM Shelanski provides non-speculative accurate information that will not mislead the jury and is consistent with the *Touhy* regulations. The Navy cannot augur the specter of such testimony from their own retired Vice Admiral in order to restrict Defendants' rights to put on a defense and the Court's ability to constrain that defense to the scope of the appropriate rules. The Navy's proffered bases for denial are thus entirely arbitrary and capricious, and should be set aside.

10

## CONCLUSION

The Defendants respectfully request that this Court enter an order *in limine* (a) admitting the expected testimony of VADM Shelanski regarding Navy ethics and conflict of interest rules, and (b) compelling the Navy to authorize the release of such testimony.

Respectfully submitted,

DATED February 6, 2026

/s/ William A. Burck
William A. Burck

Reed Brodsky (*pro hac vice*)
Simone Rivera (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Work: (212) 351-5334
Mobile: (917) 574-8200
rbrodsky@gibsondunn.com
srivera@gibsondunn.com

*Counsel for Defendant Meghan Messenger*

William A. Burck (DC Bar No. 979677)
Avi Perry (DC Bar No. 90023480)
John (Fritz) Scanlon (DC Bar No. 983169)
Rachel G. Frank (DC Bar No. 1659649)
Brett Raffish (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 13th Street NW, Suite 600
Washington, D.C. 20004
Tel: (202) 538-8000
Fax: (202) 538-8100
williamburck@quinnemanuel.com
aviperry@quinnemanuel.com
fritzscanlon@quinnemanuel.com
rachelfrank@quinnemanuel.com
brettraffish@quinnemanuel.com

Christopher Clore (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 5th Avenue
New York, NY 10016
Tel: (212) 849-7000
Fax: (212) 849-8100
christopherclore@quinnemanuel.com

*Counsel for Defendant Yongchul "Charlie" Kim*

11

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this date, a copy of the foregoing motion was electronically filed with the Clerk of the U.S. District Court for the District of Columbia via CM/ECF and served to all counsel of record via electronic mail.

*/s/ William A. Burck*
William A. Burck (DC Bar No. 979677)

Dated: February 6, 2026

12