UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

YONGCHUL "CHARLIE" KIM, and
MEGHAN MESSENGER,

Defendants.

Case No. 1:24-cr-00265-TNM

**YONGCHUL "CHARLIE" KIM'S AND MEGHAN MESSENGER'S
MOTION OBJECTING TO THE COURT CALLING DENESE CANEDO AS A WITNESS**

At the October 2025 status conference convened after the hung jury, the Court noted that neither the government nor the defense had called Denese Canedo as a witness. The Court stated that it has "the right to put witnesses on the stand as well," and that the Court was considering whether to call Ms. Canedo to testify at the retrial in April 2026. Oct. 9, 2025 Tr. at 10. At that time, counsel for Meghan Messenger did not express any position. Counsel for Yongchul "Charlie" Kim stated that it may not object to such a determination by the Court, but that counsel would "obviously discuss that" with Mr. Kim. *Id.* at 13.

Defense counsel has now considered the Court's question. Respectfully, the defense objects to the Court calling Ms. Canedo as a witness, if the government decides not to call her.

Calling Ms. Canedo would be outside the scope of Federal Rule of Evidence 614(a) given the severe prejudice that would be inflicted on the defendants and, in any case, the Court should decline to do so based upon the rarity of courts calling their own witnesses at jury trials and to avoid serious and novel constitutional issues. If the Court decides to call Ms. Canedo, the defendants respectfully submit that would be an unconstitutional burden on the defendants' Fifth and Sixth Amendment rights, and would infringe upon the Constitution's separation of powers.

1

### I.    Background Regarding The Court's Authority to Call Witnesses.

Under the common law system, trial courts had considerable latitude to "comment on the evidence." *Quercia v. United States*, 289 U.S. 466, 469 (1933). But this "privilege" "ha[d] its inherent limitations." *Id.* at 470. The trial court was forbidden from "assum[ing] the role of a witness," or "distort[ing] or add[ing]" to the evidence. *Id.* Instead, because of the substantial influence a judge has on the jury, the judge was required to "use great care that an expression of opinion upon the evidence should be so given as not to mislead, and especially that it should not be one-sided." *Id.* (internal quotation marks omitted).

Federal Rule of Evidence 614 was adopted in 1975,[1] and implemented these "well established" authorities, applicable in both civil and criminal cases. Fed. R. Evid. 614, Advisory Committee Note (1975). Rule 614(a) states that the court "may call a witness on its own or at a party's request. Each party is entitled to cross-examine th[at] witness." Relatedly, Rule 614(b) states that a judge "may examine a witness regardless of who calls the witness." The Advisory Committee Notes similarly recognize that this authority was "well established."

While the practices were well established, Rule 614 also maintained prior limits. The Advisory Committee specifically noted with respect to Rule 614(b) that the court's "authority is, of course, abused when the judge abandons his proper role and assumes that of advocate." Fed. R. Evid. 614, Advisory Committee Note (1975); *accord United States v. Liddy*, 509 F.2d 428, 438 (D.C. Cir. 1974) (recognizing that a "federal trial judge has inherent authority . . . to call or recall and question witnesses," but that the court is subject to the "reins of restraint, that he not comport himself in such a way as to 'tilt' or oversteer the jury or control their deliberations"); *United States v. Miller*, 738 F.3d 361, 382 (D.C. Cir. 2013) ("Both the Supreme Court and this court have

---

[1] The Rule was amended for style in 2011.

elaborated on why '[t]his privilege of the judge to comment on the facts has its inherent limitations.'") (citing *Quercia*, 289 U.S. at 470).

For more than 50 years, to the best of counsel's knowledge based on a search of published decisions, no court has called a witness at a criminal jury trial where the government has declined to do so. This practice is consistent with the long-understood limitations on the court's authority under Rule 614, including that the authority is "rarely invoked", if at all, in criminal cases. *E.g.*, *United States v. Ostrer*, 422 F. Supp. 93, 103 n.11 (S.D.N.Y. 1976). Those limitations are grounded in the potential for unfairness created by the court's intervention swaying the jury, and have been further refined by the Supreme Court's significant clarifications of the rights of criminal defendants under the Fifth and Sixth Amendments since the Rule was adopted. Coupled with the Executive Branch's nearly exclusive preeminence in the prosecution of crimes, the acute risks of calling a court witness in a criminal jury trial are too great, at least in the absence of the most compelling particularized showing of why a particular witness must appear to ensure a fair trial.

