**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 1:24-cr-00265 (2)(3) (TNM)** |
| | **:** | |
| **YONGCHUL "CHARLIE" KIM and** | **:** | **[UNDER SEAL][1]** |
| **MEGHAN MESSENGER,** | **:** | |
| | **:** | |
| **Defendants.** | **:** | |

### UNITED STATES' OPPOSITION TO DEFENDANTS'
### MOTION *in LIMINE* TO EXCLUDE EVIDENCE

In their Motion *in Limine* to Exclude Evidence, *see* ECF No. 394, the Defendants,

Yongchul "Charlie" Kim and Meghan Messenger, seem to have forgotten, and want this Court to

forget, that they are not the only two involved in the charged conspiracy to commit bribery.  Their

co-conspirator, Robert Burke, was a four-star Navy admiral and the Defendants offered him a job

at their company, Next Jump, in exchange for a contract. The Defendants' position that "procedural

irregularities" and the testimony of Government witnesses Amanda Kraus ("Kraus") and Pamela

Hooker ("Hooker") should be excluded is in direct contravention of firmly established legal

precedent and is rooted in misleading assertions about the evidence and the nature of the charged

conspiracy. As discussed in more detail below, evidence about the "procedural irregularities" is

relevant, focused, and not prejudicial. This Court should deny the Defendant's Motion and allow

testimony about the "procedural irregularities" of Next Jump's 2022 contract.

---

[1] On April 21, 2026, the Government filed this Opposition under seal to oppose the Defendant's
Motion filed under seal. Subsequently, the Defendants alerted the Government they had previously
filed a redacted version of their motion. Thus, the Government believes there is no basis for its
Opposition to have been filed under seal.

## I.  Background

On March 27, 2026, at the Pretrial Conference, this Court excluded certain evidence from trial. *See generally* 03/27/26 Trial Trans. This Court, however, specifically did not exclude evidence relating to "procedural irregularities" in the Navy contracting process for Next Jump's 2022 contract. *Id.* at 11:1-7. The Court indicated that evidence about the "procedural irregularities" had "to be very much focused on that[.]" *Id.* at 11:3-4.

## II.  Argument

The Defendants take issue with the Government's evidence relating to: 1) Burke's active role in ensuring the Navy contracted with Next Jump; 2) the quality of Next Jump's contract proposal; and 3) Next Jump's sole source justification (referred to cumulatively as the "procedural irregularities"). *See* ECF No. 394 at 1-2. They assert that such evidence is 1) irrelevant; and 2) should be excluded pursuant to Rule 403 because it wastes time, causes undue delay, and is prejudicial. *See id.* at 4-7. The Defendants' arguments ignore established legal precedents and exaggerate the nature and presentation of the evidence, and all the ways such evidence can be focused, as this Court indicated it should be. The Government does not intend to run afoul of this Court's prior rulings and can limit and streamline this relevant evidence. Evidence about the "procedural irregularities" is admissible and Kraus's and Hooker's testimony should not be excluded.

### a. Evidence about the "Procedural Irregularities" is Relevant[2]

The Defendants assert that evidence about the "procedural irregularities" is irrelevant because it does not focus on the alleged bribery scheme and the Defendants' state of mind. *Id.* at 4. This views the evidence far too narrowly and is simply incorrect. First, this evidence goes directly to the heart of the alleged bribery scheme because it answers the pivotal question, was there an agreement? *See United States v. Ring*, 706 F.3d 460, 468 (D.C. 2013) (recognizing that bribery "necessitates an *agreement* between the public official and the other party that the official will perform an official act in return for a personal benefit to the official'") (*quoting United States v. Dean*, 629 F.3d 257, 259 (D.C. 2011)) (emphasis in original). The evidence that Burke, a four-star Navy admiral, was taking extraordinary steps to help Next Jump secure a contract is probative of the fact that the Defendants were withholding their bribe—the job at Next Jump—until and unless Burke helped Next Jump obtain the contract the Defendants so desperately wanted. Why else would Burke force his staff to take procedurally incorrect steps, which were far removed from the realm of normal, to ensure the contract was in place? The Defendants have and will presumably continue to argue that Burke took steps unbeknownst to them and the Defendants were too trusting of Burke's advice. *See e.g.*, ECF No. 394 at 4; 08/26/2025 PM Trial Tr. at 112:11-113:15. The Government has a right to present its case and offer evidence that supports an alternative explanation—that the "procedural irregularities," some of which the Defendants knew were irregular, demonstrate Burke's determination to fulfill his end of the existing corrupt agreement. *See* Fed. R. Evid. 401 ("Evidence is relevant if it has *any tendency* to make a fact [of consequence

