# Ethics and Compliance in Government Contracts

Presented by:

William Weisberg Esq.

Law Offices of William Weisberg PLLC

1750 Tysons Blvd., Suite 1500

McLean, VA 22102

(703) 738-0552

william.weisberg@govprocurementlaw.com

www.govprocurementlaw.com

GOVERNMENT
EXHIBIT

150

# Agenda

- Introduction and Background

- Certifications—the basis of most contractor problems

- The three major tools in the government's enforcement arsenal

- Reporting requirements: see something?  Say (or ask) something

- Special compliance topics:

1. Procurement and competitor information

2. Gifts and gratuities and interactions with Government personnel

3. Organizational conflicts of interest ("OCI")

4. Records retention

5. Dealing with small businesses and set-aside contracts

# Introduction and Background

"The Government" is an unusual customer, and government contracts are highly regulated.

Question: What is a "government contract?"

Answer: Any direct sale to a federal, state, or local government entity,

 **OR**

any sale through channels (dealers, distributors, resellers, or OEMs) where the ultimate end-user is a government entity,

**OR**

any sale where government funding is used, in whole or part, to acquire products or services.

*Introduction, continued*

Next Jump is a government contractor, subject to a wide range of government compliance and ethics laws and regulations. Those laws and regulations cover both how Next Jump competes for contracts and how it performs those contracts.

# Certifications To the Government

Next Jump (and Next Jump's employees) make a wide variety of certifications to the government during the procurement process.  Some of these are "express" certifications.  These include:

- Making a statement in a proposal, or in some other communication to the government (for example, a product description in marketing materials or a white paper);

- Completing the System for Award Management ("SAM") filings, a yearly set of representations and certifications Next Jump files with the government;

- "Checking a box" in a government solicitation;

- Making a statement during a verbal presentation, or in a casual conversation; or

- Making any other explicit communication, written or verbal, to the Government or, in some cases, to another contractor.

# *Certifications, continued*

Next Jump also makes **implied certifications:**

- Submitting a proposal to the Government constitutes an implied certification that Next Jump complies with all of the requirements in that procurement (for example, technical or privacy specifications)

- Submitting a proposal is also an implied certification that Next Jump complies with all of the laws and regulations applicable to that procurement (for example, labor laws)

- Providing a product and/or service, and/or submitting an invoice are also both implied certifications of compliance with the terms of the contract and also with all other applicable laws and regulations.

# Certifications: the Trade Agreements Act ( "TAA") example:

Assume that Next Jump is submitting a proposal on a contract that contains the federal TAA, imposing certain country of origin requirements:

- There are several likely places where Next Jump will be required to make an express certification that all products supplied under the contract are, and will continue to be, TAA-compliant.

- Whether or not Next Jump is asked to specifically certify to TAA compliance, submitting the proposal is an "implied certification" of compliance.

- Shipping products is also an implied certification of TAA compliance, as is invoicing the government.

- Next Jump's TAA certification continues for the life of the contract.

# *Certifications, a final note:*

- Certifications have the same legal effect whether Next Jump gives them directly to the government, or provides them to a prime or other higher-tier contractor.

- Certifications can be written, verbal, or implied by conduct.

- Certifications are sometimes called "representations" or "warranties" (but not in a product warranty sense), or given other names. For compliance purposes, they are all certifications.

- If you have any doubt about the accuracy of a Next Jump certification, check with your supervisor or Next Jump's primary outside counsel.

# Government Enforcement Tools

## The Federal False Claims Act ("FCA")

- FCA are civil violations that are usually based on invoices: either overbilling (contracting for 10 seats and billing for 15), or billing on a contract that, "but for" a false certification or other improper conduct, the contractor would not have been awarded. This "but for" makes subsequent invoices FCA violations.

- For example, if a contract has a technical requirement but the software is not compliant, then each invoice is a false claim, because, but for the false compliance certification (whether express **or** implied) the Government would not have awarded the contract and/or paid the invoice.

