UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

ROBERT P. BURKE,

Defendant.

Case No. 1:24-cr-00265-TNM

**DEFENDANT'S RENEWED MOTION FOR RELEASE PENDING APPEAL**

Defendant Robert P. Burke, by and through undersigned counsel, respectfully moves this Court pursuant to 18 U.S.C. § 3143(b) for an order releasing him from custody pending resolution of his appeal in the United States Court of Appeals for the District of Columbia Circuit, No. 25-3104. This renewed motion is based on materially changed circumstances that have arisen since this Court's October 21, 2025 order denying release and the D.C. Circuit's November 13, 2025 order denying release.

## **INTRODUCTION**

Admiral Burke has been incarcerated for seven months. Since this Court and the D.C. Circuit denied release, three developments have fundamentally altered the posture of this case.

First, on April 7, 2026, the D.C. Circuit heard oral argument. The panel's questioning revealed significant concerns about the government's positions on the evidentiary issues most central to the conviction and elicited important concessions from the government.

Second, on May 18, 2026, a jury in this Court acquitted Admiral Burke's co-defendants, Yongchul "Charlie" Kim and Meghan Messenger, of all charges arising from the same indictment. This followed a prior trial that ended in a hung jury. The Kim/Messenger jury did not hear the edited interview clips that the government presented to Admiral Burke's jury as a "confession," among other differences between the trials. Two juries that did not hear the edited interview could not convict on the same conspiracy.

1

Third, the government has made post-verdict disclosures of witness statements that directly contradict the core of its trial presentation, its argument that the Café Belga meeting was a secret, corrupt rendezvous concealed from the Navy. These disclosures include statements from Admiral Burke's own Executive Assistant, his Flag Writer, and a retired Vice Admiral, all of whom told the government that the meeting was not secret, that no job offer or quid pro quo was discussed in their presence, and that Admiral Burke was known as an ethics "stickler."

Taken together, these developments establish that Admiral Burke's appeal raises a "substantial question," "a 'close' question or one that very well could be decided the other way." *United States v. Bannon*, No. 22-3086, Order at 1 (D.C. Cir. June 20, 2024) (quoting *United States v. Perholtz*, 836 F.2d 554, 556 (D.C. Cir. 1988)).

## **LEGAL STANDARD**

Under 18 U.S.C. § 3143(b)(1), a defendant shall be released pending appeal if the court finds: (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the community; and (B) that the appeal is not for delay and raises a substantial question of law or fact likely to result in reversal, a new trial, a sentence without imprisonment, or a reduced sentence below time served plus the expected duration of the appeal.

A "substantial question" is "a 'close' question or one that very well could be decided the other way." *Bannon*, No. 22-3086, Order at 1 (quoting *Perholtz*, 836 F.2d at 556). If the substantial question is resolved in the defendant's favor, the court then asks whether that resolution would "likely" result in reversal or a new trial. *See United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985).

## ARGUMENT

### I. Admiral Burke Is Not a Flight Risk or Danger to the Community.

This Court has already found that Admiral Burke "presents no flight risk or danger to the community," and the government did not disagree. Mem. Order at 3 (Oct. 21, 2025). Nothing has changed. Admiral Burke is a retired four-star admiral who complied with every condition of his pretrial release on personal recognizance and appeared at every required proceeding. This prong is satisfied.

### II. The Appeal Raises Substantial Questions Likely to Result in Reversal.

When this Court denied release in October 2025, the appeal had not yet been briefed, let alone argued. The Court assessed the appellate issues based solely on the trial record and the parties' preliminary characterizations. The landscape has fundamentally changed.

**A. The D.C. Circuit's Oral Argument Demonstrated That the Appellate Issues Are "Close."**

The D.C. Circuit's April 7, 2026 oral argument objectively demonstrated that the evidentiary issues in this appeal are, at minimum, "close" and "could go either way."

*The Rule 106 Issue.* The government's most powerful evidence at trial was a series of edited clips from Admiral Burke's interview with investigators, which the government presented as a confession to bribery. When this Court ruled that one clip required additional context under Rule 106, the government withdrew that clip, then introduced the remaining clips and argued in rebuttal closing that Admiral Burke "initially lied" and confessed "when confronted." The excluded context showed Admiral Burke was admitting to an ethics lapse, not confessing to bribery.