In this case, these risks are even greater. As the Court recognized on the record, the government has made conscious decisions not to call Ms. Canedo. Burke May 13, 2025 PM Tr. at 71 (Court stating "the government . . . chose not to call" Canedo at Admiral Burke's trial); July 25, 2025 Tr. at 26 (government stating before defendants' first trial "we have not decided whether to call [Canedo] yet or not. Obviously, it depends on how the evidence comes in.").[2] Calling Ms. Canedo would breach the limitations imposed by Rule 614, and the Court should also exercise its discretion to not call her. As the Court assesses its decision about whether to call Ms. Canedo or

---

[2] The government has said again that it is "contemplating" whether to call Ms. Canedo. Oct. 9, 2025 Tr. at 13.

not, the defendants respectfully ask the Court to consider that, to do so in this case as applied to these circumstances, would be unconstitutional.

## II.    The Court Should Not Call Ms. Canedo

### A. The Court Should Recognize the Limitations in Rule 614 and Exercise its Discretion Not to Call Ms. Canedo.

As described above, Rule 614 prohibits tilting or oversteering the jury deliberations and thus prejudicing the defendants. *Liddy*, 509 F.2d at 438. Further, whether to call a court witness under this rule is subject to the Court's discretion. Fed. R. Evid. 614(a) ("The court *may* call a witness on its own") (emphasis added); *Ostrer*, 422 F. Supp. at 103 n.11 (courts "rarely invoke[]" their ability to call witnesses); *United States v. Herring*, 602 F.2d 1220, 1226 (5th Cir. 1979) ("it is within [the court's] discretion to call witnesses" under Rule 614(a)). Given the risks of prejudice here, it would be inconsistent with the rule for the Court to call Ms. Canedo; regardless, this Court should exercise its discretion to not call her to avoid serious constitutional issues.

*First*, calling Ms. Canedo would tilt the jury's views, and there is a high risk that the defendants will suffer prejudice. *United States v. Hickman*, 592 F.3d 931, 933 (6th Cir. 1979) ("The problem is that potential prejudice lurks behind every intrusion into a trial made by a presiding judge. The reason for this is that a trial judge's position before a jury is 'overpowering.'"). Jurors hold this Court in high regard, as the independent guardian of impartiality and fairness in the courtroom, and thus would give greater weight to the testimony of the Court's witness than any called by the government. If the government decides not to call her and the Court does, the jury will likely overlook the serious concerns with Ms. Canedo's credibility, and weigh heavily whatever inculpatory evidence she offers against the defendants. This could not be allayed by an instruction, since the jury will undoubtedly understand that neither the government nor the defense

4

called the witness, and thus draw the logical inference the Court called Ms. Canedo because it must have concluded that she had important testimony for the jury to hear.

The Court calling Ms. Canedo also creates serious dilemmas for the defense during cross-examination. Fearful that the jury will trust Ms. Canedo given that she has been branded with the Court's imprimatur and of being viewed as combative with a witness called by the Court, defense counsel would have to take a much softer approach than the rigorous cross-examination expected of a government witness. The government, on the other hand, will be able to have its cake and eat it too. It has had extensive communication and interaction with Ms. Canedo, and might try to use those interactions to cherry-pick what it considers to be favorable testimony through cross, without saddling its side with her substantial credibility issues.

*Second*, as described in the next section, there are extensive constitutional concerns were the Court to call Ms. Canedo in this context. As described there, calling Ms. Canedo as a court witness in these circumstances would violate the Constitution; and even if the Court concludes calling her would not, the canon of constitutional avoidance would still weigh against such an "adventurous application" of a federal rule of procedure issued pursuant to the Rules Enabling Act. *See Ortiz v. Fireboard Corp.*, 527 U.S. 815, 845 (1999); *e.g. Clark v. Martinez*, 543 U.S. 371, 381 ("one of the canon's chief justifications is that it allows courts to avoid the decision of constitutional questions.").