---

[2] That the Defendants presume to even refer to these as "procedural irregularities" is itself laughable. For example, the Defendants maintain that such "procedural irregularities" include evidence "that Adm. Burke's contact with Defendants and his role in procuring Next Jump's services was unusual." ECF No. 394 at 2. Such evidence could hardly be more intrinsic to the Government's case.

in determining the action] more or less probable than it would be without the evidence.") (*emphasis added*); *see, also*, *United States v. Moore*, 590 F. Supp. 3d 277, 283 (D.D.C. 2022) (noting Rule 401's "liberal relevance standard," and explaining that "[t]he degree of probative value required for evidence to be admissible under Rule 401 is 'very low'" (quoting *United States v. McVeigh*, 153 F.3d 1166, 1190 (10th Cir. 1998))), *United States v. Slatten*, 310 F. Supp. 3d 141, 145 (D.D.C. 2018) ("[E]vidence need not be dispositive of an element of the crime to be relevant, it must merely cross the low threshold prescribed by Rule 401."). In fact, contrary to the Defendants' assertions, "conflicting inferences" do "not detract from the probative value of the evidence itself." *United States v. Rodriguez*, 192 F.3d 946, 950 (10th Cir.1999).

Second, evidence of the "procedural irregularities" goes to Burke's state of mind. No matter how many times the Defendants say that Burke's state of mind is irrelevant, established legal precedent does not bend to their will. The Defendants neglect that Burke is their charged co-conspirator (who has already been found guilty for his role in this conduct) and that evidence of his state of mind is relevant because it helps prove that the charged corrupt bribery agreement existed. *See United States v. McPartland*, 81 F.4th 101, 115 (2d Cir. 2023) ("Evidence of a co-conspirator's state of mind may be relevant to explain how a criminal enterprise developed, to help the jury understand the basis for the coconspirators' relationship of mutual trust, or to complete the story of the crime on trial." (quotation marks and citations omitted)); *United States v. Sans*, 731 F.2d 1521, 1532 (11th Cir. 1984) (overruling defendant's objection that certain evidence admitted at trial was irrelevant because, *inter alia*, the evidence "was relevant to the issue of [the codefendant's] criminal intent regarding the conspiracy[, and [s]ince [the codefendant] was an alleged coconspirator, his state of mind was relevant"). And evidence of the "procedural irregularities" does exactly that. For example, as Hooker testified, because of the "procedural

irregularities," she believed the only reason Next Jump was contracting with Next Jump was because Burke wanted the contract. *See e.g.* 08/26/25 PM Trial Tr. at 19-23. Kraus testified similarly, explaining that although it did not make any sense, "there was a push from leadership that we must do this, and we had to have this training and by a particular date." 08/21/205 AM Trial Tr. at 99:9-13. This is directly relevant to an alleged part of the bribery scheme—Burke agreed to use his official position to steer a contract to Next Jump, ECF No. 1 at ¶ 35a, and took official action to order the contract, ECF No. 1 at ¶ 38.