- FCA penalties can be a **multiple of the total contract value**, even if the Government customer loves the product, and the FCA violation was tied to only one part of a larger contract.

# *Enforcement: The False Claims Act, continued*

- FCA violations can either be "knowing and willful" or made with a "reckless disregard for accuracy."

- For example, a "reckless disregard" violation in the software compliance situation could occur if Next Jump does not verify compliance before submitting a proposal to the Government.  If the product later turns out not to be compliant, there is a FCA violation even if the Next Jump did not intend to falsely certify.

- Violations can result for either express **or** implied certifications.

- The certification must be "material," meaning the Government would not have awarded the contract or paid the invoice if it knew the certification was incorrect. **Next Jump's policy is to treat all certifications as material.**

# Government Enforcement Tools, continued

**The Federal False Statements Act ("FSA")**

- The FSA is a criminal statute.

- Violations are based on lying to or otherwise misleading the Government.

- "Statements" can be written, verbal, or made by conduct in the "context" of the situation, such as misleading the Government by remaining silent in a way that appears to be an answer to a question or otherwise communicates something to the Government.  (Clearly declining to answer a question is not a violation.)

- The FSA has the same "knowing and willful" or "reckless disregard for accuracy" standard as the FCA.

# Enforcement: The False Statements Act, continued

- FSA violations are often triggered by contractor's certifications, either express or implied.

- Invoices, either straight overbilling or invoices based on false certifications, are both false claims and false statements.

- The phrase "it is not the crime but the coverup" refers to FSA violations.

- For government contractors, certifications must be "material" to trigger FSA violations. **Next Jump's policy is to treat all certifications as material.**

# Government Enforcement Tools: Debarment

**Debarment** from government contracting results from the Government determining that a contractor lacks the "ethics and integrity" to contract with the United States, based on prior violations and the failure to take satisfactory steps to correct the problem(s).

- Debarment is (usually) a three (3) year prohibition on the award of new government prime **and** subcontracts.

- Most state and local governments honor a federal debarment, as do many large commercial companies.

- A contractor can be debarred for actions that don't reach the level of a FCA or FSA violation.

- A strong contractor compliance program, like the one Next Jump is implementing, is the best protection against debarment.

# Reporting Requirements: See Something, Say (or Ask) Something

- A firm Government requirement, and Next Jump policy, is to promptly report wrongdoing.

- Next Jump strongly encourages employees to ask questions if there is any doubt about compliance with laws, regulations, contract requirements, or any other aspect of government contracting.

- Next Jump provides a variety of avenues for employees to raise issues, and has an absolute policy of not retaliating for any issue raised in good faith, whether or not there is ultimately a finding of a violation.

- Government contract rules and regulations can be complicated, and not always obvious---if you don't understand something, ask!

- If anything you see, hear, or are asked to do makes you uncomfortable, there are multiple ways to seek guidance.  The system works best when people speak up.

# Your Responsibility

- All employees have a duty to immediately reach out to a your supervisor or senior management when they learn of potentially unlawful or unethical behavior.

- Failure to take appropriate action can lead to company and personal lability. This includes reporting unethical actions by our fellow employees, sub-contractors, and others we do business with.

- Your first line of contact should be your supervisor. If he or she is unavailable, of if you're not comfortable, you can contact Next Jump's primary outside counsel.

- Lastly, if you suspect fraud, waste or abuse pertaining to our government customers and government contracts, you must immediately reach out to your supervisor or senior management, or Next Jump's primary outside counsel.

- Feel free to use the government hotlines; it is an anonymous hotline for reporting irregularities and infractions concerning contracts, programs or projects.

# Next Jump Resources

- Your Supervisor;

- Next Jump's Primary Outside Counsel, Haejin A. Shim, [Shim & Associates, P.C.](), Phone: (201) 482-0749, Email: hshim@shimassociates.com;

- More coming soon!