At oral argument, the panel subjected the government's defense of this ruling to sustained questioning. When the government argued that a gap of approximately 45 minutes in the

interview justified exclusion, the panel responded: "I don't understand this 45 minutes passing thing because you kept talking about the same stuff." Hr'g Recording at 14:52 (Apr. 7, 2026). The panel observed that "these interviews are almost always focused on one subject matter for a long period." Hr'g Recording at 14:40. And the panel stated: "I mean, 45 minutes. Sure. It's not days." Hr'g Recording at 15:54.

The panel then articulated the constitutional dimension of the issue, stating: "The whole point of this rule is not to say the government can clip anything it wants, exclude anything it wants, as long as it's not the very next sentence, and then your only other option is to take the stand." Hr'g Recording at 18:19-18:28. The panel continued: "The rules of evidence are not meant to be a weapon for pressuring defendants to surrender their Fifth Amendment rights." Hr'g Recording at 18:28-18:35.

The panel further stated that there "has to be a fair opportunity to ensure that what the government's putting in is not clipped and truncated in ways omitting things that are on the very same topic and relatively relevant to it just because the agent got in and asked a few other questions in between." Hr'g Recording at 18:52-19:11.

*The Canedo Texts.* The panel questioned why the $500,000 salary text was necessary: "I don't know what the $500,000 is clarifying." Hr'g Recording at 23:39. When the government argued the text was admissible as an adoptive admission, the panel responded: "I'm not sure that's a reasonable inference." Hr'g Recording at 24:04.

*The Messenger Text.* The panel challenged the government's theory that the charged conspiracy was ongoing at the time of the October 2022 text. The panel stated: "You didn't charge him with doing anything," Hr'g Recording at 30:28, and "It's only official act bribery." Hr'g Recording at 30:26. The panel observed that Admiral Burke was "no longer an official at

the time of this statement," Hr'g Recording at 31:34, and told the government: "You're going way beyond the indictment." Hr'g Recording at 30:45. The government conceded that it cannot establish official act bribery for conduct occurring after Admiral Burke left the Navy. Hr'g Recording at 32:48.

The government faced sustained questioning on each of these issues. This questioning demonstrates that the appellate issues are, at minimum, "close" questions that "very well could be decided the other way." *Bannon*, No. 22-3086, Order at 1 (quoting *Perholtz*, 836 F.2d at 556).

**B. The Acquittal of Co-Defendants Kim and Messenger Eliminates the Government's Harmless Error Argument.**

On May 18, 2026, a jury in this Court acquitted co-defendants Kim and Messenger of all charges arising from the same indictment. This followed a prior trial that ended in a hung jury.

Throughout this appeal, the government has argued that any evidentiary errors at Admiral Burke's trial were harmless because the remaining evidence was overwhelming. *See* Appellee Br. 24-26, 37-38, 43, 48-49, 53. The acquittal refutes that argument.

Among the most significant differences between the trials is that the Kim/Messenger jury did not hear the edited interview clips that the government presented to Admiral Burke's jury as a "confession." The truncated interview, the Rule 106 issue that drew the panel's most sustained questioning at oral argument, was a critical piece of evidence that Admiral Burke's jury heard but the Kim/Messenger jury did not. Without it, two separate juries were unable to find guilt beyond a reasonable doubt on the same conspiracy arising from the same indictment. The first hung. The second acquitted on all counts.

The acquittal does not merely cast doubt on the government's harmless error argument; it effectively forecloses it. If the evidence were truly overwhelming, the Kim/Messenger juries would have convicted. They did not. The evidentiary errors Admiral Burke challenges on appeal,

5

including the edited interview, the hearsay texts, and the exclusion of impeachment evidence, were not harmless embellishments of an airtight case. They were load-bearing pillars without which the case could not stand.

**C. Post-Verdict Government Disclosures Further Undermine Confidence in the Conviction.**

Since Admiral Burke's May 2025 trial, the government has disclosed witness statements that directly contradict the central narrative it presented to the jury, that the July 23, 2021 Café Belga meeting was a secret, corrupt rendezvous concealed from the Navy. The government told the jury that Admiral Burke "didn't let anybody at the Navy know" about the meeting, that it was a "private off-the-books meeting," and that he "ditch[ed]" his staff so they would not hear the conversation.

Notably, the government did not call a single witness who was present at the Café Belga meeting. Its proof of what occurred at that meeting rested entirely on hearsay text messages from Denese Canedo, a witness the government subpoenaed and listed but chose not to call, thereby shielding her from cross-examination about her documented history of fabricating allegations, her 18-month possession of the phone from which the texts were extracted, and her bias against Admiral Burke. The "secret meeting" narrative was thus built on an unchallenged foundation of hearsay from a witness the government itself was unwilling to put on the stand.