*Finally*, having reviewed prior applications of Rule 614(a), to the best of counsel's knowledge based on searches of published decisions, while courts have sometimes invoked this rule to call witnesses in criminal cases, those exercises since the 1970s have been exclusively in criminal proceedings *outside the presence of a jury*. *United States v. Flores*, 488 F. App'x 68, 71 (6th Cir. 2012) (affirming the calling of a court witness in a bench trial, and recognizing that

"concerns underlying a trial judge taking an active role are diminished when a jury is not present."); *United States v. Scott*, 529 F.3d 1290 (10th Cir. 2008) (sentencing proceeding); *United States v. Time*, 21 F.3d 635 (5th Cir. 1994) (bench trial); *United States v. Campino*, 890 F.2d 588 (2d Cir. 1989) (suppression hearing).  That lack of precedent in a criminal jury trial should give the Court further pause, and weigh against calling Ms. Canedo.

Thus, the Court should not call Ms. Canedo, if the parties do not.

**B.  Calling Ms. Canedo Would Violate the Defendants' Constitutional Rights**

If the Court concludes it will exercise its discretion and call Ms. Canedo as a court witness where the parties have decided not to do so, the defendants respectfully submit that such an action would be unconstitutional, violating the defendants' Fifth and Sixth Amendment rights and infringing upon the Executive Branch's exclusive authority to prosecute cases.

**a.  Fifth Amendment.**

The Fifth Amendment forbids the federal government from depriving any person of "life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Based on that bedrock constitutional principle, it is "axiomatic and elementary" that "there is a presumption of innocence in favor of the accused." *Coffin v. United States*, 156 U.S. 432, 453 (1895).  The only way a person can be convicted of an offense is if the prosecution proves "beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970); *Francis v. Franklin*, 471 U.S. 307, 313 (1985) (the "bedrock, axiomatic and elementary constitutional principle" is that the state[3] has the "burden of persuasion beyond a reasonable doubt

---

[3]  While *Franklin* arose from a state prosecution and the Fourteenth Amendment's Due Process Clause, the Fifth Amendment's protections equally bind the federal government. *E.g.*, *United States v. Johns*, 336 F. Supp. 2d 411, 420 n.10 (M.D. Pa. 2004) ("The right to proof beyond a reasonable doubt is encompassed within both the Fifth and Fourteenth Amendment Due Process Clauses and applies with equal vitality in both state and federal criminal actions.").

of every essential element of a crime." (internal quotation marks omitted)).  Because this burden rests on the government, not the defendant, the Constitution bars courts from taking action like issuing jury instructions that in any way shifts that burden.  *E.g.*, *Patterson v. New York*, 432 U.S. 197, 215 (1977) ("[A] State must prove every ingredient of an offense beyond a reasonable doubt, and . . . may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense").

It is plain, then, that the Fifth Amendment requires that the government, and no other party, put forth evidence to prove Mr. Kim and Ms. Messenger guilty beyond a reasonable doubt.  *Accord* 1 Criminal Jury Instructions for DC Instruction 2.108 (2026) ("A jury charge should also include a statement indicating that each element of the crimes charged must be proved beyond a reasonable doubt.");  *Payne v. Stansberry*, 760 F.3d 10, 17 (D.C. Cir. 2014) ("erroneous instruction was contrary to the Fifth Amendment guarantee that no one will be deprived of liberty without due process of law and the Sixth Amendment right to trial by jury, which together require a jury to determine a defendant's guilt on every element of the charged crimes beyond a reasonable doubt.").

The government has already failed, once, to prove that Mr. Kim and Ms. Messenger are guilty to a unanimous jury beyond a reasonable doubt.  Calling Ms. Canedo, a fact-percipient witness to certain relevant events relating to Mr. Kim's and Ms. Messenger's communications with Admiral Burke could serve to plug holes in the government's case.  That would violate the defendants' right to a trial in which the burden rests on the government, and only the government, to prove their guilt beyond a reasonable doubt.  *United States v. Karnes*, 531 F.2d 214, 217 (4th Cir. 1976) (constitutional violation when a judge uses his or her authority under Rule 614(a) to "produce evidence, essential to overcome the defendant's presumption of innocence, which the government has declined to present.");  *id.* at 218 (Widener, J., concurring) ("the burden of the

7

production of evidence is on the United States, not upon the defendant, and certainly not upon the court").

### b. Sixth Amendment.

The Sixth Amendment guarantees the accused "the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI; *cf. In re Murchison*, 349 U.S. 133, 136 (1955) (Due Process Clause of the Fifth Amendment also guarantees defendants the right to a "fair trial in a fair tribunal," free of "actual bias"). Calling Ms. Canedo as a Court witness, after the government once again decided not to call her, deprives the defendants of a fair trial.