The Defendants argue that because the circumstances surrounding their 2018 contract were similar, the probative value of the "procedural irregularities" is diminished. *See* ECF No. 394 at 4-5. The Defendants' characterization of the circumstances surrounding the 2018 contract is misleading. The circumstances were different, which further highlights the probative value of the "procedural irregularities." For example, as the Defendants' own exhibits indicate, in 2018, Burke included many other Navy officials in the decision on what the 2018 contract would look like and how it would be implemented. For example, Burke informed the Defendants, while cc'ing six other Navy officials, including at least one lawyer, that the Navy still had "a few items to round out exactly how we would shape our next steps." *See* DEX H. In contrast, in December 2021, there is zero evidence of collaboration between Burke and *any* Navy officials about the work to be performed and the contract's implementation—a fact the Defendants are well aware of as they were the ones dictating the terms of the contract directly to Burke without anyone else from the Navy included in those discussions. *See e.g.*, Ex. 1. (An email from November 17, 2021, the day after Burke visited Next Jump's headquarters in New York City (alone and without telling anyone at the Navy), in which Defendant Kim outlines the timeline of the contract and wrote, "[C]ontract signed before Xmas"); Ex 2 (A December 16, 2021, email chain between just the Defendants and

Burke, in which Defendant Kim proposes the dates of the travel and the training, and, knowing that the training was already a done deal, asks if he can invite a foreign military official). Burke did not let Navy officials "shape" the next steps of the 2022 contract as he did in 2018; he let the Defendants do that, and they were well aware that this was different from the contracting procedure in 2018. As such, evidence of Burke's active role in ensuring the Navy contracted with Next Jump also goes to the Defendants' state of mind and is relevant and admissible.

The Defendants further suggest that there are similarities between the 2018 and 2022 contract because both times the contract required PowerTrain and sole source justification. ECF No. 394 at 5. But the Defendants gloss over the details. In 2018, it was the Navy that guided the contracting process, not the Defendants. In 2021, after recognizing that the training would not be possible on their desired terms, the Defendants recommended to Burke, in a private email, that they use PowerTrain. *See* Ex. 3. As such, the Defendants knew they, not the Navy, were steering the terms of the 2022 contract, and that this was procedurally different than 2018.

And, as the Government witnesses testified, in 2021, they did not believe a sole-source contract was justified. *See* 08/21/25 AM Trial Tr. at 105:15-19 (Kraus testifying that she did not know why the sole source justification was needed other than "there seemed to be a desire from the commander that we have this particular vendor offer the training"), 08/26/25 PM Trial Tr. at 86:4-17 (Hooker testifying that she did not believe the sole-source justification was valid). This is because, unlike in 2018, when Next Jump was part of a pilot program focusing on their specific product (justifying the sole source contract), in 2022, the Navy was already in the process of contracting with Outward Mindset, a program that was providing a less expensive and similar training, had positive reviews, and the contracting officials believed was a better product. *See* 08/21/25 AM Tr. Trans. at 102:2-17 (Kraus testifying that Next Jump's product overlapped with

6

Outward Mindset and that it was not necessary to contract with Next Jump after contracting with Outward Mindset); 08/26/25 PM Trial Tr. at 86:4-17 (Hooker testifying about Outward Mindset and that it was similar to Next Jump). Just because both contracts were sole-sourced does not mean they were similar. In 2018, the sole sourced contract was dictated by the Navy; in 2022, the sole sourced contract was dictated by the Defendants and their corrupt bribery agreement with Burke. Thus, the Defendants' purported similarities are not similar at all.

Furthermore, by the time they and Burke were conspiring to install the 2022 contract, the Defendants knew they should not be dictating the terms of a contract to a Navy Admiral who was not a contracting official. *See e.g.*, Ex. 4 (November 8, 2019, email from Admiral Brett Mietus to the Defendants informing them to "not have contact" with Burke due to "upcoming contracting actions"); 08/25/25 PM Trial Tr. at 76:14-79:13 (Tweed Ross testifying about his conversation with the Defendants, in which he informed them of the proper contracting process, which did not include negotiating a contract with Burke directly). This only further underscores why evidence about the "procedural irregularities" as to the latter contract is probative—not only does it go to Burke's state of mind, but it goes to the Defendants' state of mind.