# Special Compliance Topics: Procurement and Competitor Information

- The Government has strict rules against a contractor receiving **non-public information** regarding an ongoing or upcoming procurement. This covers things like technical specifications, evaluation criteria, budget limitations, etc. Generally, if information is being given to only one competitor, something may be wrong.

- The Government also has strict rules regarding one contractor receiving non-public information about another contractor. This includes pricing, technical approaches, staffing strategies (i.e. anything that would strengthen your proposal compared to a competitor).

- If a Next Jump employee is ever offered this type of prohibited information, contact your primary outside counsel immediately.

- The Government also has strict rules against "collusive bidding" between competing contractors. This includes agreeing on pricing, allocating different contracts between companies, and anything else that would reduce true competition.

# Special Compliance Topics: Gifts and Gratuities and Dealing with Government Personnel

- Next Jump employees **may not give anything of value** to a Government employee, regardless of whether anything is being asked or given in return.

- This prohibition includes meals, tickets, travel, merchandise, giveaways at trade shows, etc. There is no minimum value threshold for this prohibition: Next Jump's policy is **ZERO.**

- This means separate checks; even "I will pay this time and you get it next time" is not allowed.

- At Next Jump-hosted meetings or events, some mechanism to charge Government employees is required (for example, a cup with a "$" sign written on it next to the sandwich platter). A shared coffee pot is allowed (yes, the rules are this granular).

- Next Jump employees may not discuss possible employment opportunities at Next Jump with any Government employee without **prior approval** by the Next Jump's primary outside counsel. Even a casual comment ("it would be great if we could work together someday") may violate Government regulations.  This prohibition applies even if the Government employee does not oversee any Next Jump contracts.

# Special Compliance Topics: Organizational Conflict of Interest ("OCI")

- An OCI is a situation where a contract or other work done for the Government gives Next Jump an unfair competitive advantage on another contract.

- Next Jump is generally required to certify that it is not aware of any OCI on a particular contract, or to disclose and mitigate any OCI of which it is aware.  This is considered a material certification; an OCI may result in a FCA violation.  Failure to screen for OCIs before certifying would be a "reckless disregard for accuracy" if an OCI was present.

- OCIs may take many forms.  For example, if Next Jump had a contract to provide technical specifications to the Government (or provided them informally), Next Jump may have an OCI that would prevent it from competing for the follow-on production contract.

- A test and evaluation contract for the Government would create an OCI if Next Jump was required to evaluate its own products.

- While simply being the incumbent contractor is not an OCI, work done under previous contracts may create an OCI for future contracts.

- OCIs may also be created through work done by subcontractors, or work done by individual employees when employed by other contractors or by the Government.

# Special Compliance Topics: Records Retention

- The Government has broad audit and inspection rights related to Next Jump's government contracts.

- Even on routine contract administration matters, Next Jump may be required to produce information many years after a contract was performed.  Documents and other records that seem routine today may be important tomorrow.

- Next Jump's policy is that all records, including electronic communications, related to all government prime and subcontracts, will be retained indefinitely.

- Information related to government contracts, including emails, should be archived rather than deleted.

# Special Compliance Topics: Dealings with Small Businesses and Set-Aside Contracts

- On some government contracts, Next Jump may be required to subcontract work to small businesses.  Next Jump's "Small Business Subcontracting Plan" is usually a scored evaluation factor in contract competitions, and Next Jump can be penalized for failing to meet the goals in the Plan.

- Next Jump may be a subcontractor to a small or minority-owned business on certain government contracts.  In those situations, Next Jump may not control, or have an unusual degree of influence over, the prime contractor.  For example, Next Jump cannot provide operating credit or other funding; Next Jump cannot write the prime contractor's proposal; Next Jump cannot provide office space or back office services to the prime contractor.

- Any subcontracting situations where the prime contractor is owned or controlled by a former Next Jump employee, or where Next Jump owns part of the prime contractor, or where a Next Jump employee sits on the Board of Directors of the prime contractor, must be approved in advance by the Next Jump's primary outside counsel.