Three witnesses with direct knowledge have now told the government that the foundation of that narrative is false:

*Captain Roger E. Meyer*, Admiral Burke's Executive Assistant at NAVEUR/NAVAF, was interviewed by AUSA Rebecca Ross on May 1, 2026. Meyer stated that he had heard Burke had dinner with Kim and Messenger, that Burke's Flag Aide Dan Rolnick was present at the dinner for a period, and that Burke used Meyer himself to schedule Next Jump communications.

6

Meyer further stated that the July 2021 interaction "did not raise red flags" and seemed like "non-specific general talk," that he did not think Burke's talks with Next Jump were serious, and that Burke was "such a stickler for ethics stuff."

*Robert Thomas*, Admiral Burke's Flag Writer, was interviewed by AUSAs Brian Kelly and Rebecca Ross on May 5, 2026. Thomas stated that there was never a job offer or quid pro quo made by Next Jump to Burke in his presence, that all talks were "very general," that he never heard a salary amount or start date discussed, that multiple government people were always present when Burke met with contractors, and that contracts had "checks and balances" such that no single person could force a contract through.

*Vice Admiral Herman Shelanski* (Ret.), former Naval Inspector General, was interviewed by AUSA Sarah Ranney on August 25, 2025, approximately three months after Admiral Burke's trial. Shelanski stated that he was not surprised Next Jump obtained a Navy contract because he saw value in what they provided, that Kim never discussed whether Burke was coming to work for Next Jump, and that Shelanski himself was never solicited by Kim or Messenger to assist with a contract.

These witnesses were known to the government as individuals with direct knowledge of Admiral Burke's interactions with Next Jump. Their accounts fundamentally contradict the narrative that the government presented in closing and rebuttal closing arguments. Admiral Burke intends to pursue the implications of these disclosures, including potential claims under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), through appropriate post-conviction proceedings. They are cited here as bearing on the reliability of the conviction and the likelihood that the appeal will result in reversal.

**D. Resolution of These Questions in Admiral Burke's Favor Would Likely Result in Reversal or a New Trial.**

The evidentiary issues on appeal go to the heart of the government's case. Without the truncated interview, there is no direct evidence of corrupt intent. Without Canedo's $500,000 text, there is no evidence a specific salary was discussed before the formal offer. Without Messenger's text, there is no direct evidence of a quid pro quo. The co-defendants' acquittal demonstrates that the remaining evidence cannot independently sustain a conviction.

The post-verdict disclosures independently undermine confidence in the verdict. Three witnesses with direct knowledge told the government that the Café Belga meeting was not secret, that no job offer was discussed, and that Admiral Burke was ethics-conscious, the opposite of what the government told the jury.

If any combination of these issues is resolved in Admiral Burke's favor, reversal or a new trial is the likely result. *See United States v. Powell*, 761 F.2d 1227, 1237 (8th Cir. 1985) (en banc) (granting bail where issue "pertains to a key government witness, and if [defendant] won on this point, reversal or a new trial would be likely").

## III. The Appeal Is Not for Purposes of Delay.

Admiral Burke filed timely briefs and appeared for oral argument. The appeal is fully submitted and awaiting decision. There is no suggestion of delay.

## IV. Proposed Conditions of Release.

Admiral Burke respectfully requests release on the same conditions that governed his pretrial release: personal recognizance, with supervision by the Pretrial Services Agency, surrender of passport, no international travel without court approval, no possession of firearms, and reporting requirements. Admiral Burke complied with these conditions without incident

8

throughout the pretrial period. The same conditions are sufficient to reasonably assure his appearance and the safety of the community pending resolution of his appeal.

## **CONCLUSION**

Admiral Burke has been incarcerated for seven months on a conviction that is under serious appellate challenge, that the co-defendants' acquittal has rendered increasingly untenable, and that post-verdict government disclosures have further undermined. He presents no flight risk or danger. His appeal raises substantial questions that are objectively "close," as the D.C. Circuit's oral argument demonstrated, and resolution of those questions in his favor would likely result in reversal or a new trial. Admiral Burke respectfully requests that this Court grant his renewed motion and order his release pending the resolution of his appeal.

Dated: May 19, 2026

Respectfully submitted,

Timothy C. Parlatore, Esq.
Parlatore Law Group, LLP
260 Madison Ave., 17th Floor
New York, NY 10016
timothy.parlatore@parlatorelawgroup.com
*Counsel for Defendant Robert P. Burke*