Because jurors hold this Court in high regard, as the independent guardian of impartiality and fairness in the courtroom, they give far greater weight to the testimony of the Court's witness than any called by the government. *Hickman*, 592 F.2d at 933. And where the government has decided not to call Ms. Canedo because undoubtedly they have serious concerns regarding her credibility and (in Ms. Messenger's counsel's view, her mental health as well), the jury will likely overlook those serious concerns and unfairly balance whatever evidence offered by Ms. Canedo against the defendants. This is true regardless of the instruction that the Court gives to the jury as to the reason for calling the witness or the Court stating that it does not have a view positively or negatively about Ms. Canedo's testimony. *See Karnes*, 531 F.2d at 216–17 (jury may not understand "why the witnesses were called as court witnesses," and may give those witnesses "greater credibility than if they had been called as government witnesses."). On the other side, and as described in more detail above, calling Ms. Canedo as a court witness would create substantial issues for the defense in cross-examination.

In these circumstances, calling Ms. Canedo would violate the defendants' Sixth Amendment rights.

8

### c. Separation of Powers.

Any exercise of an Article III Court's purported authority under the Federal Rules to call a witness in a jury retrial in a hotly disputed case— whom the government affirmatively decides not to call—infringes upon the Executive power under Article II.

The Constitution vests "the 'executive Power'—all of it" in the President, who must "take Care that the Laws be faithfully executed." *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203 (2020) (quoting Art. II, § 1, cl. 1; *id.*, § 3). Article III, Section 1, of the United States Constitution states that "[t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." Article III, Section 2, states that "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States . . . ."

One core executive authority is the power of criminal prosecution. *Trump v. United States*, 603 U.S. 593, 620 (2024) (the Executive Branch has "exclusive authority and absolute discretion to decide which crimes to investigate and prosecute"; "investigation and prosecution of crimes is a quintessentially executive function." (internal quotation marks omitted)); *United States v. Armstrong*, 517 U.S. 456, 467 (1996) ("one of the core powers of the Executive Branch of the Federal Government, [is] the power to prosecute."). That authority to prosecute includes the "core prosecutorial function[s]," like "[d]ecisions regarding witness testimony—which witnesses to call, whether potential witnesses are credible, and how to proceed in the face of credibility questions." *Savage v. Maryland*, 896 F.3d 260, 270 (4th Cir. 2018).

"A prosecutor exercises considerable discretion in matters such as . . . what information will be sought as evidence, which persons should be charged with what offenses, [and] which persons should be utilized as witnesses . . . ." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S.

9

787, 807 (1987).  Absent extremely limited circumstances, such core prosecutorial functions belong to the Executive and not the Article III courts.  *Id.* at 801 (courts may "exercise its inherent power of self-protection only as a last resort" in contempt cases).[4]

Significantly, prosecutors have a unique role and responsibility.  Calling or not calling someone as a witness in a criminal trial involves significant sensitivities and discretion.  Prosecutors balance many factors in determining whether to call someone as a witness at a criminal trial, just as they do in determining whether to prosecute.  Such prosecutorial decisions arise, in part, because they are no ordinary party in a case.  In *Berger v. United States*, 295 U.S. 78, 88 (1935), the Supreme Court declared:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.  As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape [n]or innocence suffer.

With respect to Ms. Canedo, the prosecutors know what she has said and what she has to say regarding this matter better than anyone.  The prosecutors and federal agents have met with and interviewed Ms. Canedo at least four times.  The agents separately interviewed her at least four times.  During each of these at least eight meetings, the prosecutors and agents evaluated her credibility based on all the evidence they collected in the case, including whether she made inconsistent statements, whether she misrepresented facts, her demeanor, her mental health, her

---

[4] In *Young*, Justice Antonin Scalia explained his view that district courts did not have the power to appoint anyone to prosecute someone for criminal contempt of court.  He stated:  "Prosecution of individuals who disregard court orders (except orders necessary to protect the courts' ability to function) is not an exercise of "'[t]he judicial power of the United States.'"  481 U.S. at 815 (citation omitted).  That view has also been endorsed by Justice Neil Gorsuch and Justice Brett Kavanaugh.  *See Donziger v. United States*, 143 S. Ct. 868 (2023) (dissenting from the denial of certiorari).

motives, her interests, and her biases.  The prosecutors must have prepared her for grand jury testimony and then elicited evidence from her before the grand jury.  The prosecutors and agents also communicated with her in writing and verbally repeatedly.  Prosecutors even used information she provided in a warrant application.  With that extensive contact and knowledge in mind, the prosecutors have repeatedly made the decision not to call her as a witness at the trial.  And this is coming from a government that has been indisputably zealous in prosecuting Mr. Kim and Ms. Messenger.