Evidence of the "procedural irregularities" is relevant and probative of the fact that the Defendants bribed Burke and he had been influenced. Regardless of whether the Defendants were aware of all of the "procedural irregularities" of their 2022 contract, it is clear that the Defendants knew they should not be dictating the terms of a government contract, negotiating those terms directly with Burke, and bypassing Navy contracting officials. Additionally, as discussed above, the Defendants were very much aware of the many ways in which the 2022 contract was procedurally different from the 2018 contract. As such, evidence of the "procedural irregularities" is relevant because it goes to the Defendants' state of mind, Burke's state of mind, and is evidence

that the co-conspirators were determined to fulfill the mandates of their corrupt agreement at any cost.

### b. Evidence about the "Procedural Irregularities" does not Run Afoul of Rule 403

Next, the Defendants argue that pursuant to Rule 403, the "procedural irregularities" should be excluded because it will waste time, cause delay, and is prejudicial. *See* ECF No. 395 at 5-7. Importantly, Federal Rule of Evidence 403 precludes the admission of otherwise relevant and admissible evidence only if "its probative value is *substantially* outweighed by the danger of unfair prejudice . . . ." Fed.R.Evid. 403 (emphasis added). The rule "tilts, as do the rules [of evidence] as a whole, toward the admission of evidence in close cases." *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984). The Rule's definition of unfairly prejudicial evidence does not include incriminating evidence that simply prejudices a defendant's chances of acquittal. Instead, the Supreme Court has described "unfair" prejudice as "speak[ing] to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). "[I]n determining whether the probative value is *substantially* outweighed by the danger of unfair prejudice it is a sound rule that the balance should be struck in favor of admission when the evidence indicates a close relationship to the event charged." *United States v. Clarke*, 24 F.3d 257, 265-66 (D.C. Cir. 1994) (quotations and citations omitted) (emphasis in original). The Defendants' arguments fall well short of the standard imposed by Rule 403. There is no danger of unfair prejudice here.

First, testimony about the "procedural irregularities" does not waste time or cause undue delay. For example, with respect to Burke's active role in ensuring the Navy contract with Next Jump, Hooker testified that in her experience the Commander of NAVEUR had never before

identified a training need. *See* 08/26/2025 PM Trial Tr. at 72:14-16. Kraus also testified that it was "not typical" for the Commander of NAVEUR to make a contract request. 08/21/25 Trial Tr. at 94:22-24. This testimony, which can consist of a one sentence question and one sentence response, does not significantly delay trial. The testimony with respect to the quality of the contracting proposal is similarly as short and streamlined, consisting of just a few questions and short responses to make the relevant point that Navy contracting officials did not believe Next Jump should have been awarded the 2022 contract (and thus, Burke only ordered it to happen because he had been bribed). *See* 08/21/25 Trial Tr. at 98:22-24 (Kraus's one-sentence statement that the proposal lacked "detailed information"); 08/26/2025 PM Trial Tr. at 80:1-81:23), 85:10-11 (Hooker's limited testimony about the contract proposal). The testimony about Next Jump's sole source justification is also limited and focused, and demonstrates the great lengths contracting officials had to go to carry out Burke's command. *See* 08/21/2025 AM Trial Tr. at 105:6-106:3 (Kraus's limited testimony on sole source justification); 08/26/2025 PM Trial Tr. at 85:4-16 (Kraus's limited testimony on sole source justification). Such limited testimony does not run afoul of Rule 403—it is short, concise, and focused.