If the government decides once again not to call Ms. Canedo to testify, it would be an unconstitutional arrogation of the Executive's responsibility to prosecute—which includes decisions about which witnesses to call—for the Court to do so instead.  *E.g.*, *United States v. Adams*, 777 F. Supp. 3d 185, 213, 235 (S.D.N.Y. 2025) (judiciary's role is only "to preside over a case" brought by prosecutors, "not to decide whether the defendant should be prosecuted"); *Donziger*, 143 S. Ct. at 870 (Gorsuch, J., dissenting from the denial of certiorari) ("In this country, judges have no more power to initiate a prosecution of those who come before them than prosecutors have to sit in judgment of those they charge").[5]

If the Court believes that the testimony of Ms. Canedo is relevant and important, then the Court should ask the government to call Ms. Canedo as a witness.  *Cf. Young*, 481 U.S. at 801 ("The logic of this rationale is that a court ordinarily should first request the appropriate prosecuting authority to prosecute contempt actions, and should appoint a private prosecutor only if that request is denied.  Such a procedure ensures that the court will exercise its inherent power of self-protection only as a last resort.").  But if the government declines, as it has in two trials last

---

[5] The defendants are not aware of any decisions that have specifically addressed the constitutionality, on separation of powers grounds, of a trial court calling a witness in a criminal case whom the government has decided not to call.

11

year, this Court should reinforce the proper role of the Federal Judiciary under Article III when it comes to the prosecution of charged individuals. By calling Ms. Canedo, it would unconstitutionally expand the judicial direction of a federal court's role at trial. If this Court called Ms. Canedo, it should anticipate that other courts in future years will do the same when the Executive Branch decides not to call other witnesses at trials. As the Supreme Court stated in *Texas v. United States*, this Court should "decline to start the Federal Judiciary down that uncharted path. Our constitutional system of separation of powers 'contemplates a more restricted role for Article III courts.'" 599 U.S. 670, 681 (2023) (citation omitted).

## III.    Conclusion

The Court should not call Denese Canedo as a court witness if the parties do not. The limitations of Rule 614 do not permit it and, in any case, this Court should also exercise its discretion not to do so to avoid any constitutional problem. Finally, the Fifth and Sixth Amendments, and the Executive Branch's exclusive authority to prosecute defendants, do not allow it.

Respectfully submitted,

DATED: February 6, 2026

                                              */s/ Reed Brodsky*
                                              Reed Brodsky

Reed Brodsky (*pro hac vice*)          William A. Burck (DC Bar No.: 979677)
Simone Rivera (*pro hac vice*)         Avi Perry (DC Bar No.: 90023480)
GIBSON, DUNN & CRUTCHER          John (Fritz) Scanlon (DC Bar No.: 983169)
LLP                                              Rachel G. Frank (DC Bar No.: 1659649)
200 Park Avenue                            Brett Raffish (*pro hac vice*)
New York, New York 10166           QUINN EMANUEL URQUHART & SULLIVAN, LLP
Work: (212) 351-5334                    1300 I Street NW, Suite 900
Mobile: (917) 574-8200                 Washington, D.C.  20005
rbrodsky@gibsondunn.com            Tel: (202) 538-8000
srivera@gibsondunn.com              Fax: (202) 538-8100
                                              williamburck@quinnemanuel.com
                                              aviperry@quinnemanuel.com
*Counsel for Defendant Meghan*        fritzscanlon@quinnemanuel.com
*Messenger*                                  rachelfrank@quinnemanuel.com
                                              brettraffish@quinnemanuel.com

                                              Christopher Clore (*pro hac vice*)
                                              QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                              295 5th Avenue
                                              New York, NY 10016
                                              Tel: (212) 849-7000
                                              Fax: (212) 849-8100
                                              christopherclore@quinnemanuel.com

                                              *Counsel for Defendant Yongchul "Charlie" Kim*

13