Second, the Defendants ignore all legal precedent and common sense when they argue that because evidence about the "procedural irregularities" make the Defendants "look foolish," it should be excluded. The contracting proposal has a close relationship to the charged crime; the Defendants had to provide the Navy with a contracting proposal so they could sign a contract and is discussed in many emails inextricably intertwined to the charged conduct. Second, the evidence is not of an infamous or sinister nature – submitting a subpar contracting proposal is not illegal.  It also does not inject something new and prejudicial into the case, such as violence or perversion, which might inflame the jury. Even if the Court were to conclude that evidence about the

9

"procedural irregularities" presented some "unfair prejudice," it still would not "substantially outweigh" the evidence's great probative value.  The balancing between probative and unfairly prejudicial should lean toward inclusion.  *See, e.g., United States v. Naranjo*, 710 F.2d 1465, 1469 (10th Cir. 1983) ("Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing."); *United States v. Morris*, 79 F.3d 409, 412 (5th Cir. 1996) ("Because Rule 403 requires the exclusion of relevant evidence, it is an extraordinary measure that should be used sparingly."); *United States v. Bradley*, 145 F.3d 889, 893 (7th Cir. 1998) (Rule 403 is not a tool designed "to permit the Court to 'even out' the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none."). As such, evidence about the procedural irregularities of the 2022 contract should not be excluded pursuant to Rule 403.

### c.  Testimony from Amanda Kraus and Pamela Hooker should not be Excluded in its Entirety

Lastly, in Defendants' motion, they assert in conclusory fashion that this Court should exclude Kraus's and Hooker's testimony in their entirety. The Government is well aware of the Court's prior rulings regarding the admissibility of the speed with which the 2022 contract with Next Jump was implemented and negative opinions of Next Jump's product and will comply with those rulings. However, as outlined above, Kraus and Hooker provide highly probative evidence about many aspects of the alleged bribery conspiracy. First, Kraus and Hooker provide testimony that goes directly to the Defendants' state of mind. Their testimony will show that even though the Defendants had prior experience as Government contractors, were repeatedly instructed by Navy officials, s*ee e.g*., Ex. 4 (November 8, 2019, email from Admiral Brett Mietus to the Defendants informing them to "not have contact" with Burke due to "upcoming contracting actions"); 08/25/25 PM Trial Tr. at 76:14-79:13 (Tweed Ross testifying about his conversation with the Defendants,

10

in which he informed them of the proper contracting process, which did not include negotiating a contract with Burke directly), and their own Government Ethics Consultant, *see* Ex. 5 (Ethics and Compliance in Government Contracts Presentation), on proper contracting procedures, the Defendants ignored those procedures by contacting Burke directly, sending Burke their contracting proposal and pricing worksheet, and not providing enough information to justify the contract they received.

Second, as described in more detail above, Kraus's and Hooker's testimony goes to Burke's state of mind by demonstrating that Burke was willing to buck convention and ignore proper policies and procedures to ensure Next Jump had a contract. Their testimony provides important context that demonstrates Burke's resolve to accomplish his end of the corrupt agreement so the Defendants would hire him at Next Jump.

Third, Kraus's and Hooker's testimony indicates that they believed they were only contracting with Next Jump because Burke ordered them to put the contract in place. This testimony proves evidence of key elements of the offense—Burke took official action and ordered the contract to happen. *See* ECF No. 1 at ¶ 51. In short, for all the reasons discussed above, there is no legal basis to exclude Kraus's and Hooker's testimony. It is relevant, highly probative, focused, and not substantially outweighed by the danger of wasting time, undue delay, or prejudice.

## III.    Conclusion

This Court should deny the Defendants' Motion and allow limited testimony about the "procedural irregularities" of Next Jump's 2022 contract that they seek to exclude wholesale.

//

//

11

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By        /s/
       Rebecca G. Ross
       Brian P. Kelly
       Assistant United States Attorney
       601 D Street N.W.
       Washington, DC 20530
       Office: (202) 252-4490